UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICO CRUZ, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOHAWK INDUSTRIES, INC., et al.,<br><br>Defendants. | Case No. 1:20-cv-01510-JLT-EPG<br><br>ORDER DENYING MOTION TO REMAND<br><br>(Doc. 7) |

Nico Cruz filed a putative class-action complaint in the California Superior Court, Fresno County against Defendants Mohawk Industries, Inc., Daltile Services, Inc., Dal-Tile Services, Inc., and Dal-Tile Corporation on September 14, 2020. (Doc. 1-2.) Defendants removed the action to this court on October 23, 2020, invoking federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). (Doc. 1.)

**BACKGROUND**

Plaintiff's complaint asserts nine causes of action for violations of various provisions of the California Labor Code and one violation of the California Business and Professions Code. (Doc. 1-2 ("Compl.").) Plaintiff alleges that defendants "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California," including "failing to pay them for all regular and/or overtime wages earned and for missed meal

periods and rest breaks in violation of California law." (*Id.* ¶ 28.)

Plaintiff seeks to represent a class of "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." (*Id.* ¶ 16.) Plaintiff alleges that "[t]he amount in controversy for the named Plaintiff . . . is less than seventy-five thousand dollars ($75,000)." (*Id.* ¶ 1.)

Defendants removed this action to this court on October 23, 2020, based upon CAFA jurisdiction. (Doc. 1.) Defendants rely upon a declaration of Robin Krueger, the director of human resources for Defendant Daltile Services, Inc., who declared that the defendants were incorporated in or have principal places of businesses in a mixture of Delaware, Georgia, Pennsylvania, and Texas. (Doc. 1-6 ¶¶ 3–6.) Krueger further declared that there were 420[1] individuals falling within Plaintiff's definition of the proposed class, and the amount in controversy exceeded $5 million. (*Id.* ¶¶ 7–8.)

Plaintiff's sole argument in the motion to remand the matter is that CAFA removal is improper because Defendants failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million. (*See* Doc. 7.)

In their opposition to the motion, Defendants filed additional declarations by Krueger, concerning the size of the proposed class and Defendants' citizenship; Sean Chasworth, a third-party data analyst, concerning the amounts in controversy based on assumptions from the complaint; and Ian Wright, Defendants' counsel concerning attorneys' fees that Plaintiff's counsel had requested in previous cases. (Docs. 10-1, 10-2, 10-3.)

Earlier, the Court noted that it was likely to grant the motion to remand. (Doc. 12.) The Court indicated that Defendants had improperly assumed a 100% violation rate for several of the causes of action they had briefed, and such an assumption is improper. (*Id.* (citing *Ibarra v. Manheim Inv. Inc.*, 775 F.2d 1193, 1198–99 (9th Cir. 2015).) Because Defendants requested leave to make arguments concerning Plaintiff's sixth, eighth and tenth causes of action if the

---

[1] In a subsequent declaration, Krueger revised this number to 490, stating that she had since reviewed records from a discontinued computer system. (Doc. 10-2 ¶ 4.)

2

1  Court intended to grant the motion to remand, (Doc. 10 at 19), the Court granted leave to do so

2  (Doc. 12 at 3). Defendants supplemental briefing (Docs. 14 & 15), is now before the court.[2]

## LEGAL STANDARD

A suit brought in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a); *see also Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress."). Under CAFA, federal courts have original jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress enacted CAFA to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)). The Supreme Court has held that there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89).

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("[T]he plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction."). "A defendant seeking removal must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal . . .'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)). "'[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation

---

[2] Plaintiff has not filed a reply, and the deadline to do so has expired.

should be *accepted* when *not contested* by the plaintiff or questioned by the court.' '[A] defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold,'" and "need not contain evidentiary submissions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 927 (9th Cir. 2019) (emphasis added) (quoting *Dart Cherokee*, 574 U.S. at 87–89; *Ibarra*, 775 F. 3d at 1197); *see also* 28 U.S.C.A. § 1446(c)(2) (With certain exceptions, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy"). "Where a removing defendant has shown potential recovery could exceed $5 million and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted).

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89. If evidence is required, "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Nonetheless, the defendant seeking removal bears the ultimate burden of showing "by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F. 3d at 1197; *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (observing that a preponderance of the evidence means "it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional threshold.). This burden may be satisfied by submitting "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,'" *Ibarra*, 775 F. 3d at 1197, or by relying on a chain of reasoning that includes reasonable assumptions, *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 (holding that "[a]n assumption may be reasonable if it is founded on the allegations of the complaint."). Removal is proper "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88 (citations omitted).

4

The amount in controversy is *not* the amount of damages that Plaintiff will likely recover, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a prospective assessment of defendant's liability," *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010). Rather, it "is simply an estimate of the total amount in dispute." *Id.* Thus, the amount in controversy merely "reflects the maximum recovery the plaintiff *could reasonably* recover." *Arias*, 936 F.3d at 927 (emphasis added).

## ANALYSIS

### A.  Minimal Diversity

Krueger has averred that Defendants are corporations with states of incorporation or principal places of business in Delaware, Georgia, Pennsylvania and Texas. (Doc. 1-6 ¶¶ 3–6.) Defendants allege that Plaintiff is a citizen of California. (Doc. 1 ¶ 18.) Thus, they have alleged minimal diversity as required for jurisdiction under CAFA. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226–27 (9th Cir. 2019) (discussing diversity requirements of CAFA). Because "[D]efendant[s'] allegations of citizenship are unchallenged, nothing more is required" to establish CAFA's diversity requirement. *Id.* at 1228.

### B.  Size of Class

In Krueger's supplemental declaration, Kreuger declared that she is the custodian of employee records and that she has reviewed their records to determine 490 employees fit the definition of plaintiff's proposed class. (Doc. 10-2 ¶¶ 3–4.) Though Plaintiff argues that Krueger's initial declaration failed to provide sufficient detail, (Doc. 7 at 10), certainly by this point, Defendants have adequately established that there are more than 100 members in the proposed class.

### C.  Amount in Controversy

The crux of this dispute is whether at least $5 million is in controversy in this action. The Court finds that Defendants have met their burden based on Plaintiff's second, third, fourth and sixth claims.

As often happens in CAFA removal cases concerning alleged violations of California labor laws, Plaintiff alleges that defendants had a "pattern and practice" of violating specified

California labor laws but do not allege any specific rate of violations. (Compl. ¶ 28.) When encountering such allegations, a defendant asserting CAFA jurisdiction cannot assume a 100% violation rate:

> We agree with the district court that a "pattern and practice" of doing something does not necessarily mean *always* doing something. The complaint alleges a "pattern and practice" of labor law violations but does not allege that this "pattern and practice" is universally followed every time the wage and hour violation could arise. . . . Because the complaint does not allege that Manheim universally, on each and every shift, violates labor laws by not giving rest and meal breaks, Manheim bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.

*Ibarra*, 775 F.3d at 1198–99. Following *Ibarra*, "[d]istrict courts have found, however, that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation." *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (citing cases).

### 1. Claim 2: Meal Breaks

Plaintiff's second cause of action alleges that Defendants failed to comply with California Labor Code §§ 226.7 and 512(a) and an applicable Industrial Welfare Commission Wage Order requiring paid meal and rest breaks.

Defendants' argument in its first round of briefing rests mostly on Chasworth's declaration. (*See* Doc. No. 10.) Chasworth reviewed defendants' California employment records, including the periods of September 14, 2016 through November 30, 2016 ("Four-Year Period") and September 14, 2019 through November 30, 2020 ("One-Year Period"). (Doc. 10-3 ¶¶ 7, 10.) Each week (a "workweek"), the typical employee worked 40 hours over five days. (*Id.* ¶ 6.b.) During the Four-Year Period, there were 490 non-exempt California employees who worked a total of 65,120 workweeks and were paid an average of $21.38 per hour. (*Id.* ¶ 8.)[3] During the One-Year Period, there were 337 such employees who worked 19,154 workweeks at an average hourly rate of $22.21. (*Id.* ¶ 10.)

For meal breaks, Chasworth took the 65,120 workweeks in the Four-Year Period with a $21.38 average wage and assumed that 20% of days had a meal break violation—or an average of

---

[3] For ease of reading, this order uses a rounded $21.38 wage instead of $21.3832213739509.

1  one hour per workweek.  (Doc. 10-3 at 7–8.)  This amount comes to 65,120 workweeks × 1 hour
2  per workweek × $21.38 / hour = $1,392,475.  Where, as here, Plaintiffs do not contest these
3  assumptions with alternate evidence, courts find allegations such as these reasonable.  *See Avila*,
4  432 F. Supp. 3d at 1189 (collecting cases).  Thus, the Court finds that these assumptions are
5  reasonable, and that Defendants have established this is the amount in controversy by a
6  preponderance of the evidence.  *See also Arias*, 936 F.3d at 927 (when defendant puts forth
7  evidence "and the plaintiff has neither acknowledged nor sought to establish that the class
8  recovery is potentially any less, the defendant has borne its burden to show the amount in
9  controversy exceeds $5 million" (citation omitted)).

    2.  Claim 3:  Rest Breaks

11   The same calculations apply as for the meal-breaks claim.  Thus, for the same reasons as
12 above, the court finds that Defendants have established that $1,392,475 is the amount in
13 controversy for this claim by a preponderance of the evidence.

    3.  Claim 4:  Unpaid Minimum Wage (Non-Penalties)

15   If an employer fails to pay its employees the minimum wage, California Labor Code
16 § 1194 provides that "[n]otwithstanding any agreement to work for a lesser wage, any employee
17 receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid
18 balance of the full amount of this minimum wage[,] . . . including interest thereon, reasonable
19 attorney's fees, and costs of suit."  In addition, the employee is "entitled to recover liquidated
20 damages in an amount equal to the wages unlawfully unpaid and interest thereon."  *Id*. § 1194.2.

21   Plaintiff alleges that he and other class members were "hourly-paid or non-exempt
22 employees" and that Defendants "failed to compensate them for all hours worked and missed
23 meal periods and/or rest breaks."  (Compl. ¶ 22.)  Additionally, Plaintiff alleges that he and the
24 other class members "were not receiving at least minimum wages for all hours worked," (*id*.
25 ¶ 33), and that their wage statements "fail[ed] to include the total number of hours worked by
26 Plaintiff and the other class members," (*id*. ¶ 36).

27   As to the unpaid wages and liquidated damages, Chasworth assumed that a $10 minimum
28 wage applied because since January 1, 2016, the California minimum wage applicable to

7

1  defendants has been at least $10. (Doc. No. 10-2 ¶ 19.) Chasworth assumed an average of 0.5

2  unpaid hours per workweek. At a minimum wage of $10, that equals $10 per hour × 0.5 hours

3  per workweek × 65,120 workweeks in the Four-Year Period = $325,600. Chasworth then

4  doubles that amount to account for liquidated damages, to reach $651,200. Defendants have

5  established this amount by a preponderance of the evidence.

#### 4.     Claim 6: Timely Payment of Wages

Plaintiff's sixth claim is for failing to pay timely wages under California Labor Code § 204. California Labor Code § 204 sets forth the schedule by which California employees must be paid. Civil actions brought for violations of § 204 may recover $100 for an initial violation for each employee and $250 for all subsequent violations for each employee, plus 25% of all amounts unlawfully withheld. Cal. Labor Code § 210(a).[4] Plaintiff alleges that "Plaintiff and the other class members did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204." (Compl. ¶ 35.)

Chasworth makes assumptions that reduce the violations to every other week instead of every week. (Doc. 14 ¶¶ 17–21.) Although "pattern or practice" allegations standing alone cannot support a 100% violation rate, *Ibarra*, 775 F.3d at 1198–99, this 50% violation rate falls within the "25% to 60% [rates that] can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation," particularly because Plaintiff provided no contrary figures. *Avila*, 432 F. Supp. 3d at 1189. Thus, the Court finds these figures are reasonable. Chasworth counts 337 initial pay periods and 8,726 subsequent periods. (*Id.*) Chasworth further assumes for the 25% penalty that all employees were paid the minimum wage of $10 per hour and that on average, they were not compensated the minimum wage for 30 minutes per workweek (i.e., 30 minutes for every 40 hours went uncompensated). Given the 19,154 relevant workweeks, Chaworth reaches a figure of $1,790,229.[5]

---

[4] Section 204b, which concerns employees paid weekly, has the same penalty structure. *Id.* § 210(a).

[5] 337 initial workweeks × $100 per initial workweek + 8,726 subsequent workweeks × 200 per subsequent workweek + $10 per hour × 0.5 hours per workweek × 19,154 workweeks × 25%

8

**CONCLUSION AND ORDER**

Defendants have established the following amounts are in controversy by a preponderance of the evidence:

| Type of Claim | Value |
| --- | --- |
| Claim 2:  Meal Breaks | $1,392,475 |
| Claim 3:  Rest Breaks | $1,392,475 |
| Claim 4:  Unpaid Minimum Wage (Non-Penalties) | $651,200 |
| Claim 6: Payroll Records | $1,790,229 |
| *Total:* | $5,226,379 |

Because this amount exceeds $5 million, Plaintiff's motion to remand (Doc. 7) is **DENIED**.

IT IS SO ORDERED.

Dated:   **January 9, 2022**

_____
UNITED STATES DISTRICT JUDGE

---

statutory penalty = $1,790,229.