Graham B. LippSmith (SBN 221984), g@lippsmith.com
Celene Chan Andrews (SBN 260267), cca@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 3000
Los Angeles, CA 90071
Tel: (213) 344-1820
Fax: (213) 513-2495

Arby Aiwazian (SBN 269827), arby@calljustice.com
Joanna Ghosh (SBN 272479), joanna@calljustice.com
Brian St. John (SBN 304112), brian@calljustice.com
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICO CRUZ SANCHEZ, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>MOHAWK INDUSTRIES, INC., an unknown business entity; DALTILE SERVICES, INC., an unknown business entity; DAL-TILE SERVICES, INC., an unknown business entity; DAL-TILE CORPORATION, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:20-cv-01510-JLT-EPG<br><br>[Removal from the Superior Court of the State of California, County of Fresno, Case No. 20CECG02675]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>**[DECLARATIONS OF GRAHAM B. LIPPSMITH, BRIAN ST. JOHN, NICO CRUZ SANCHEZ, ERIC SPRINGER, AND PROPOSED ORDER FILED CONCURRENTLY HEREWITH]**<br><br>Date:        July 5, 2024<br>Time:        9:00 a.m.<br>Courtroom:   4 |

**<u>PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY</u>**

**<u>APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT</u>**

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR**

**COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, July 5, 2024, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Judge Jennifer L. Thurston in Courtroom 4 of the United States District Court for the Eastern District of California, located at 2500 Tulare Street, Fresno, CA 93721, Plaintiff Nico Cruz Sanchez ("Plaintiff") hereby moves for an order:

1.      Granting preliminary approval of the May 2024 Joint Stipulation of Class Action and PAGA Settlement ("Settlement Agreement[1]") between Plaintiff and Defendants Mohawk Industries, Inc., Daltile Services, Inc., Dal-Tile Services, Inc., and Dal-Tile Corporation ("Defendants") which is attached as **Exhibit 1** to the Declaration of Graham B. LippSmith filed in support of this Motion;

2.      Granting provisional certification of the Class for settlement purposes;

3.      Provisionally appointing Plaintiff Nico Cruz Sanchez as Class Representative;

4.      Provisionally appointing as Class Counsel Arby Aiwazian, Joanna Ghosh, and Brian St. John of Lawyers *for* Justice, PC, and LippSmith LLP;

5.      Appointing Simpluris, Inc. ("Simpluris") to serve as the Settlement Administrator and approving the Notice Plan Simpluris has provided;

6.      Approving the Notice, attached as **Exhibit 2** to the Settlement Agreement;

---

[1] To the extent they are not specifically defined herein, all capitalized terms have the same meaning as in the Settlement Agreement, attached as **Exhibit 1** to the Declaration of Graham B. LippSmith in support of this Motion.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

7.    Directing Simpluris to effectuate the Notice Process, including mailing Notice to Class Members;

8.    Scheduling a Final Approval Hearing, at which time the Court will also consider whether to grant final approval of Plaintiff's requests for Attorney Fees and Costs, Service Payment for Plaintiff, Settlement Administration Costs, and payment to the California Labor and Workforce Development Agency ("LWDA"). Plaintiff requests that the Court set a Final Approval Hearing for at least 75 days after entering an order granting preliminary approval of the Settlement. The date for the Final Approval Hearing would be September 18, 2024 if the Court grants preliminary approval on July 5, 2024.

Plaintiff brings this motion pursuant to Federal Rule of Civil Procedure 23(e), which governs court approval of class action settlements; Federal Rule of Civil Procedure 23(g), which governs court appointment of class counsel; and Labor Code section 2699, which sets forth PAGA provisions.

All Parties have signed the Settlement Agreement. Defendants do not oppose this Motion.

Plaintiff has submitted the Settlement Agreement to the LWDA concurrently with this Motion pursuant to Labor Code section 2699(l)(2). Plaintiff has also satisfied the prerequisites under Labor Code section 2699.3(a), including, but not limited to, providing the LWDA and the employer with written notice of the specific provisions of the Labor Code they allege Defendants violated, including the facts and theories to support the alleged violations, by way of written correspondence sent U.S. Certified Mail on November 18, 2019. Plaintiff will update the Court if the LWDA responds to the letter that was sent on Plaintiff's behalf.

Based on (1) the following memorandum of points and authorities; (2) the Declaration of Brian St. John; (3) the Declaration of Graham B. LippSmith, with the May 2024 Joint Stipulation of Class Action and PAGA Settlement attached as **Exhibit 1**;

2

1   (4) the Declaration of Nico Cruz Sanchez; (5) the Declaration of Eric Springer; and

2   (6) the [Proposed] Order Granting Preliminary Approval of Class Action and PAGA

3   Settlement filed concurrently herewith, as well as the pleadings and other records on file

4   with the Court in this matter, and the evidence and oral argument that may be presented

5   at the hearing on this motion, Plaintiff respectfully requests that the Court grant

6   preliminary approval of the Settlement.

7

8   Dated: May 30, 2024                    **LIPPSMITH LLP**

9

10                              By:    /s/ *Celene Chan Andrews*
                                       Graham B. LippSmith

11                                     Celene Chan Andrews

12                                     **LAWYERS *for* JUSTICE, PC**

13                                     Arby Aiwazian
                                       Joanna Ghosh

14                                     Brian St. John

15                                     *Attorneys for* Plaintiff

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..........................2

III.  SUMMARY OF SETTLEMENT TERMS ..........................................................3

IV.   LEGAL STANDARD .........................................................................................5

V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL ........................6

    A.    The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations That Considered the Strengths and Weaknesses of Plaintiff's Case, the Risk of Further Litigation, and the Amount Offered in Settlement .................................................................................6

        1.    The Settlement Resulted from Arm's-Length Bargaining ................7

        2.    The Settlement Resulted from Extensive Investigation and Discovery, Allowing the Court and Counsel to Act Intelligently............................................................................9

    B.    The Settlement Does Not Grant Improper Preferential Treatment to Class Representatives or Other Segments of the Class .........................10

    C.    The Settlement Falls Within the Range of Possible Approval ...................11

    D.    The Settlement Has No Obvious Deficiencies .............................................17

VI.   CERTIFICATION OF THE CLASS IS APPROPRIATE ....................................18

    A.    The Class Is Sufficiently Numerous and Ascertainable ..............................18

    B.    The Class Members Share Common Questions of Law and Fact ...............19

VII.  THE COURT SHOULD PROVISIONALLY APPOINT A CLASS REPRESENTATIVE.........................................................................................21

VIII. THE COURT SHOULD PROVISIONALLY APPOINT CLASS COUNSEL.........................................................................................................22

IX.   THE COURT SHOULD APPOINT SIMPLURIS AS SETTLEMENT ADMINISTRATOR ..........................................................................................23

X.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE ..........24

XI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ............25

XII.  CONCLUSION ...................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalgamated Transit Union v. Superior Court,* 46 Cal. 4th 993 (2009) ...................................... 8

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) .................................................. 8, 14

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014)................................................ 18

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)......................................................... 17

*Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004 (2012) ...................................................... 13

*Carter v. Anderson Merch., LP*, 2010 WL 1946784 (C.D. Cal. May 11, 2010) .......................... 16

*Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848 (N.D. Cal. 2010)................................ 16

*Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)......................................................... 11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................ 6

*DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970)................................................................ 18

*Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal. 2008) ................................ 8

*Giroux v. Essex Prop. Tr., Inc.,* 2018 WL 2463107 (N.D. Cal. June 1, 2018)............................... 6

*Hanlon v. Chrysler Corp.,* 150 F. 3d 1011 (9th Cir. 1998) ........................................................... 6

*Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .... 7

*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008)............................................................. 6

*Kaanaana v. Barrett Bus. Servs. Inc.*, 29 Cal. App. 5th 778 (2018)............................................ 14

*Kullar v. Foot Locker Retail*, 168 Cal. App. 4th 116 (2008)......................................................... 9

*In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG,
    2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ......................................................................... 6

*Lilly v. Jamba Juice Co.*, 2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) .................................... 19

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (2000) ...................................................................... 19

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ........................................ 17

*Litty v. Merrill Lynch & Co.*, No. cv 14-0425 PA (PJWx),
    2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)........................................................................... 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).................. 17

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Ca**ses

*O'Connor v. Boeing N. Am.*, *Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ............................................ 18

*Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP,
   2010 WL 1340777 (N.D. Cal. Apr. 2, 2010).................................................................................. 15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................ 11

*Rose v. City of Hayward*, 126 Cal. App. 3d 926 (1981) ............................................ 19

*Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG (N.D. Cal. Nov. 4, 2020)..... 23

*Sierra Club v. Super. Ct.*, 57 Cal. 4th 157 (2013)............................................ 14

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)............................................ 24

*Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-cv-1187 KJM CKD,
   2014 WL 6633396 (E.D. Cal. Nov. 21, 2014)............................................ 8

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................ 11

*In re Syncor ERISA Litig*, 516 F.3d 1095 (9th Cir. 2008) ............................................ 5

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112 (2012)............................... 14

*Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192 (N.D. Cal. 2012)......................................... 18

*Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG,
   2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ............................................ 19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................ 18, 19

*Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005) ............................... 21

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013)................................. 21

**Statutes**

Lab. Code § 203 ............................................ 12

Lab. Code § 226 ............................................ 12

Lab. Code § 226.7 ............................................ 12, 14

Lab. Code § 226.7(c) ............................................ 13

Lab. Code § 510 ............................................ 12

Lab. Code § 512(a) ............................................ 12, 14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

Lab. Code § 1197.1 ................................................................................................ 12

Lab. Code § 1198 .................................................................................................. 12

Lab. Code § 2699(e)(2) ...................................................................................... 8, 14

Lab. Code § 2699(f)(2) ....................................................................................... 8, 14

Lab. Code § 2699(i) .......................................................................................... 16, 17

Lab. Code § 2699(j) ............................................................................................... 16


**Other Authorities**

Rubenstein, *Newberg and Rubenstein on Class Actions* § 8.17 (6th ed., June 2022 update) . 24, 25


**Rules**

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 18

Fed. R. Civ. P. 23(a)(2) ......................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 18

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 24

Fed. R. Civ. P. 23(e) ............................................................................................... 5

Fed. R. Civ. P. 23(e)(1) ......................................................................................... 24

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Nico Cruz Sanchez ("Plaintiff") seeks preliminary approval of this settlement as set forth in the Joint Stipulation of Class Action and PAGA Settlement ("Settlement Agreement") between Plaintiff and Defendants Mohawk Industries, Inc., Daltile Services, Inc., Dal-Tile Services, Inc., and Dal-Tile Corporation ("Defendants"). Declaration of Graham B. LippSmith ("LippSmith Dec.") Exhibit 1.

The proposed Settlement Class comprises approximately 601 individuals with approximately 86,162 estimated workweeks. Settlement Agreement ¶ 1.3. Class Members who do not opt out of the Settlement will receive a pro rata share of the allocated Net Settlement Amount based upon the number of weeks worked, as defined by the Settlement Agreement ("Individual Payment Amount"). *Id.* at ¶¶ 1.19, 4.2.2. If the Court approves the Settlement, the Maximum Settlement Amount of $1,900,000 will be distributed as follows: (1) Individual Payment Amounts to proposed Class Members, estimated to total $1,093,000; (2) Service Payment to Plaintiff, proposed at an amount not to exceed $10,000 (*Id.* at ¶ 4.8); (3) reasonable third party administration costs, which the parties estimate will not exceed $9,000; (4) attorney fees of up to $665,000; and reimbursement of litigation costs and expenses not to exceed $23,000 ("Attorney Fees and Costs") (*Id.* at ¶ 4.7); (5) payment in the amount of $75,000 to the Labor Workforce Development Agency, representing 75% of the amount allocated toward PAGA civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004; and (6) the remaining 25% of PAGA civil penalties, in the amount of $25,000, will be part of the Net Settlement Amount for distribution to the PAGA Aggrieved Employees on a *pro rata* basis ("PAGA Penalty Payment"). *Id.* at ¶¶ 1.21, 1.22, 4.2.3.

Class Members who do not opt out are Settlement Class Members. Settlement ¶ 1.33. For non-PAGA claims, the Settlement resolves Plaintiff's and Settlement Class

1

Members' Released Claims against the Released Parties. *Id.* at ¶ 1.27. The Settlement binds all PAGA Aggrieved Employees and the State of California for the PAGA claims. *Id.* Plaintiff also seek provisional certification of the following Class solely for settlement purposes: all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from September 15, 2016 through April 11, 2024 and who reside in California. *Id.* at ¶ 1.3. Finally, Plaintiff asks the Court to set a Final Approval Hearing for at least 75 days after entering an order granting preliminary approval.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendants are in the flooring business. Defendants formerly employed Plaintiff; Plaintiff filed a class action complaint against Defendants on September 14, 2020 in the Fresno County Superior Court, Case No. 20CECG02675. On October 23, 2020, Defendants removed this action to federal court. Plaintiff moved to remand on November 23, 2020. The Court denied Plaintiff's motion to remand on January 10, 2022. On August 24, 2022, Plaintiff filed a First Amended Complaint against Defendants alleging that Defendants engaged in uniform practices and procedures violating the Labor Code, including failure to do the following: pay regular, minimum, and overtime wages properly, including its rounding policy; pay all compensation due for all work performed, including pre-shift, post-shift, and meal and rest periods wages; accurately calculate the regular rate for meal, rest, and overtime premiums; provide compliant meal periods, rest periods, and associated premium pay; pay timely wages during employment and upon termination; provide compliant wage statements; maintain requisite payroll records; and reimburse necessary business expenses. On April 15, 2024, Plaintiff filed a Second Amended Complaint adding a cause of action under PAGA. Plaintiff contends the putative class is entitled to unpaid wages; penalties, including PAGA penalties; and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

Attorney Fees and Costs. Defendants deny liability, wrongdoing, and that this case is appropriate for class treatment for any purpose other than settlement.

## III.    SUMMARY OF SETTLEMENT TERMS

In this proposed settlement, Defendants will pay the $1,900,000 Maximum Settlement Amount into a Qualified Settlement Fund. Settlement ¶¶ 1.18, 1.26. The Net Settlement Amount is the Maximum Settlement Amount less Attorney Fees and Costs, third party administration costs, Service Payment, and the payment to the LWDA in the amount of $75,000 (representing 75% of the PAGA civil penalties.) *Id*. at ¶ 1.19. The Administrator will facilitate the calculation of each Settlement Class Member's pro rata share of the Net Settlement Amount ("Individual Payment Amount") as follows:

- Defendants will use time records to calculate Workweeks, which reflect the total number of weeks Settlement Class Members worked as non-exempt employees in California during the Class Period. Settlement ¶ 4.2.2. Any workweeks during the Class Period in which a Settlement Class Member did not actually work (*i.e.*, while on a leave of absence) are not included in that Settlement Class Member's Individual Payment Amount. *Id.* ¶ 4.2.2.
- Within 14 calendar days of preliminary approval, Defendants will provide the Settlement Administrator with the number of Workweeks each Class Member worked. *Id.* at ¶ 4.5.2.
- The Settlement Administrator will calculate each Class Member's Individual Payment Amount by dividing the Settlement Class Member's total number of workweeks that the Settlement Class Member worked for Defendants in California during the Class Period by the total number of workweeks all Settlement Class Members worked for Defendants during the Class Period, and (ii) multiplying that pro rata share by the allocated amount of the Net Settlement Amount. *Id.* at ¶ 4.2.2.

The Settlement allocates 20% of Individual Payment Amounts to wages reported on a Form W-2 and 80% to non-wages and interest reported on a Form 1099. Settlement ¶ 4.2.5. The Settlement Administrator will issue Individual Payment Amounts after withholding deductions for employees' share of payroll taxes. *Id.* at ¶¶ 4.2.2, 4.2.5. Defendants will cover their portion of payroll taxes, plus the Maximum Settlement Amount. *Id.* at ¶ 1.18.

Class Members may opt out of the Settlement by submitting a Request for Exclusion to the Settlement Administrator within 45 calendar days of the mailing of the Notice ("Response Deadline"). Settlement ¶¶ 1.29, 4.6.3. The signed Request for Exclusion must include the Class Member's full name, address, and telephone number; the case name and number; and a wish to be excluded from the Settlement. *Id.* at ¶ 4.6.3. The Request for Exclusion indicates that a Class Member who opts out will not be entitled to an Individual Payment Amount and will not be bound by the terms of the Settlement but will still receive a PAGA Penalty Payment. *Id.* at ¶ 4.6.5. Failure to submit a valid and timely Request for Exclusion means the Class Member is bound by all terms of the Settlement and final judgment. *Id.*

The Notice will inform Class Members of their number of Workweeks during the Class Period based on Defendants' records. Settlement ¶¶ 1.20, 4.6.2, Ex. 2. Class Members may dispute this information by providing the Settlement Administrator with additional information and documentation ("Dispute") postmarked on or before the Response Deadline. *Id.* at ¶ 4.6.2. A Class Member must submit a Dispute with their name, the case name and number, number of workweeks they claim they worked, and any supporting data. *Id.* The Settlement Administrator will consult with the Parties to decide whether to adjust the Individual Payment Amount. *Id.* As a last resort, the Parties will bring any unresolved disputes to the Court. *Id.* Within five calendar days of receiving returned Notices, the Settlement Administrator shall remail any returned Notice to the forwarding address. *Id.* at ¶ 4.5.3. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to find a correct address, using skip-tracing or other means to search by name, address, and/or Social Security number. *Id.* Upon locating an address, the Settlement Administrator shall remail the Notice. *Id.*

Class Members objecting to the Settlement may submit a written statement or a notice of intent to appear at the Final Approval Hearing to object ("Objection") to the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

Settlement Administrator, postmarked on or before the Response Deadline. Settlement ¶¶ 4.6.7–8. The Settlement Class Member must sign the Objection and include their full name, the case name and number, objection grounds; and legal briefs, papers, or memoranda the objector will submit to the Court. *Id*. at ¶ 4.6.7. The Settlement Administrator will notify all Parties of any Objection. *Id*. at ¶ 4.6.9. Class Members who fail to object still have the right to appear at the Final Approval Hearing to state objection(s). *Id*. No later than the filing of Plaintiff's Motion for Final Approval, the Settlement Administrator shall enable Class Counsel to file a declaration with a complete list of all objectors and shall authenticate all Objections received. *Id*. The Settlement Administrator's declaration shall also attach all Objections received. *Id*.

Settlement checks undeposited 90 calendar days after the issuance of Settlement Proceeds will be voided and cancelled. The Settlement Administrator shall then redistribute the remaining uncashed Settlement Proceeds to Class Members who cashed their initial payments, which serves the public interest and the interest of the Settlement Class. Settlement ¶ 4.11.4. The Settlement Administrator will deliver proceeds remaining after the second issuance to Legal Aid at Work, or otherwise distribute them as ordered by the Court. *Id*. No unclaimed funds will be deposited into the Industrial Relations Unpaid Wage Fund. The Settlement will resolve the Settlement Class Members' non-PAGA, Released Claims against Released Parties and for named Plaintiff and the State of California for PAGA claims. *Id*. at ¶¶ 4.12.1–2.

## IV.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Rule 23 is intended to "protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*, 516 F.3d 1095, 1100 (9th Cir. 2008). In

approving a class action settlement, the court must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). In granting preliminary approval of a class action settlement, courts must determine whether provisional class certification is appropriate. *See Giroux v. Essex Prop. Tr., Inc.*, 2018 WL 2463107, at *3 (N.D. Cal. June 1, 2018).

## V.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations, (2) does not grant improper preferential treatment to class representatives or other segments of the class, (3) falls within the range of possible approval, and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018). Courts give "deference to the private[,] consensual decision of the parties." *Hanlon v. Chrysler Corp.,* 150 F. 3d 1011, 1027 (9th Cir. 1998). The Ninth Circuit maintains a "strong judicial policy that favors settlements" of class actions, given "complex" litigation involved. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### A.   The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations That Considered the Strengths and Weaknesses of Plaintiff's Case, the Risk of Further Litigation, and the Amount Offered in Settlement

The Settlement accounts for the strengths and weaknesses of each Party's position and the uncertainty about class certification, trial, or both. St. John Dec. ¶ 31. Prior to agreeing to settle this matter, the Parties interviewed and obtained information from witnesses. St. John Dec. ¶ 23. The Parties' Counsel reviewed documents and information relating to Plaintiff's and Class Members' employment with Defendant and performed significant legal research concerning PAGA representative actions, class certification,

1  off-the-clock theory, meal and rest periods, wage-and-hour enforcement, the Parties'

2  claims and defenses, and the facts. St. John Dec. ¶¶ 9, 23, 30; LippSmith Dec. ¶ 26.

### 1.  The Settlement Resulted from Arm's-Length Bargaining

4  "An initial presumption of fairness is usually involved if the settlement is

5  recommended by class counsel after arm's-length bargaining." *Harris v. Vector*

6  *Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

7  Prior to agreeing to the Settlement, the Parties engaged in significant settlement

8  negotiations and participated in two formal mediation sessions. St. John Dec. ¶¶ 9–11;

9  LippSmith Dec. ¶¶ 26–28. David Rotman, Esq. and Jeffrey Fuchsman, Esq., well-

10  regarded mediators experienced in mediating labor and employment matters, conducted

11  the first and second mediations, respectively. St. John Dec. ¶ 11; LippSmith Dec. ¶ 27.

12  The parties' first mediation on June 20, 2023, before Mr. Rotman, did not result in a

13  resolution. LippSmith Dec. ¶ 29.

14  Prior to and during settlement discussions, the Parties exchanged class information

15  and engaged in an intensive discussion about their evaluations of this matter and various

16  aspects of this case, including the risks and delays of further litigation; whether some

17  claims were subject to dismissal; the risks of proceeding with representative adjudication

18  and class certification; the law on off-the-clock theory, meal and rest periods, wage-and-

19  hour enforcement, and PAGA representative claims; and the evidence the Parties

20  obtained, produced, and analyzed. St. John Dec. ¶ 11; LippSmith Dec. ¶ 27.

21  Specifically, the Parties spent considerable time evaluating the procedural

22  challenges of continued litigation. Although wage-and-hour actions are often amenable to

23  resolution for groups of employees, courts sometimes decide otherwise. For instance,

24  some courts have required "manageability" for adjudicating PAGA claims. *See, e.g.*,

25  *Litty v. Merrill Lynch & Co.,* No. CV 14-0425 PA (PJWx), 2015 WL 4698475 at *3–4

26  (C.D. Cal. Apr. 27, 2015) (dismissing PAGA claim that would require a multitude of

1   individualized assessments). Other courts have required plaintiffs to establish standing

2   and have bifurcated discovery, trial, or both. *Amalgamated Transit Union v. Superior*

3   *Court,* 46 Cal. 4th 993, 1001 (2009) (noting PAGA "require[s] a plaintiff to have

4   suffered an injury resulting from an unlawful action"); *Stafford v. Dollar Tree Stores,*

5   *Inc.,* No. 2:13-cv-1187 KJM CKD, 2014 WL 6633396 at *4 (E.D. Cal. Nov. 21, 2014)

6   (finding judicial economy supported bifurcation because of the difficulties and inherent

7   uncertainties in establishing liability with respect to a large number of potentially

8   aggrieved employees). These issues add uncertainty to continued litigation.

9       The Parties also spent considerable time evaluating the substance of their claims

10  and defenses in deciding to settle. To prevail on their claims, Plaintiffs must prove that

11  Labor Code violations demonstrate both that employees suffered losses and that

12  Defendants' conduct gives rise to penalties. *See*, *e.g.*, *Elliot v. Spherion Pac. Work, LLC,*

13  572 F. Supp. 2d 1169, 1181–82 (C.D. Cal. 2008). Even if Plaintiff established violations,

14  Defendants likely would characterize those violations as "initial," thus, making

15  heightened "subsequent violation" penalties unwarranted. *See* Lab. Code § 2699(f)(2);

16  *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1209 (2008) ("Until the employer

17  has been notified that it is violating a Labor Code provision [. . .], the employer cannot be

18  presumed to be aware that its continuing underpayment of employees is a 'violation'

19  subject to penalties."). Plaintiff's ultimate success on the merits is uncertain.

20      Finally, the Parties spent considerable time evaluating the potential litigation of

21  remedies. Although PAGA clearly sets forth penalties, courts have discretion in setting

22  those penalties, so that they are not "unjust, arbitrary and oppressive, or

23  confiscatory." *See* Lab. Code § 2699(e)(2).

24      Despite these challenges, Plaintiff's Counsel negotiated a Maximum Settlement

25  Amount of $1,900,000. St. John Dec. ¶ 11; LippSmith Dec. ¶ 28. The Parties calculated

26  the Settlement using information uncovered during case investigation, litigation, and

8

1    exchange of information for mediation. St. John Dec. ¶ 18; LippSmith Dec. ¶ 27. If the

2    Court approves the PAGA Payment, Administration Costs, Service Payment, and

3    Attorney Fees and Costs in the Settlement, the Net Settlement Fund is estimated to be at

4    least $1,118,000.00. St. John Dec. ¶ 9; LippSmith Dec. ¶ 29. The amount of each

5    Claimant's Individual Settlement Share and each PAGA Recipient's Settlement Share

6    will be calculated based on their respective Workweeks. Settlement ¶¶ 4.2.2–3. Plaintiff's

7    Counsel's analysis allowed them to estimate the potential claims on behalf of the Class

8    and State of California and to "conclude[e] that the consideration being paid for the

9    release of those claims represents a reasonable compromise." *Kullar v. Foot Locker*

10   *Retail,* 168 Cal. App. 4th 116, 133 (2008); St. John Dec. ¶ 17, 21-27; St. John Dec. ¶ 23.

11   Considering all the facts and circumstances of the Action, the Settlement represents a

12   fair, reasonable, and adequate recovery for the Class. St. John Dec. ¶ 32; LippSmith Dec.

13   ¶ 48.

14          During all settlement discussions, the Parties conducted their negotiations at arm's

15   length, in an adversarial position. St. John Dec. ¶ 11; LippSmith Dec. ¶ 27. The Parties

16   each believed in the merits of their claims and defenses. St. John Dec. ¶ 26; LippSmith

17   Dec. ¶ 27. Defendant and their counsel believed they would prevail at certification and

18   on the merits. Plaintiff and his Counsel felt strongly they would obtain class certification

19   and win at trial. After conducting investigations, propounding formal discovery,

20   exchanging informal discovery, and participating in settlement negotiations, the Parties

21   agreed this case is well-suited for settlement, given the claims, defenses, legal landscape,

22   and costs and risks of continued litigation. St. John Dec. ¶ 31; LippSmith Dec. ¶ 29.

23          **2.**     **The Settlement Resulted from Extensive Investigation and**

24          **Discovery, Allowing the Court and Counsel to Act Intelligently**

25          The Parties have actively litigated this matter since it commenced on September

26   14, 2020. Prior to reaching the Settlement, the Parties extensively investigated the

veracity, strength, and scope of the claims. St. John Dec. ¶ 9; LippSmith Dec. ¶ 27. The Parties have reached the Settlement based on this large volume of facts, evidence, and investigation. St. John Dec. ¶ 9–11.

Plaintiff's Counsel conducted significant investigation into this case, engaged in formal and informal discovery, reviewed and analyzed thousands of pages of documents and data Defendants produced. St. John Dec. ¶ 23; LippSmith Dec. ¶ 26. The volume of data and documents Plaintiff's Counsel reviewed and analyzed included the following, among others: Plaintiff's and other Class Members' employment records; a detailed sampling of Class Members' time and pay data, including, but not limited to, spreadsheets of timecard and wage statement statistics; Defendants' Employee Handbooks, agreements, forms, and policy and procedure documentation. LippSmith Dec. ¶ 26.

Plaintiff's Counsel interviewed Plaintiff and other witnesses to gather facts and identify potential witnesses. St. John Dec. ¶ 23. Plaintiff's Counsel served and responded to multiple sets of formal written discovery requests and noticed the depositions of Defendants' Rule 30(b)(6) designees. *Id.*; LippSmith Dec. ¶ 26. Counsel for the Parties also met and conferred to discuss issues relating to the pleadings, discovery, motion practice, and the production of documents and data. St. John Dec. ¶ 23; LippSmith Dec. ¶ 27. Plaintiff's Counsel also prepared for and attended court proceedings and settlement negotiations, including attending mediations. St. John Dec. ¶ 23; LippSmith Dec. ¶ 22.

The Parties' active litigation of this matter has allowed Counsel to act intelligently in assessing the fairness and reasonableness of the Settlement.

**B.      The Settlement Does Not Grant Improper Preferential Treatment to Class Representatives or Other Segments of the Class**

The proposed settlement allocates the Net Fund to Settlement Class Members on a pro rata basis based on the number of weeks worked. Thus, all Settlement Class

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

Members who cash their initial checks will receive a pro rata amount commensurate with the amount of time worked, and no one will receive preferential treatment.

The Settlement authorizes Plaintiff to seek a Service Payment of up to $10,000 for Plaintiff for his service as Class Representative. The Ninth Circuit has recognized that incentive awards are permissible and do not render a settlement unfair or unreasonable. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action case."); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."); "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. *Rodriguez*, *supra*, 563 F.3d at 958–59 (citation omitted).

### C.    The Settlement Falls Within the Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (internal quotations and citations omitted). To determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview factors that ultimately inform final approval:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

1    First, the Class's expected recovery, weighed against the value of the settlement

2    offer and considering the strength of Plaintiff's case, supports approval of the Settlement.

3    Assuming that every member of the 601-member class was unpaid for one hour for

4    86,162 workweeks at the average overtime rate of $31.85—which represents a high rate

5    of overtime violations—unpaid overtime damages would be $2,743,828.89. *See* Lab.

6    Code §§ 510 and 1198; LippSmith Dec. ¶ 30. Assuming one violation of meal and rest

7    break damages for every employee for 86,162 workweeks, meal and rest break damages

8    would be $1,829,219.26 based on the average hourly rate of $21.23. *See* Lab. Code

9    §§ 226.7 and 512(a); LippSmith Dec. ¶ 30. Plaintiffs calculated scenarios on Labor Code

10    penalties starting in the $30,000 range for predicate violations, but those scenarios

11    assumed every kind of infraction for every employee in every pay period. *See* Lab. Code

12    §§ 203, 226, 1197.1; LippSmith Dec. ¶ 30.

13    Discovery and investigation show a proposed class size of approximately 601

14    employees who worked an estimated 86,162 workweeks in the proposed class period

15    (September 15, 2016 through April 11, 2024) and an estimated 484 employees who

16    worked an estimated 47,996 pay periods in the proposed PAGA Period (September 15,

17    2016 through the date the Court grants Preliminary Approval of this settlement).

18    LippSmith Dec. ¶ 30. Defendants' sample data provides an average rate of pay of $21.23

19    per hour. *Id*. at ¶ 32. Based on Plaintiff's experiences, their Counsel's investigation and

20    discovery, and Defendants' sample data, Defendants' most demonstrable violations are

21    for failures to pay meal and rest break premiums. *Id.* at ¶ 31. These violations are more

22    discernable from Defendants' payroll data than, for example, violations for failures to pay

23    overtime and waiting time, to reimburse business expenses and for wage statement errors.

24    *Id*. Defendants' meal and rest break violations are also less vulnerable to defenses that

25    violations were trivial or not willful. *Id*. Thus, on the merits of the claims, Defendants'

26    meal and rest break violations drove settlement discussions, as Plaintiff anticipate they

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1   would drive the potential outcomes of litigation. *Id.*

2       As discussed at mediation, off-the-clock work was attributed to the fact that

3   Plaintiff's and Class Members' job duties included responding to inquiries from

4   supervisors and to attend to order-related matters before clocking in for their scheduled

5   shifts or during work breaks. LippSmith Dec. ¶ 32. Plaintiff contends that Defendants

6   also failed to always authorize and permit paid rest breaks because Plaintiff and Class

7   Members did not always get full ten-minute, uninterrupted rest breaks within the first

8   four hours of their shift or major fraction thereof, and each subsequent four hours worked

9   thereafter or major fraction thereof.

10      Plaintiff contends Defendants' policies violate Labor Code section 512(a) and

11  policies translated into missed, late, or short meal periods in the sample data. *Brinker*

12  *Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1041 (2012); LippSmith Dec. ¶ 33. The

13  percentage of qualifying shifts when employees suffered a missed, late, or short meal

14  period was 38.47%. *Id.*

15      Direct extrapolation of the 38.47% meal violation rate to the 430,810 shifts at

16  issue (86,162 workweeks x 5 days) yields approximately 165,733 violations. LippSmith

17  Dec. ¶ 34. Applying Defendants' average hourly pay rate of $21.23, the maximum meal

18  and rest break award would be $3,518,511.59. *Id.*; Lab. Code § 226.7(c). If Defendants

19  were to defeat class certification, rebut the *Bradley* presumptions, or undermine data

20  extrapolation, it would negate or significantly reduce any recovery, e.g., if Defendants

21  prove only one meal and rest break violation per workweek, that award would be

22  $703,700.65. LippSmith Dec. ¶ 34.

23      The derivative PAGA claims also yield a wide range of potential outcomes. If

24  Plaintiff runs the table on meal and rest break claims, the maximum PAGA penalties are

25  $14,398,800 (($100 per initial violation x 47,996 applicable first pay periods) + ($200 per

26  subsequent violation x 47,996 applicable subsequent pay periods)) for meal break

13

violations and $14,398,800 for rest break violations. Lab. Code, §§ 512(a), 226.7, & 2699(f)(2); LippSmith Dec. ¶ 35. But the Court could decide Defendants are not subject to $200 PAGA penalties without prior notice by the Labor Commissioner or any court. *E.g., Amaral,* 163 Cal. App. 4th at 1209. If so, $100 PAGA penalties for meal and rest break violations would be $4,799,600 ($100 per violation x 47,996 applicable pay periods) for each category. LippSmith Dec. ¶ 35. The Court could further reduce PAGA penalties if Defendants prove it took its obligations seriously and attempted to comply with the law. Lab. Code § 2699(e)(2); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1135 (2012) (upholding 30% reduction of $50 PAGA penalty) *rev'd on other grounds by Sierra Club v. Super. Ct.*, 57 Cal. 4th 157 (2013); *Kaanaana v. Barrett Bus. Servs. Inc.*, 29 Cal. App. 5th 778, 809 (2018) (expressing no opinion on 87% reduction of PAGA penalty for meal break violations). While Plaintiff would contest any reduction, a 30% reduction in $100 PAGA penalties would reduce them to $1,395,380 and an 87% reduction in $100 PAGA penalties would reduce them to $623,948. LippSmith Dec. ¶ 35.

For claims for failures to pay overtime or waiting time, to reimburse business expenses and for wage statement errors, Plaintiff's individual experiences and evidence from sampled employee files informed and supported those claims. However, given the nature of those claims and what the Parties gleaned from Defendants' sample data at this juncture, Plaintiff contends that Defendants' meal and rest break violations will likely drive the potential outcome of this litigation. LippSmith Dec. ¶ 36.

These valuations show high ranges of recoveries at issue here assuming regular violations impacting every employee every week, which will be challenging to prove. More importantly, though, actually achieving these kinds of recoveries requires Plaintiff to run the table by winning class certification, beating all dispositive motions, qualifying all of his experts and opinions, proving the types and frequencies of violations at trial,

beating post-trial motions, and surviving appeals on all of the above in the Ninth Circuit. Each of these hurdles in and of itself represents a major discounting factor so that even Plaintiff's most outsized hypothetical recovery years from now fairly aligns with what the Settlement provides aggrieved employees today. The Settlement provides a fair recovery to aggrieved employees now, without further delay due to continued litigation.

Second, the settlement amount is adequate given the expense, complexity, and duration of further litigation. To prevail in this action, Plaintiff would be required to move successfully for class certification pursuant to Rule 23, defeat summary judgment, and receive a favorable verdict capable of withstanding a potential appeal. The risks and costs associated with class action litigation weigh strongly in favor of settlement.

Third, whether class certification can be maintained through trial also weighs in favor of settlement. Certifying a class composed of 601 current and former employees presents complex issues that could undermine certification at the class certification stage as well as at other, later stages of the litigation.

Fourth, the $1,900,000 Maximum Settlement Amount is reasonable given the stage of the proceedings and the defenses asserted in this action. The Maximum Settlement Amount constitutes a fraction of Defendants' potential statutory damage exposure based on the average hourly rate of $21.23 culled from data sampling, the class size of 601 individuals, the number of pay periods and workweeks, and the estimated number of violations based on data sampling.

In addition to fairness, the Court should evaluate whether the settlement advances PAGA's primary objective "to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *See Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *4 (N.D. Cal. Apr. 2, 2010). PAGA penalties must, in part, "be distributed to the [LWDA] for enforcement of labor laws . . . and for education

of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes." *See* Lab. Code § 2699(j). As here, a PAGA settlement distributing 75% of civil penalties to the LWDA and 25% of the civil penalties to the aggrieved employees fulfills PAGA's express objectives. *Id.* at § 2699(i).

Fifth, the Parties have undertaken sufficient discovery to inform their view of the reasonableness of the Settlement. The Parties engaged in formal discovery, propounding written discovery, engaging experts, and exchanging documents. In addition, the Parties conducted informal discovery, which included production and analysis of thousands of pages of data.

Sixth, Counsel's experience and their respective views of the Settlement weigh in favor of approving the Settlement. Proposed Class Counsel's qualifications and experience support a determination that Counsel is qualified to represent the Class's interests. Plaintiff's Counsel have extensive experience in employment class actions, including significant wage-and-hour litigation. St. John Dec. ¶¶ 4–6; LippSmith Dec. ¶¶ 4–17. Based on that experience, Plaintiff's Counsel believe the Settlement is fair, reasonable, adequate, and is in the best interest of the Class Members. St. John Dec. ¶ 32; LippSmith Dec. ¶¶ 29, 48. While counsel's recommendations are not conclusive, the Court can properly consider them, particularly where, as here, Plaintiff's Counsel appear competent, have experience with this type of litigation, and have completed significant discovery and investigation. While courts have different views on the weight to accord Counsel's opinions of a settlement agreement, this factor weighs in favor of approving the settlement. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), with *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and

16

1    their counsel often have pecuniary interests in seeing the settlement approved.").

2          Seventh, the presence of a governmental participant, does not apply because no

3    governmental entity is a party. The proposed class representative is acting as a Private

4    Attorney General in this case, and the Settlement includes PAGA Penalties to the

5    LWDA. The Settlement's allocation of funds to the LWDA and PAGA payments to the

6    class are fair and reasonable and comport with Labor Code § 2699(i).

7          The eighth and final factor, the reaction of class members to the proposed

8    settlement, will be determined after issuing class notice. "[T]he absence of a large

9    number of objections to a proposed class action settlement raises a strong presumption

10   that the terms of a proposed class settlement action are favorable to the class members."

11   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal.

12   2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low

13   number of opt-outs and objections in comparison to class size is typically a factor that

14   supports settlement approval."). A "settlement is not unfair simply because a large

15   number or a certain percentage of class members oppose it, as long as it is otherwise fair,

16   adequate, and reasonable" because "[t]o hold otherwise would put too much power in the

17   hands of a few persons having no right to a preferred position in settlement, to thwart a

18   result that might be in the best interests of the class." *Boyd v. Bechtel Corp.*, 485 F. Supp.

19   610, 616 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was

20   persuasive that the settlement was adequate). The Parties will know the percentage of

21   objectors before the Final Approval Hearing and provide that information to the Court.

22       **D.**    **The Settlement Has No Obvious Deficiencies**

23         There are no obvious deficiencies in the settlement. *See*, *supra*, Section III

24   (discussing summary of settlement terms). There are no differences between the

25   settlement class and the proposed class in the operative Second Amended Complaint.

26   There are no differences between the claims to be released and the claims in the operative

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

1   complaint, other than Plaintiff agreeing to a broader release of his own individual claims

2   that do not apply to the other Class Members.

3   **VI.     CERTIFICATION OF THE CLASS IS APPROPRIATE**

4          The Parties have agreed to provisional certification of the Class for settlement

5   purposes only. Settlement ¶ 2.1. Class certification involves two steps. First, a plaintiff

6   must establish that each of the four requirements of Rule 23(a) is met: numerosity,

7   commonality, typicality, and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*,

8   564 U.S. 338, 349 (2011). Second, the plaintiff must establish that at least one of the

9   bases for certification set forth in Rule 23(b) is met. Here, Plaintiff seeks to certify a class

10  pursuant to Rule 23(b)(3) and must show that "questions of law or fact common to class

11  members predominate over any questions affecting only individual members, and that a

12  class action is superior to other available methods for fairly and efficiently adjudicating

13  the controversy." Fed. R. Civ. P. 23(b)(3).

14         **A.     The Class Is Sufficiently Numerous and Ascertainable**

15         The putative class must be "so numerous that joinder of all members is

16  impracticable." Fed. R. Civ. P. 23(a)(1). While not enumerated in Rule 23, "courts have

17  recognized that 'in order to maintain a class action, the class sought to be represented

18  must be adequately defined and clearly ascertainable.'" *Vietnam Veterans of Am. v.*

19  *C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d

20  733, 734 (5th Cir. 1970)); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061,

21  1071, n.4 (9th Cir. 2014) (referring, in dicta, to the "threshold ascertainability test"). "[A]

22  class definition is sufficient if the description of the class is 'definite enough so that it is

23  administratively feasible for the court to ascertain whether an individual is a member.'"

24  *Vietnam Veterans*, 288 F.R.D. at 211 (quoting *O'Connor v. Boeing N. Am., Inc.*, 184

25  F.R.D. 311, 319 (C.D. Cal. 1998)).

26

Courts have considered at least three aspects of "ascertainability" when considering whether to certify a class: whether (1) the class can be ascertained by reference to objective criteria; (2) the class includes members who are not entitled to recovery; and (3) the putative named plaintiffs can show they will be able to locate absent class members upon certification. *See Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at *3–4 (N.D. Cal. Sept. 18, 2014).

Here, the Class of approximately 601 people is so numerous that its joinder is impracticable. *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 435 (2000); LippSmith Dec. ¶ 30. Thus, the Class is sufficiently numerous. *See Rose v. City of Hayward*, 126 Cal. App. 3d 926, 934–35 (1981) (holding a class of 30 to 40 satisfies numerosity). Moreover, Defendants will identify all Class Members using employment records. Settlement ¶ 4.5.2. Thus, the Class is ascertainable. *See Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015).

### B.    The Class Members Share Common Questions of Law and Fact

A court can certify a Rule 23 class only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For purposes of Rule 23(a)(2), even a single common question is sufficient. *Wal-Mart*, 564 U.S. 359. The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. "What matters to class certification . . . is not the raising of common 'questions' - even in droves - but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (emphasis in original) (citation omitted).

Here, common issues of fact and law predominate. Defendants' policies and practices concerning overtime and meal break/rest periods implicate the class members' claims as a whole. Based on documents and information obtained through formal and

informal discovery and exchange of information for mediation, Plaintiff contends all

Class Members were subject to the same or similar job duties and uniform operations and

employment practices, policies, and procedures during the Class Period. Plaintiff's

claims arise from Defendants' uniform policy and systematic scheme, as to Plaintiff and

Class Members, of failing to pay regular, minimum, and overtime wages properly; failing

to pay all compensation due for work performed; failing to provide compliant meal and

rest periods and associated premium pay; and failing to reimburse Plaintiff and Class

Members for necessary business-related expenses. St. John Dec. ¶ 27; LippSmith Dec.

¶ 24. Plaintiff also contend Defendants' payroll and recordkeeping practices were the

same as to the Class during Class Period. Thus, Plaintiff claims Defendants uniformly

failed to pay all Class Members all compensation due to them during the Class Period.

These claims involve the same allegations, facts, supporting evidence, and

applicable law. Plaintiff argues the outcome of this litigation hinges on Defendants'

uniform operations and employment policies and procedures, which applied across its

hourly-paid employees during the Class Period. The claims will rise and fall together;

common issues predominate.

As discussed, *infra*, in Part XI, Plaintiff's claims are typical of the Class because

Defendants employed them during the Class Period, and they suffered wage-and-hour

problems typical of the Class. LippSmith Dec. ¶ 24. Also as discussed, *infra*, in Part VII,

Plaintiff is an adequate class representative. Moreover, as discussed, *infra*, in Part VIII,

Plaintiff's Counsel will fairly, adequately, and zealously continue to protect the interests

of the Class. Finally, prosecution of separate actions by individual Class Members would

create the risk of inconsistent or varying adjudications. Thus, a class action is superior

means for the fair adjudication of the case. Accordingly, the Court should certify the

Class for settlement purposes only.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

## VII. THE COURT SHOULD PROVISIONALLY APPOINT A CLASS REPRESENTATIVE

Plaintiff respectfully requests provisional appointment as Class Representative. His claims and defenses are typical of the class, and he is adequate to represent the Class's interests pursuant to Rule 23(a)(3). The claims of Plaintiff and putative class members are identical and arise under the same provisions of the California Labor Code. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 608 (C.D. Cal. 2005) ("Since the named Plaintiffs raise the same Labor Code violations as other putative class members, their claims are typical of the class."), *rev'd and vacated on other grounds*, *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013) (en banc).

Plaintiff's employment file shows that his claims are typical of the Class. LippSmith Dec. ¶ 24. Plaintiff alleges that Defendants engaged in uniform, unlawful practices and procedures, including failure to pay regular, minimum, and overtime wages properly; failure to pay all compensation due for all of the work performed; failure to provide compliant meal periods, rest periods, and associated premium pay; failure to pay timely wages during employment and upon termination; failure to provide compliant wage statements; failure to maintain requisite payroll records; and failure to reimburse necessary business expenses. Plaintiff's individual claims align with those of the Class; his claims and defenses are, therefore, typical of the Class. Moreover, Plaintiff does not have any individual claims or defenses, so he has no conflict with the Class.

Plaintiff has zealously pursued this action on the Class's behalf. Plaintiff understands and has taken seriously his role as potential class representative and as California Private Attorney General, stepping up to pursue claims on behalf of others. Declaration of Nico Cruz Sanchez ("Sanchez Dec."), ¶ 3. Plaintiff has been available whenever his attorneys need him and spent time and effort producing relevant documents

21

1    and providing facts and evidence necessary to help prove the allegations. St. John Dec.

2    ¶ 14; LippSmith Dec. ¶ 43; Sanchez Dec. ¶ 5. Plaintiff has also considered what is fair

3    for Class Members and Aggrieved Employees through the pendency of this matter.

4    Sanchez Dec. ¶ 7. If the Court appoints Plaintiff as Class Representative, he will continue

5    to use his independent judgment on what is fair and reasonable for all Class Members

6    and for the LWDA. *Id.* at ¶ 9. Plaintiff has also agreed to a broader release of his own

7    individual claims that would not apply to the other Class Members. *Id.* at ¶ 7. This Court

8    should provisionally appoint Plaintiff as Class Representative.

9    **VIII.   THE COURT SHOULD PROVISIONALLY APPOINT CLASS COUNSEL**

10          Plaintiff's Counsel have litigated this matter for nearly four years. St. John Dec.

11   ¶ 15. As discussed in Part V.C, *supra,* the work in this matter has been ultimately

12   successful in achieving a substantial settlement. Plaintiff's Counsel are well-experienced

13   in wage-and-hour class action litigation and used that experience to obtain a significant

14   Settlement that includes both a common fund and PAGA Penalties. St. John Dec. ¶¶ 4–6;

15   LippSmith Dec. ¶¶ 14, 16.

16          The Settlement allows Plaintiff's Counsel to apply for an attorney fee award in an

17   amount of $665,000, or 35% of the Maximum Settlement Amount. Settlement ¶ 1.18.

18   The Settlement also allows Plaintiff's Counsel to apply for up to $23,000 in litigation

19   costs and expenses. *Id.* The Attorney Fees and Costs provided for in the Settlement are

20   commensurate with: (1) the risk Plaintiff's Counsel took in bringing and litigating this

21   case, (2) the extensive time, effort and expense Plaintiff's Counsel have dedicated and

22   will dedicate to the case, (3) the skill and determination Plaintiff's Counsel have shown,

23   (4) the results Plaintiff's Counsel have achieved throughout the litigation, (5) the value of

24   the Settlement Plaintiff's Counsel have achieved for the Class Members and the LWDA,

25   and (6) the other cases Plaintiff's Counsel turned down in order to devote their time and

26   efforts to this matter. St. John Dec. ¶ 15. The proposed Notice provides Class Members

with information about the amount allocated toward, and to be sought for, Attorney Fees and Costs, per the Settlement. Settlement, Ex. 1.

Plaintiff's Counsel have borne all the risks and costs of litigation and will not receive any compensation until recovery is obtained. LippSmith Dec. ¶ 45. Plaintiff's Counsel will submit evidence that their "billing rates" are "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation" *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, at *17 (N.D. Cal. Nov. 4, 2020). Of course, Plaintiff's Counsel will provide extensive evidence as to the time worked, litigation efforts, and further argument in Plaintiff's Motion for Final Approval and application for Attorney Fees and Costs and at the Final Approval Hearing. Considering the work performed and the risks incurred, the Attorney Fees and Costs set forth in the Settlement are well within the range of reasonableness.

## IX.   THE COURT SHOULD APPOINT SIMPLURIS AS SETTLEMENT ADMINISTRATOR

The Parties agree to the appointment of Simpluris, Inc. as Settlement Administrator. Settlement ¶ 1.32. Simpluris has extensive experience in class actions. Declaration of Eric Springer ("Springer Dec."), ¶ 5. Simpluris has provided notification and/or claims administration services in more than 8,000 cases. *Id.* at ¶ 6. Simpluris has handled approximately $7 billion in settlements during the past 15 years. *Id.*

Simpluris will mail the Notice to each Class Member by First Class U.S. mail. Settlement ¶ 4.5.2. The Claims Administrator will calculate the Individual Settlement Shares and PAGA Settlement Shares; deduct and transmit applicable state, and/or federal taxes thereon; mail the payment checks to Claimants and PAGA Recipients; issue W-2 and 1099 forms; calculate and disburse the Attorney Fees and Costs and Service Payment; and perform such other tasks necessary to effectuate the Notice Plan and terms of the Settlement. *Id.* at ¶¶ 4.5–4.6; Springer Dec. ¶¶ 8–12. The Claims Administration

1    Costs are estimated to be $8,837. Springer Dec. ¶ 13 & Ex. C. Administration Costs will

2    be paid out of the Maximum Settlement Amount. Settlement ¶ 1.18.

3        Accordingly, Plaintiff respectfully requests that the Court appoint Simpluris as the

4    Claims Administrator and direct Simpluris to effectuate the Notice Plan.

5    **X.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE**

6        The Court "must direct notice in a reasonable manner to all class members who

7    would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the

8    best notice that is practicable under the circumstances, including individual notice to all

9    members who can be identified through reasonable effort." The notice must "clearly and

10   concisely state in plain, easily understood language" the nature of the action, the class

11   definition, and the class members' right to exclude themselves from the class. Fed. R.

12   Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach

13   all class members, it does not require that each class member actually receive notice. *See*

14   *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting the standard for class notice

15   is "best practicable" notice, not "actually received" notice).

16       The proposed Notice describes the terms and conditions of the Settlement; the

17   monetary relief the Settlement will provide to Claimants and PAGA Recipients; the

18   deadlines and procedures to submit a Request for Exclusion, Objection, or Dispute; and

19   the date and time set for the Final Approval Hearing. Settlement, Ex. 1. The proposed

20   Notice also lists the number of Workweeks credited to each Class Member, states the

21   estimated gross amount of the Class Member's Individual Payment Amount and, if

22   applicable, an estimate of each PAGA Recipient's PAGA Payment. *Id.*

23       The proposed Notice also satisfies all due process requirements and complies with

24   the standards of fairness, completeness, and neutrality. Rubenstein, *Newberg and*

25   *Rubenstein on Class Actions* § 8.17 (6th ed., June 2022 update). Accordingly, the Court

26   should approve the proposed Notice.

1   **XI.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

2          Plaintiff seeks approval of the proposed Notice Plan and accompanying deadlines.

3   *Newberg*, at § 8.17; Springer Dec. ¶¶ 8-12. Within fourteen (14) calendar days of the

4   order granting preliminary approval, Defendants must provide Simpluris with

5   information necessary to compile the Class List and Information. Settlement ¶ 4.5.2.

6   Within ten (10) calendar days of receiving the Class List and Information, Simpluris must

7   mail the notice to the Class, after searching for updated address information. *Id.* Class

8   Members have forty-five (45) calendar days from the Notice mailing to opt out by

9   mailing a signed Request for Exclusion. *Id.* at ¶¶ 1.29, 4.6.3–4. Class Members who

10  object to the Settlement must do so within the same timeframe. *Id.* at ¶¶ 1.29, 4.6.7–8.

11  The Settlement also provides a process for Class Members to submit a Dispute related to

12  the number of Workweeks during the Class or PAGA Period, as indicated in their Notice.

13  *Id.* at ¶ 4.6.2. The Settlement also describes the process for addressing undelivered

14  Notices, including remailing those Notices to a forwarding address within five days or

15  skip-tracing or using other methods to locate a forwarding address. *Id.* at ¶ 4.5.3;

16  Springer Dec. ¶ 11. The Settlement also adjusts the deadline to object or opt out of the

17  Settlement in the event of a returned or undeliverable Notice. Settlement ¶ 4.6.1.

18         Plaintiff respectfully requests that this Court set the due date for the Motion for

19  Final Approval for two weeks before Final Approval Hearing and set the Final Approval

20  Hearing for as soon as is practicable following the Response Deadline.

21  **XII.    CONCLUSION**

22         For the foregoing reasons, Plaintiff respectfully requests that this Court grant

23  preliminary approval of the Settlement.

24  ///

25  ///

26

1   Dated: May 30, 2024              **LIPPSMITH LLP**

2

3                         By:    <u>/s/ *Celene Chan Andrews*</u>

4                               Graham B. LippSmith
                              Celene Chan Andrews

5

6                           **LAWYERS *for* JUSTICE, PC**
                              Arby Aiwazian

7                               Joanna Ghosh
                              Brian St. John

8                           *Attorneys for* Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1

## **CERTIFICATE OF SERVICE**

2        I, Celene Chan Andrews, certify and declare as follows:

3        I am over the age of 18 and not a party to the within action.  My business address

4   is LippSmith LLP, 555 S. Flower Street, Suite 3000, Los Angeles, CA 90071.

5               On **May 30, 2024**, I electronically filed **PLAINTIFF'S NOTICE OF**

6   **MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS**

7   **ACTION AND PAGA SETTLEMENT** with the Clerk of the Court, using the

8   CM/ECF system, which will send notification of such filing to the counsel of record in

9   this matter who are registered on the CM/ECF system to receive service.

10

11       I declare under penalty of perjury under the laws of the United States of America

12   that the foregoing is true and correct.

13       Executed on May 30, 2024 at Los Angeles, California.

14

15                          By:  */s/ Celene Chan Andrews*
                                 Celene Chan Andrews

16

17

18

19

20

21

22

23

24

25

26

1

LEGAL02/44433967v1