1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| NICO CRUZ SANCHEZ, individually, and on behalf of other members of the general public similarly situated, | ) Case No.: 1:20-cv-1510 JLT EPG ) ) ORDER GRANTING PLAINTIFF'S MOTION ) FOR PRELIMINARY APPROVAL OF CLASS ) ACTION AND PAGA SETTLEMENT |
|                              Plaintiff, | ) |
|          v. | ) (Doc. 70) ) |
| MOHAWK INDUSTRIES, INC.; DALTILE SERVICE, INC.; DAL-TILE SERVICES, INC.; DAL-TILE CORPORATION, | ) ) ) ) |
|                              Defendants. | ) ) |

19          Nico Cruz Sanchez asserts the defendants—including Mohawk Industries, Inc.; Dal-tile

20  Service, Inc.; Daltile Service, and Inc.; Dal-tile Corporation— failed to comply with California's wage

21  and hour laws.  (*See generally* Doc. 69.)  Plaintiff now seeks preliminary approval of a class

22  settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Specifically, Plaintiff seeks:

23  (1) provisional certification of the settlement class; (2) preliminary approval of the settlement terms,

24  including a PAGA payment; (3) appointment as the class representative; (4) appointment of Arby

25  Aiwazian, Joanna Ghosh, and Brian St. John of Lawyers for Justice and LippSmith LLP, as class

26  counsel; (5) appointment of Simpluris, Inc., as the settlement administrator; (6) approval of the class

27  notice; and (7) scheduling for final approval.  (Doc. 70.)  For the following reasons, the motion for

28  preliminary approval of the class settlement is **GRANTED**.

**BACKGROUND**

Nico Cruz Sanchez was employed as a warehouse associate from approximately September 2016 to December 2018.  (Doc. 70-2 at 11, ¶ 2.4.)  He alleges that "Defendants, jointly and severally, employed [him] as an hourly-paid, non-exempt employee."  (Doc. 69 at 12, ¶ 28.)  He contends, "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California."  (*Id.* at 13, ¶ 35.)

Plaintiff alleges he worked more than eight hours in a day and "in excess of forty … hours in a week performing work duties off-the-clock."  (Doc. 69 at 20, ¶ 64.)  He asserts that he, and other employees, were required "to wait in line to clock in."  (*Id.*)  Plaintiff contends, "Defendants had a policy and practice of turning off the computers and requiring Plaintiff and other class members to start-up … the computers and wait several minutes prior to being able to clock in."  (*Id.*, ¶ 65.)  He asserts they waited "several minutes to clock-in and clock-out due to the limited amount of available and operating machines and the line that would form due to other employees waiting to clock-in or clock-out at the same time."  (*Id.* at 20-21, ¶ 65.)

Plaintiff alleges Defendants also violated California law by failing to provide proper meal and rest breaks.  (Doc. 69 at 22-26, ¶¶ 73-80, 86-92.)  He asserts Defendants required him to work for more than five hours "without an uninterrupted meal period of not less than thirty minutes… and/or rest period."  (*Id.*, ¶ 74.)  Plaintiff contends, "meal periods were often missed, shortened, late, and/or were interrupted because Defendants required them continue to work on orders if it was too busy."  (*Id.*, ¶ 75.)  He also asserts, "Defendants interrupted Plaintiff and the other class members during purported meal periods with business-related inquiries, instructions for tasks, and/or to require them to return to work before a full thirty … minutes elapsed to complete or begin tasks."  (*Id.*, ¶ 76.)  Similarly, Plaintiff contends the "rest periods were missed, shortened, late, and/or were interrupted because Defendants required them to continue to work and did not provide actual rest breaks that were uninterrupted and off duty, noting that the employees will stop every now and then and talk."  (*Id.* at 25, ¶ 88.)  Plaintiff reports he "did not take any uninterrupted rest period of no less than ten… minutes while working for Defendants."  (*Id.*)  Plaintiff alleges Defendants did not pay the premiums required under California law for the failure to provide compliant rest and meal breaks.  (*Id.* at 9, ¶ 19.)

2

1    According to Plaintiff, "Defendants failed to pay minimum wage" because of the work

2 required during the interrupted breaks and off-the-clock was unpaid.  (Doc. 69 at 27, ¶ 96.)  He

3 contends that he and the similarly situated employees "are entitled to recover the unpaid balance of

4 their minimum wage compensation as well as interest…."  (*Id.* at 28, ¶ 97.)

5    Plaintiff alleges Defendants failed to timely pay him all wages due during the course of his

6 employment.  (Doc. 69 at 30-31, ¶¶ 108-111.)  He contends Defendants also failed to reimburse him

7 "for all necessary business-related expenses and costs" during his employment, such as the use of his

8 personal phone for business-related purposes."  (*Id.* at 36, ¶¶ 130-131.)  In addition, Plaintiff asserts

9 that after his termination, Defendants failed to pay all "wages, earned and unpaid, immediately at the

10 time of [his] discharge."  (*Id.* at 29, ¶ 102.)  He contends Defendants also failed to timely pay all wages

11 due to individuals "who quit their employment."  (*Id.*, ¶ 103.)

12    Further, Plaintiff asserts that Defendants "intentionally and willfully failed to provide [him] and

13 the other class members with complete and accurate wage statements," as a result of the alleged

14 violations of California labor law.  (Doc. 69 at 32, ¶ 115.)  He alleges, "Defendants had the information

15 necessary to provide [accurate] wage statements… yet failed to do so on a systematic basis and instead

16 provided wage statements that did not reflect the time worked off the clock or any meal and rest period

17 premiums earned."  (*Id.* at 32-33, ¶ 115.)  Plaintiff contends the wage statements did not "accurately

18 reflect[] the total number of hours actually worked and the actual gross and net wages that were

19 earned."  (*Id.* at 33, ¶ 115.)

20    Plaintiff reports that he "requested copies of his employment records, including, but not limited

21 to, his payroll records" on May 15, 2019.  (Doc. 69 at 25, ¶ 123.)  He asserts, "Defendants did not

22 produce all employment records required pursuant to California Labor Code sections 432, 226, and

23 1198.5."  (*Id.*, ¶ 124.)  Plaintiff alleges, "upon information and belief, Defendants have failed to keep

24 … accurate and complete payroll records, among other things."  (*Id.*)

25    On September 14, 2020, Plaintiff initiated this action by filing a complaint on behalf of himself

26 and others similarly situated in Fresno County Superior Court, Case No. 20CECG02675.  (Doc. 1-2.)

27 Defendants filed a notice of removal, invoking this Court's jurisdiction under the Class Action

28 Fairness Act.  (Doc. 1 at 2.)  The Court denied Plaintiff's motion to remand on January 10, 2022.

(Docs. 7, 18.)  The Court then issued a scheduling order, opening class discovery and setting a briefing schedule regarding any motion for class certification.  (Doc. 31.)

On August 24, 2022, Plaintiff filed an amended complaint against Defendants raising the following causes of action: (1) unpaid overtime, (2) unpaid meal periods, (3) unpaid rest periods, (4) failure to pay minimum wages, (5) failure to timely pay wages due during employment, (6) failure to timey pay final wages, (7) non-complaint wage statements, (8) failure to keep requisite payroll records, (9) unreimbursed business expenses, and (10) violations of Cal. Bus. & Prof. Code §§ 17200. (*See generally* Doc. 40.)  Plaintiff indicated the claims were brought on his own behalf and all others similarly situated, including: "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from September 15, 2016 to final judgment and who reside in California."  (*Id.* at 4, ¶¶ 14-15.)

The parties engaged in discovery, including both informal information exchanges and propounded formal discovery requests.  (Doc. 70 at 18; Doc. 71 at 11, ¶ 26.)  Plaintiff reports that counsel "reviewed and analyzed thousands of pages of documents and data Defendants produced." (Doc. 70 at 18.)  According to Plaintiff, the discovery included: "employment records; a detailed sampling of Class Members' time and pay data, including… spreadsheets of timecard and wage statement statistics; Defendants' Employee Handbooks, agreements, forms, and policy and procedure documentation."  (*Id.*)  The parties also engaged experts, who performed data analysis.  (Doc. 70 at 24; Doc. 70-1 at 17, ¶ 46.)

The parties participated in a mediation session with David Rotman, Esq., on June 20, 2023. (Doc. 70-1 at 11, ¶ 27.)  Although the matter did not settle at that time, the parties "continued to discuss potential resolution of this case subsequent to the mediation, including requesting, receiving, and analyzing further data and production."  (*Id.* at 11-12, ¶ 29.)  The parties participated in a second mediation with Jeffrey Fuchsman, Esq., on January 12, 2024.  (*Id.* at 12, ¶ 29.)  Mr. Fuchsman prepared a Mediator Proposal, which all parties accepted by January 17, 2024.  (*Id.*)  In order to effectuate terms of the settlement, the parties stipulated that Plaintiff may file a second amended complaint, to add a claim for penalties under California's Private Attorney General Act.  (Doc. 67 at 5, § T.)  The parties indicated that, for settlement purposes only, Defendants agreed to "not assert a statute of limitations

1  defense to Plaintiff's PAGA claim." (*Id.*, § U.)  The Court approved the stipulation (Doc. 68), and

2  Plaintiff filed his SAC with the additional PAGA claim on April 15, 2024 (Doc. 69).

3       The parties executed the written agreement in May 2024.  (Doc. 70-2 at 2-32.)  Plaintiff seeks

4  preliminary approval of the settlement terms.  (Doc. 70.)  Defendants filed a statement of non-

5  opposition to the pending motion.  (Doc. 71.)

6  <div align="center">**THE PROPOSED SETTLEMENT**</div>

7       Pursuant to the "Joint Stipulation of Class Action and PAGA Settlement" ("the Settlement"),

8  the parties agree to a gross settlement amount of $1,900,000.00 for the class defined as: "all current

9  and former hourly-paid or non-exempt employees who worked for any of the Defendants within the

10  State of California at any time during the period from September 15, 2016, through April 11, 2024, …

11  and who reside in California."[1]  (Doc. 70-2 at 2, ¶ 1.3; *id.* at 7, ¶ 1.18.)  In addition, the Settlement

12  includes an "escalator clause," under which the gross settlement amount may be increased if the actual

13  number of workweeks for all class members increases by more than 10% over the estimated 86,162

14  workweeks included in the Class Period.  (*Id.* at 3, ¶ 1.3.)  Defendants agreed to deliver the gross

15  settlement amount to an escrow account of the proposed administrator within ten days of executing the

16  Settlement.  (*Id.* at 24, ¶ 4.11.1.)

17  **I.      Payment Terms**

18       The gross settlement fund will cover payments to class members, with additional compensation

19  to Plaintiff as the class representative.  (Doc. 70-2 at 7, ¶ 1.18.)  In addition, the Settlement provides for

20  payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the

21  California Labor & Workforce Development Agency.  (*Id.*; *see also id.* at 9, ¶ 1.31.)  Specifically, the

22  Settlement provides for the following payments from the gross settlement amount:

23      • The Class Representative will receive a service payment up to $10,000;

24      • Class counsel will receive up to $665,000.00 for attorneys' fees and
         litigation expenses up to $23,000;

25
26      • The California Labor and Workforce Development Agency shall receive
         $75,500 from the total PAGA payment of $100,000, with the remainder
         distributed to aggrieved employees; and

27

28  [1] The Class Period is defined as "September 15, 2016 through April 11, 2024, or through the Preliminary
   Approval Date (whichever is earlier)."  (Doc. 70-2 at 4, ¶ 1.6.)  Accordingly, the Court adopts the earlier date.

- The Settlement Administrator will receive up to $9,000 for fees and expenses.

(*Id.* at 7, ¶ 1.18; *id.* at 9, ¶ 1.31.)  After these payments, the remaining money ("Net Settlement Amount") — which is currently estimated to be $1,093,000— will be distributed to class members. (*Id.* at 7, ¶ 1.18; Doc. 70 at 9.)  The parties agreed that the fund is "non-reversionary," and "under no circumstances will there be any reversion to Defendants of any funds" from the "Maximum Settlement Amount" or gross settlement.  (*Id.* at 25, ¶ 4.11.12.)

Class members are not required to submit a claim to receive a share from the Net Settlement Amount.  (Doc. 70-2 at 16, ¶ 4.2.1; *see also id.* at 46-47.)  Class members' shares will be distributed on a pro rata basis, based upon their number of workweeks during the relevant period.  (*Id.*, ¶ 4.2.2.) Specifically, the Settlement provides:

> Each Class Member's Individual Payment Amount shall be calculated by (i) dividing the Settlement Class Member's total number of workweeks worked for Defendants in California during the Class Period by the total number of workweeks worked by all Settlement Class Members for Defendants during the Class Period, and (ii) multiplying that pro rata share by the allocated amount of the Net Settlement Amount. Any workweeks during the Class Period in which a Settlement Class Member did not actually work (for example, while on a leave of absence, etc.) are not included in calculating that Settlement Class Member's Individual Payment Amount. The calculation of a Settlement Class Member's total workweeks worked in California shall be construed from Defendants' records. Each Settlement Class Member's Individual Payment Amount shall be distributed to that Settlement Class Member, less applicable withholdings attributed to the portion of Individual Payment Amounts designated as wages.

> Of the PAGA Penalty Payment of $100,000.00, 25%, or $25,000.00, will be distributed among the PAGA Aggrieved Employees, even if the employee opts out of the class settlement. The PAGA Aggrieved Employees' share of the $25,000.00 of the PAGA Penalty Payment shall be calculated by (i) dividing the aggrieved employee's total number of workweeks worked for Defendants in California during the PAGA Period by the total number of workweeks worked by all aggrieved employees for Defendants during the PAGA Period, and (ii) multiplying that pro rata share by the allocated amount of the $25,000.00. Any workweeks during the PAGA Period in which an aggrieved employee did not actually work (for example, while on a leave of absence, etc.) are not included in calculating that aggrieved employee's PAGA payment. The calculation of an aggrieved employee's total workweeks worked in California shall be construed from Defendants' records.

(*Id.*)  Thus, the exact amount settlement class members receives depends upon how many weeks they

worked for Defendants, and whether they are entitled to a portion allocated for the release of PAGA claims.  With an anticipated class of 601 individuals, the average share of the Net Settlement Amount is approximately $1,818.64.  (Doc. 70-1 at 15, ¶ 38.)

The appointed Settlement Administrator will distribute payments by mailing checks to all participating class members and aggrieved employees.  (Doc. 70-2 at 25, ¶ 4.11.3.)  Checks must be cashed within 90 days of the mailing.  (*Id.*, Settlement ¶ 57.)  If any check remains uncashed after the 90-period, the check will be cancelled and voided.  (*Id.*, ¶ 4.14.4.)  The Settlement Administrator shall redistribute the uncashed funds to those "who cashed their payments from the initial distribution of Settlement Proceeds," with the same pro rata calculation methods.  (*Id.*)  If checks from the second distribution are not cashed, the funds will not revert to Defendants.  (*Id.*)  Rather, the Settlement Administrator will cancel and void the checks, and the money will be distributed to a cy pres beneficiary—who the parties propose shall be Legal Aid at Work—"or shall otherwise be distributed as ordered by the Court."  (*Id.*)

## II.       Releases

The Settlement provides that Plaintiff and class members, other than those who elect not to participate in the Settlement, release Defendants[2] from claims "from September 15, 2016, through the date of preliminary approval."  (Doc. 70-2 at 9, ¶ 1.27.) The "Released Claims" are defined as:

> all claims, demands, rights, liabilities, and causes of action that were pled in any of the complaints in the Action or could have been pled based on the facts alleged in any of the complaints in the Action, based on Defendants' alleged (1) failure to pay all overtime in violation of California Labor Code sections 510, 1194 and 1198 and the applicable IWC Wage Orders; (2) failure to provide proper meal periods, or premium pay for non-compliant meal periods, in violation of California Labor Code sections 226.7 and 512 and the applicable IWC Wage Orders; (3) failure to authorize and permit rest periods, or premium pay for non-compliant rest periods, in violation of California Labor Code section 226.7 and the applicable IWC Wage Orders; (4) failure to pay minimum wages in violation of California Labor Code sections 1194, 1194.2, 1197, and 1197.1 and the applicable IWC Wage Orders; (5) failure to pay all wages

---

[2] The Settlement defines "Releasees" as including "Defendants and their present and former parent companies, subsidiaries, affiliates, and joint ventures, and each of their respective present and former officers, directors, controlling stockholders, agents, affiliates, employees, insurers, co-insurers, reinsurers, attorneys, including legal counsel herein, accountants, auditors, advisors, representatives, consultants, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, general and limited partners, predecessors, successors and assigns, and the spouse of each of the foregoing who is a natural person." (Doc. 70-2 at 9, ¶ 1.28.)

1
2
3
4
5
6
7

> on termination of employment in violation of California Labor Code sections 201, 202, and 203; (6) failure to pay timely wages during employment in violation of California Labor Code sections 204; (7) failure to provide accurate wage statements in violation of California Labor Code section 226 and the applicable IWC Wage Orders; (8) failure to maintain requisite payroll records in violation of California Labor Code sections 226, 432, 1174, and 1198.5; (9) unreimbursed business expenses in violation of Labor Code sections 2800 and 2802; (10) all claims for unfair business practices that could have been premised on the facts, claims, causes of action or legal theories described above; and (11) all claims under the PAGA that could have been premised on the facts, claims, causes of action or legal theories described above.

8    (*Id.* at 8-9, ¶ 1.27.)

9        For individuals who are "aggrieved employees" under PAGA, the released claims include: "all

10   PAGA claims and claims for PAGA penalties alleged in any iteration of the complaints filed by

11   Plaintiff, and any letter submitted to the LWDA by Plaintiff seeking authorization to pursue PAGA

12   claims which occurred during the PAGA Period."  (Doc. 70-2 at 7, ¶ 1.22.)  Even if an aggrieved

13   employee opt out of the class settlement, he or she will still be bound by the PAGA Release," which

14   covers the period from September 15, 2019 to the Preliminary Approval date.  (*Id.*, ¶¶ 1.21, 1.22.)

15   However, this release "does not cover an aggrieved employee's individual Labor Code claims" and

16   "expressly excludes claims for vested benefits, wrongful termination, unemployment insurance,

17   disability, social security, workers' compensation, and PAGA claims arising after the end of the

18   PAGA Period."  (*Id.* at 7-8, ¶ 1.22.)

19       The release for Plaintiff encompasses more claims than those identified for Settlement Class

20   Members and the PAGA Members, because he agreed to release additional claims that could have

21   arisen during the course of his employment with Defendants, whether known or unknown.  Plaintiff's

22   release encompasses:

23
24
25
26
27
28

> all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Releasees, based on the facts as set forth in the Second Amended Complaint filed on April 15, 2024, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, including unknown claims covered by Civil Code § 1542 (as quoted in Paragraph 4.12.2) by the Class Representative, arising during the period from the beginning of the Class Representative's dates of employment with Defendants to the date on which the Court enters an order granting final approval of this Settlement, for any type of relief, including, without limitation, claims for wages, business expenses, damages, unpaid costs,

penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief with the sole exception of any claims which cannot be released as a matter of law. The Class Representative's Released Claims include, but are not limited to, the Released Claims as well as any other claims under any provision of the Fair Labor Standards Act, any provision of the California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, all claims for statutory penalties that could have been sought by the Labor Commissioner for the violations identified in Plaintiff's pre-filing letter to the LWDA, and claims under state or federal discrimination statutes, including, without limitation, the California Fair Employment and Housing Act, California Government Code § 12940 et seq.; the Unruh Civil Rights Act, California Civil Code § 51 et seq.; the California Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; California's PAGA (Cal. Labor Code § 2698, et seq.); Cal. Bus. and Prof. Code § 17200 et seq.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; any IWC California Wage Orders and California Code of Regulations, Title 8, section 11000, et seq.; and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty; and all of their implementing regulations and interpretive guidelines.

(*Id.* at 4-5, ¶ 1.8.)  Thus, claims released by Plaintiff—but not the Settlement Class—include any claims arising under the Americans with Disabilities Act, Title VII, 42 U.S.C. § 1981, and ERISA. Indeed, the Settlement indicates Plaintiff makes a general release "to the fullest extent permitted by law, the provisions, rights, and benefits he may otherwise have had pursuant to California Civil Code section 1542." (*Id.* at 26, ¶ 4.12.2.)  Plaintiff acknowledges that the waiver of the provisions of Section 1542 was "an essential and material term" of the Settlement, which "would not have been entered without such a waiver from Plaintiff." (*Id.*, ¶ 4.12.3.)

## III.    Objections and Opt-Out Procedure

The proposed "Notice of Class Action Settlement" (the "Notice") explains to class members they need not take any action to receive a settlement payment.  (Doc. 70-2 at 44.)  However, any class member who wishes may file objections or request exclusion from the Settlement.  (*Id.* at 70-2 at 20-22, ¶¶ 4.6.3- 4.6.10.)

Individuals who wish to be excluded from the Settlement Class must submit a "Request for

9

Exclusion" that includes their "full name, address, and telephone number, the name and case number of the Action, and shall be signed by the Class Member." (Doc. 70-2 at 20, ¶ 4.6.3.)  The Notice informs individuals: "If you exclude yourself from the settlement, you will not be entitled to recover any settlement payment except your share of the PAGA settlement if you worked during the PAGA Period. You will also not be allowed to object to the settlement, but you will retain the right to bring any claims you may have against Defendants." (*Id.* at 46.)  Requests for Exclusion must be mailed within 45 days of the mailing of the Notice to be deemed timely. (*Id.* at 21, ¶ 4.6.4; *see also id.* at 9, ¶ 1.29.)

Class members may also object to the settlement terms by mailing a written statement to the Settlement Administrator within 45 days of the mailing of the Notice Packet. (Doc. 70-2 at 22, ¶ 4.6.8; *see also id.* at 9, ¶ 1.29.)  An objection must include: (1) the case name and number; (2) the full name of the class member; (3) grounds for objection; (4) "any legal briefs, papers, or memoranda the objecting Class Member proposes to submit to the Court." (*Id.* at 21, ¶ 4.6.7.)  The proposed Notice also explains these requirements. (*Id.* at 46, § D.2.)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval").  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

## I.     Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a).  Plaintiff seeks provisional certification of Settlement Class defined as:

1    "all current and former hourly-paid or non-exempt employees who worked for any of the Defendants

2    within the State of California at any time during the period from September 15, 2016, through April 11,

3    2024, and who reside in California."  (Doc. 70 at 10; *see also* Doc. 70-2 at 3, ¶ 1.3.)

4        **A.    Rule 23(a) Requirements**

5        Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a)

6    are satisfied, and "must affirmatively demonstrate … compliance with the Rule."  *Wal-Mart Stores,*

7    *Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304,

8    1308 (9th Cir. 1977).  The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly

9    encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest. v. Falcon*,

10   457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

11               (1) the class is so numerous that joinder of all members is impracticable;
             (2) there are questions of law or fact common to the class; (3) the claims
12               or defenses of the representative parties are typical of the claims or
             defenses of the class; and (4) the representative parties will fairly and
13               adequately protect the interests of the class.

14   Fed. R. Civ. P. 23(a).  These prerequisites are generally referred to as numerosity, commonality,

15   typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

16           1.    Numerosity

17       This prerequisite requires the Court to consider "specific facts of each case and imposes no

18   absolute limitations."  *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is

19   not a specific threshold, joining more than one hundred plaintiffs is impracticable.  *See Gay v. Waiters'*

20   *& Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977) (a proposed class with 110

21   members "clearly [included] a sufficient number to meet the numerosity requirements").  Plaintiff

22   estimates the Settlement Class includes "approximately 601 people."  (Doc. 70 at 27.)  Therefore,

23   joinder of all identified individuals is impracticable, and the numerosity requirement is satisfied.

24           2.    Commonality

25       Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

26   To satisfy the commonality requirement, the plaintiff must demonstrate common points of facts and

27   law.  *See Wal-Mart Stores*, 564 U.S. at 350.  Thus, "commonality requires that the class members'

28   claims depend upon a common contention such that determination of its truth or falsity will resolve an

issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations omitted).

Plaintiff asserts the commonality requirement is satisfied because "class members share common questions of law and fact." (Doc. 70 at 27, emphasis omitted.) Specifically, Plaintiff asserts:

> Defendants' policies and practices concerning overtime and meal break/rest periods implicate the class members' claims as a whole. Based on documents and information obtained through formal and informal discovery and exchange of information for mediation, Plaintiff contends all Class Members were subject to the same or similar job duties and uniform operations and employment practices, policies, and procedures during the Class Period. Plaintiff's claims arise from Defendants' uniform policy and systematic scheme, as to Plaintiff and Class Members, of failing to pay regular, minimum, and overtime wages properly; failing to pay all compensation due for work performed; failing to provide compliant meal and rest periods and associated premium pay; and failing to reimburse Plaintiff and Class Members for necessary business-related expenses.

(Doc. 70 at 27-28, citing St. John Dec. ¶ 27 [Doc. 70-3 at 20]; LippSmith Dec. ¶ 24 [Doc. 70-1 at 10].) In addition, Plaintiff asserts that Defendant "uniformly failed to pay all Class Members all compensation due to them during the Class Period." (*Id.* at 28.)

Because it appears resolution of the identified issues—including whether Defendants' wages, breaks, and payroll practices and policies violated California law—apply to the claims of each of the class members, the Court finds the commonality requirement is satisfied for purposes of settlement.

### 3.    Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs

1    have the same claims as other members of the class and are not subject to unique defenses).

2        Plaintiff asserts that "[h]is claims and defenses are typical of the class." (Doc. 70 at 29.) He

3    reports Defendants employed him "as an hourly-paid, non-exempt employee from September 2016 to

4    approximately December 2018." (Doc. 70-4 at 2, Sanchez Decl. ¶ 2.) Plaintiff contends his

5    "individual claims align with those of the Class," based upon Defendants' alleged "uniform, unlawful

6    practices and procedures." (Doc. 70 at 29.) Thus, even if not a class representative, Plaintiff would be

7    a member of the Settlement Class. Because Plaintiff was subjected to the same company policies and

8    payment procedures as the class members—and there are no unique defenses asserted by either party

9    at this time—the Court finds the typicality requirement is satisfied for purposes of settlement.[3] *See*

10   *Hanon*, 976 F.2d at 508; *Kayes*, 51 F.3d at 1463.

11                            4.    Fair and Adequate Representation

12       Absentee class members must be adequately represented for judgment to be binding upon them.

13   *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party

14   "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of

15   this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have

16   any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel

17   prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

18   454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

19                            a.    *Proposed class representative*

20       Plaintiff seeks appointment as class representative for the Settlement Class. (Doc. 70 at 29.)

21   Graham LippSmith reports that Plaintiff "vigorously pursued claims" on behalf of the class. (Doc. 70-1

22   at 15-16, ¶ 43.) Mr. LippSmith asserts: "Plaintiff followed case progress and provided both documents

23   concerning his employment with Defendants and information about non-exempt employees' duties.

24   Plaintiff reviewed documents and answered all our questions. Plaintiff also helped develop strategies by

25   pinpointing documents and information to obtain from Defendants, identifying potential witnesses, and

26

27   [3] To the extent Defendants may have raised a defense to Plaintiff's PAGA claim, for settlement purposes only, Defendants agreed to "not assert a statute of limitations defense to Plaintiff's PAGA claim." (Doc. 67 at 5, § U.)

28   Based upon Defendants' stipulation, the Court finds the potential defense to Plaintiff's PAGA claim does not thwart his appointment as a class representative for the Settlement Class.

describing Defendants' policies, practices, and procedures." (*Id.*) Likewise, Brian St. John asserts that "Plaintiff has spent a substantial amount of time and effort gathering and producing relevant documents and information, providing the facts and evidence necessary to attempt to prove the allegations, and discussing their employment with counsel." (Doc. 70-3 at 16, St. John Decl. ¶ 14.) According to Mr. St. John, "Plaintiff was available whenever counsel needed them and actively tried to obtain information that would benefit the prosecution of the case, including … working with Class Counsel to prepare responses to discovery requests that were propounded on him by Defendants." (*Id.*)

The parties did not identify any conflict between Plaintiff and the Settlement Class, and review of the allegations before the Court does not reveal any conflict. Based upon the information by counsel, Plaintiff endeavored to prosecute the claims on behalf others similarly situated. Moreover, the interests of Plaintiff are aligned with those of the class members: to maximize the recovery of pay not received due to the alleged violations of California wage and hour laws. Thus, Plaintiff is a suitable class representative.

### b. Proposed class counsel

Plaintiff requests the appointment of Arby Aiwazian, Joanna Ghosh, Brian St. John, and LippSmith LLP be appointed as Class Counsel. (Doc. 70 at 2, 30-31.) He reports, "Counsel are well-experienced in wage-and-hour action litigation," and "have litigated this matter for nearly four years." (*Id.* at 30.) Brian St. John, with Lawyers for Justice, and Graham LippSmith, with LippSmith LLP, each provided declarations attesting to the experience of the attorneys seeking appointment as class counsel. (*See* Docs. 70-1, 70-3.)

Mr. St. John, an attorney with Lawyers for Justice, reports the organization "is comprised of attorneys who focus on litigating complex wage-and-hour class and Private Attorneys General Act … representative actions." (Doc. 70-3 at 2, ¶ 2.) Mr. St. John reports he was admitted to practice in 2015 and "worked on many wage and hour class action and PAGA representative matters." (*Id.*, ¶ 5.) This work included "researching and drafting pleadings, administrative notice exhaustion, drafting, negotiating, and finalizing stipulations and settlement agreements, engaging in motion practice, claims evaluation and analysis, and making court appearances." (*Id.*) Arby Aiwazian and Joanna Gosh were each admitted to admitted to practice law in 2010. (*Id.* at 3, ¶¶ 3-4.) Mr. Aiwazian worked on more

than 100 "class action or representative action cases which have resulted in settlement." (*Id.*, ¶ 3.) Ms. Ghosh "also has extensive experience with class action and/or representative action settlements," and "has taken and defended dozens of depositions and successfully handled motion practice in class action cases regarding discovery (including and not limited to, regarding class contact information), class certification (both contested class certification and stipulated class certification), arbitration agreements, coordination, intervention." (*Id.* at 3-4, ¶ 4.)

Mr. LippSmith reports, "LippSmith LLP is a four-attorney law firm with offices in Los Angeles and Honolulu," and the attorneys "have collectively recovered hundreds of millions of dollars in complex cases against the largest companies in the world." (Doc. 70-1 at 2, ¶ 4.)  Mr. LippSmith reports that was licensed to practice in 2002, and he has "managed hundreds of cases in the class action, mass tort, consumer, personal injury, business, insurance, intellectual property, and entertainment practice areas." (*Id.* at 3, ¶ 6.)  In addition, he reports that MaryBeth LippSmith, co-founder of LippSmith LLP, was also admitted to practice in 2002 and has written "appeals on class action, consumer litigation, mass tort, and serious personal injury matters; assisted trial lawyers with dispositive motions; and consulted private mediators on large, complex, high-profile matters in advance of mediation." (*Id.*, ¶ 9.)  According to Mr. LippSmith, the "LippSmith LLP team members have personally served as class counsel, putative class counsel, lead counsel, and committee counsel in more than dozens of class action and mass action lawsuits, representing tens of millions of plaintiffs and class members, collectively." (*Id.* at 4, ¶ 14.)

The described litigation experience supports a conclusion that counsel prosecuted the action vigorously on behalf of the putative class when the action was filed and the now-proposed Settlement Class.  There are not any identified conflicts between the attorneys and the Settlement Class.  Further, Defendants do not oppose appointment of the proposed Class Counsel, or assert the attorneys with LFJ and LippSmith LLP are inadequate to represent the interest of the class for purposes of the pending settlement.  Therefore, the Court finds the proposed counsel satisfy the adequacy requirement.

**B.     Certification of a Class under Rule 23(b)(3)**

Once the requirements of Rule 23(a) are satisfied, the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter*

1   *Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  Plaintiff asserts certification of the settlement

2   class is appropriate under Rule 23(b)(3), which requires a finding that (1) "the questions of law or fact

3   common to class members predominate over any questions affecting only individual members," and (2)

4   "a class action is superior to other available methods for fairly and efficiently adjudicating the

5   controversy."  These two requirements are generally called the "predominance" and "superiority"

6   requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 564 U.S. at 363 ("(b)(3)

7   requires the judge to make findings about predominance and superiority before allowing the class").

8                    1.   Predominance

9        The predominance inquiry focuses on "the relationship between the common and individual

10  issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

11  representation."  *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  "[A] central

12  concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help

13  achieve judicial economy.'"  *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 944 (9th Cir. 2009)

14  (quoting *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).

15       Plaintiff contends the predominance requirement is satisfied because the class "claims involve

16  the same allegations, fact, supporting evidence, and applicable law."  (Doc. 70 at 28.)  According to

17  Plaintiff, "the outcome of this litigation hinges on Defendant' uniform operations and employment

18  policies and procedures, which applied across its hourly-paid employees during the Class Period."  (*Id.*)

19  For example, Plaintiff asserts Defendants had a "uniform policy and systematic scheme" of "failing to

20  provide compliant meal and rest periods and associated premium pay."  (*Id.*)  In addition, Plaintiff

21  contends the Defendants' payroll and recordkeeping practices applied to the entirety of their hourly-

22  paid workforce.  (*Id.*)  Based upon the information provided and the allegations presented in the Second

23  Amended Complaint, the Court finds adjudication of the claims via a class action promotes judicial

24  economy, and this requirement is satisfied.

25                    2.   Superiority

26       The superiority inquiry requires a determination of "whether objectives of the particular class

27  action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation omitted).

28  This tests whether "class litigation of common issues will reduce litigation costs and promote greater

1  efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule

2  23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior

3  method of adjudication, including (1) interests of class members, (2) other pending litigation, (3) the

4  desirability of concentrating claims in one forum, and (4) difficulties with the management of the class

5  action.  *Id.; see also James v. Uber Techs. Inc.*, 338 F.R.D. 123, 143 (C.D. Cal. 2021) (indicating the

6  factors identified in Rule 23(b)(3) address the "superiority" analysis).

7  <center>a. *Class members' interest in individual litigation*</center>

8     The Court is directed to consider "the class members' interests in individually controlling the

9  prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  This factor is most relevant

10  when class members "suffered sizeable damages or [have] an emotional stake in the litigation."

11  *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011).  The Ninth Circuit explained

12  that "[w]here damages suffered by each putative class member are not large, this factor weighs in

13  favor of certifying a class action."  *Zinser*, 253 F.3d at 1190.

14     At this point in the proceedings, there is no indication class members desire to control this

15  action or proceed with individual litigation.  With 601 class members sharing the estimated Net

16  Settlement Amount of $1,093,000.00, the average payment is approximately $1,818.64.  (Doc. 70-1 at

17  15, LippSmith Decl. ¶ 38.)  It is unlikely that individuals would pursue such a recovery in their own

18  cases.  *See Zinser*, 253 F.3d at 1190; *Millan v. Cascade Water Servs., Inc.,* 310 F.R.D. 593, 606 (E.D.

19  Cal. 2015) (the average estimated recovery of about $7,300 for class members supported a conclusion

20  that a class action was superior to individual litigation, because it was "unlikely that such a sum would

21  drive interest in controlling the prosecution of a separate action"); *Dakota Med., Inc. v. RehabCare*

22  *Group, Inc.,* 2017 WL 1398816, *10 (E.D. Cal. Apr. 19, 2017) ("an average recovery of slightly less

23  than $2,000[] would be likely far too little to warrant bringing each of these similar claims as individual

24  actions" and supported the conclusion that "a class action … is superior to any other available method

25  for adjudicating this controversy").  As this Court previously observed, "When the individual claims of

26  class members are small, the class action facilitates the spreading of the litigation costs among the

27  numerous injured parties."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, (E.D. Cal. 2013)

28  (internal quotation marks, citation omitted).  Thus, the factor weighs in favor of certification.

<center>17</center>

### b.     Other litigation

Next, the Court considers "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  The parties did not identify any other litigation encompassing the claims addressed raised by Plaintiff in this action.  Therefore, this factor weighs in favor of class certification.

### c.     Concentration in one forum

Third, the Court must consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  There is no suggestion the Eastern District is an undesirable forum for the matter, which raises wage and hour claims on behalf of individuals who worked throughout the state.  *See United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 419 (E.D. Cal. 2018) (finding the factor weighed in favor of certification where the proposed class was compromised of individuals located in California and involved "California state law claims").  Moreover, as this Court previously explained, when "parties … agreed on a proposed Settlement Agreement, the desirability of concentrating the litigation in one forum is obvious."  *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (internal quotation marks, citation omitted).  Consequently, this factor weighs in favor of certification.

### d.     Management of the action

Finally, the Court must consider "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  The Supreme Court explained that in general, "manageability … encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  Because the parties reached an agreement for the class claims and identified the Settlement Class, it does not appear there are any problems with managing the action.  *See Espinosa v. Ahearn*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial").  Further, the Court need not speculate as to manageability of the classes if the case were to proceed to trial.  *See Amchem Prods.*, 521 U.S. at 620 ("with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").  Thus, this factor weighs in favor of certification of the Settlement Class.

### C. Certification

Plaintiff carries the burden to show the prerequisites of Rule 23(a) are satisfied, and the class is maintainable under Rule 23(b)(3).  Accordingly, the request to conditionally certify the Settlement Class is **GRANTED**, with Plaintiff is appointed as the class representative.

## II. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the class. *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The Ninth Circuit identified several factors to evaluate whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).

The Federal Rules now also identify "specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).  In relevant part, Rule 23(e) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24.  "The goal of amended Rule 23(e) is to focus the district court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Avina v. Marriott Vacations Worldwide Corp.*, 2019 WL 8163642, at *5 (C.D. Cal. June 8, 2021) (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory

Committee Notes).  The Ninth Circuit determined the revised Rule 23 requires courts "to go beyond [its] precedent."  *Briseño*, 998 F.3d at 1026.  Nevertheless, the Ninth Circuit also instructs courts to examine the prior factors "comprehensively."  *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

### A.    Extent of Discovery Completed and Stage of the Proceedings

Plaintiff asserts that "the Parties have undertaken sufficient discovery to inform their view of the reasonableness of the Settlement," including "propounding written discovery, engaging experts, and exchanging documents."  (Doc. 70 at 24.)  Mr. St. John reports, "Class Counsel reviewed and analyzed documents and data, including, but not limited to, the employment records of Plaintiff; sampling of time and pay data; and Defendants' employment and operations policies, practices, and procedures documents."  (Doc. 70-3 at 17, ¶ 23.)  Mr. LippSmith also reports Defendants "produced hundreds of pages of documents and company data through formal and informal exchanges," including "company policies, company handbooks, employee files, payroll data for Plaintiff, and employee information for putative class members."  (Doc. 70-1 at 15, ¶ 39.)

Notably, "in wage-and-hour class actions, putative class counsel often gather evidence of company practices and … how often class members were denied breaks or forced to take late breaks." *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1074 (C.D. Cal. 2023) (internal quotation marks, citation omitted).  Mr. St. John reports, "Based on investigation and information discovered, Class Counsel believe there is sufficient evidence to support allegations that Defendants violated the Labor Code."  (Doc. 70-3 at 17 ¶ 26.)  Mr. LippSmith reports that their review of the produced class sample data showed "the percentage of qualifying shifts when employees suffered a missed, late, or short meal period was 38.47%."  (Doc. 70-1 at 13, ¶ 33.)

Given the parties' discovery related to the class claims, which also assisted with mediation and settlement discussions, the extent of discovery completed and the stage of the proceedings support preliminary approval of the Settlement.  *See In re Mego Fin. Corp. Sec. Litig*, 213 F.3d at 469 (finding these two factors favored approval of a class settlement when class counsel reported they "conducted significant investigation, discovery, and research); *see also Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. Mar. 31, 2017) (explaining these factors favor settlement when "the parties have conducted extensive discovery and thoroughly litigated the issues").

### B.      Strength of the Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 720 F. Supp. 1379, 1388 (D. Az. 1989)). Plaintiff does not separately address this factor in the motion for preliminary approval, though he asserts that "the Class's expected recovery, weighed against the value of the settlement offer and considering the strength of Plaintiff's case, supports approval of the Settlement."  (*See* Doc. 70 at 20.) Nevertheless, "the court need not reach any conclusions regarding the contested issues of fact and law that underlie the merits of the litigation." *Carlin v. DairyAmerica, Inc.*, 328 F.R.D. 393 (E.D. Cal. 2018) (internal quotation marks, citation omitted).

A plaintiff is able to negotiate a fair settlement when "armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Grady*, 671 F. Supp. 3d at 1073 (citation omitted).  Preliminary approval is appropriate when "it appears that each side maintains a clear idea of the strengths and weaknesses of their respective cases." *See Khaled v. Library Sys. & Servs.*, 2021 WL 2366952, at *5 (C.D. Cal. May 14, 2021).  The parties report that during mediation, they "discussed Plaintiff's claims, theories for class certification, and Defendants' defenses thereto." (Doc. 70-2 at 13, Settlement ¶ 2.10.)  In addition, the parties "analyzed the potential exposure of Defendants on Plaintiff's claims, Defendants' potential liability for penalties and interest, as well as the potential risks of any potential judgment against Defendants."  (*Id.*)  Given the extent of the discovery completed—including the review of sample data to determine meal and rest break violation rates—it appears the parties made informed decisions to evaluate the strength of the class claims.  *See Grady*, 671 F. Supp. 3d at 1073.  Because it appears the parties had sufficient information to evaluate the strengths of the class claims, this factor weighs in favor of preliminary approval.

### C.      Representation of the Class

To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether the interests of the named plaintiff are "aligned with the interests of the Class Members." *See Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "Class Counsel are

experienced and competent" supports a conclusion that the class is adequately represented.  *Id.; see also In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  Thus, the adequacy analysis under Rule 23(e)(2) "is redundant of the requirements of Rule 23(a)(4)."  *Almanzar v. Home Depot U.S.A., Inc.*, 2022 WL 2817435, at *9 (E.D. Cal. July 18, 2022) (citation omitted).

Plaintiff's interests appear aligned with those of class members, as they share a common interest in challenging the alleged wrongful wage and hour policies.  In addition, Class Counsel are clearly experienced in wage-and-hour class action litigation.  (*See* Doc. 70-1 at 2-9, LippSmith Decl. ¶¶ 4-16; Doc. 70-3 at 2-6, St. John Decl. ¶¶ 2-12.)  As discussed above, Plaintiff carried the burden to show the adequacy prerequisite was satisfied under Rule 23(a).  Thus, the Court finds the requirement under Rule 23(e)(2) is also satisfied.  *See Flores v. Dart Container Corp.*, 2021 WL 1985440, at *5 (E.D. Cal. May 17, 2021) ("Because the Court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met").

### D.     Negotiation of the Settlement

Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit also "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  The Ninth Circuit observed that "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quotation marks, citations omitted).  Thus, the Court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining—as Plaintiff asserts (Doc. 70 at 17)— or if the agreement is the product of collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

1    In particular, when a settlement agreement is reached prior to a class being certified, district

2    courts must be watchful "not only for explicit collusion, but also for more subtle signs that class

3    counsel have allowed pursuit of their own self-interests and that of certain class members to infect the

4    negotiations." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 94; *see also Briseño*, 998 F.3d

5    at 1023.  These "more subtle signs" include: (1) "when counsel receive a disproportionate distribution

6    of the settlement, or when the class receives no monetary distribution but class counsel are amply

7    rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of

8    attorneys' fees separate and apart from class funds" and "carries the potential of enabling a defendant

9    to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on

10   behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants

11   rather than be added to the class fund."  *Id.* (internal quotations, citations omitted).

12              1.       Whether there is a disproportionate distribution to counsel

13   The Settlement provides that Class counsel may request attorneys' fees "up to $665,000.00"—

14   which is 35% the settlement fund.  (Doc. 70-2 at 7, Settlement ¶ 1.18; *see also id.* at 24, ¶ 4.7.)  The

15   typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total

16   settlement value, with 25% considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th

17   Cir. 2000).  Thus, the contemplated fees exceed the range typically awarded within the Ninth Circuit.

18   As discussed below, Class Counsel will be required to provide billing records upon final approval, at

19   which time the Court will perform a lodestar crosscheck and determine the reasonableness of the fee

20   award.  Given the flexibility of an award *up to* $665,000.00, the Court finds the proposed distribution

21   to counsel does not mandate a finding of collusion.  *See Koepeen v. Carvana, LLC*, 2024 WL

22   3925703, at *9 (N.D. Cal. Aug. 22, 2024) (finding a fee award of 35% of a settlement fund "is a red

23   flag, [but] does not raise a concern regarding collusion").

24              2.       Existence of a "clear sailing" agreement

25   In general, a "clear sailing" provision is one in which the parties agree to the "payment of

26   attorneys' fees separate and apart from class funds."  *In re Bluetooth Headset Prods. Liab. Litig*., 654

27   F.3d at 947.  However, the Ninth Circuit recognized also a "clear sailing" arrangement exists when a

28   defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount.

*Lane*, 696 F.3d at 832; *In re Bluetooth Headset Prods.*, 654 F.3d at 947.

Pursuant to the Settlement, "Defendants agree not to oppose" the request for fees in "an amount not to exceed $665,000.00." (Doc. 70-2 at 24, ¶ 4.7.) Thus, the Settlement includes a version of a "clear sailing" agreement. Nevertheless, the existence of a clear sailing provision is not necessarily fatal to approval. *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 948; *see also In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling"). Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id*. (citing *Staton*, 327 F.3d at 954).

No evidence is currently before the Court to evaluate the reasonableness of the fees requested or the tasks undertaken on behalf of the Settlement Class. The Court will determine an appropriate award the final approval stage, based upon evidence submitted by counsel. Thus, this factor does not weigh against preliminary approval and will be revisited upon the filing of a motion for attorneys' fees and final approval of the terms. *See Singh v. Roadrunner Intermodal Servs. LLC*, 2019 WL 316814 at *7-8 (E.D. Cal. Jan 24, 2019) (not finding collusion between the parties, despite a clear sailing agreement, where the fee award was analyzed and determined to be reasonable).

### 3.   Whether there is a reversion to Defendants

Finally, the parties did not include a provision for any unawarded fees to revert to Defendants. (*See* Doc. 70-2 at 25, ¶ 4.11.2 [indicating money paid into the settlement fund is "non-reversionary" and "under no circumstance will there be any reversion to Defendants of any of the funds"].) Instead, the fees will be deducted from the settlement fund, and unawarded fees will be retained in the "Net Settlement Amount" that includes "the remaining portion of the Maximum Settlement Amount after deduction of the Fee and Costs Award, the Settlement Administration Costs, the payment to the LWDA in the amount of $75,000 (representing 75% of the PAGA Penalty Payment), and the Service Payment." (Doc. 70-2 at 7, ¶ 1.19.) Because unawarded fees will be retained in the Net Settlement Amount for distribution to participating class members, this factor does not support a finding of

1   collusion between the parties.  *See, e.g., Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2020 WL

2   1492672, at *6 (E.D. Cal. Mar. 26, 2020) (where there was no reversionary cause, the court was

3   "satisfied that the settlement is not the product of collusion")

4                       4.      Findings on collusion

5          Based upon the factors set forth by the Ninth Circuit, the Court finds the proposed settlement

6   "appears to be the product of serious, informed, non-collusive negotiations."  *See Rodriguez v. Danell*

7   *Custom Harvesting, LLC*, 327 F.R.D 375, 383 (E.D. Cal. 2018) (citation omitted). Thus, this factor

8   under Rule 23 supports preliminary approval of the class settlement.

9        **E.**      **Amount Offered and Relief Provided to the Class**

10          The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of

11   absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688

12   F.2d 615, 624 (9th Cir. 1982) (citation omitted).  When analyzing an agreement, the Court should

13   examine "the complete package taken as a whole," and the proposed settlement is "not to be judged

14   against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."

15   *Officers for Justice*, 688 F.2d at 625, 628.

16          Mr. LippSmith reports that upon review of the class sample data produced by Defendants, they

17   determined a class average hourly pay of $21.23 and "[t]he percentage of qualifying shifts when

18   employees suffered a missed, late, or short meal period was 38.47%."  (Doc. 70-1 at 13, ¶¶ 33-34.)

19   Using this information, counsel determined "the maximum meal and rest break award would be

20   $3,518,511.59." (*Id.*, ¶ 34.)  According to Mr. LippSmitth, Defendants' meal and rest break violations

21   drove the settlement discussions," because these violations were "more discernable from Defendants'

22   payroll data than, for example, violations for failures to pay overtime and waiting time, to reimburse

23   business expenses, and for wage statement errors."  (*Id.*, ¶ 31.)  Assuming that each member of the

24   Settlement Class had one unpaid overtime hour per week, counsel calculated that the potential unpaid

25   overtime damages total $2,743,828.89.  (*Id.* at 12-13, ¶ 30.)  Mr. LippSmith also reports counsel

26   calculated that "the maximum PAGA penalties are $14,389,800 … for meal violations and $14,389,800

27   for rest break violations."  (*Id.* at 14, ¶ 35.)  Because the LDWA would receive 75% of these PAGA

28   penalties, the maximum PAGA penalties for aggrieved employees is $7,194,900.  *See Lusk v. Five*

*Guys Enters. LLC*, 2022 WL 4791923, at *8 (E.D. Cal. Sept. 30, 2022) (deducting the LWDA's portion of an estimated PAGA penalty before calculating the percentage rate of recovery).  Based upon this information, it appears the identified potential maximum recovery for class members and aggrieved employees—for the meal, rest break, overtime, and PAGA penalties— totals $13,457,240.48.  Thus, the gross fund designated is approximately 14% of the total calculated by Plaintiff's counsel; and the anticipated net amount of $1,180,000 for class members and aggrieved employees is 8.7% of the potential recovery.

Notably, the Ninth Circuit observed: "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459.  The recovery in this action is consistent with other approved class action settlements.  *See, e.g., Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding the gross settlement of approximately 15% of the potential recovery was fair); *Gonzalez v. NCI Grp., Inc*., 2020 WL 4547303, at *11 (E.D. Cal. Aug. 6, 2020) (approving a settlement representing 9% of maximum value of the class' claims for violations of labor law, while acknowledging the percentage was "modest"); *Cruz v. Sky Chefs, Inc*., 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (granting final approval to settlement of labor claims representing 8.6% of maximum potential recovery).  Thus, the percentage recovered does not weigh against approval of the Settlement.

Plaintiff calculates that the average recovery for the 601 class members is $1,818.64; and the average PAGA payments for the 484 aggrieved employees is $51.65.  (Doc. 70-1 at 15, ¶ 38.) Analyzing the factors identified in Rule 23, as discussed below, the Court finds the amount offered and relief provided to the Settlement Class supports preliminary approval of the Settlement.

### 1.    Costs, risks, and delays

"A central concern when evaluating a proposed class action settlement relates to the cost and risk involved in pursuing a litigated outcome."  *Feltzs v. Cox Comm's Cal., LLC*, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes [modifications adopted].)  Settlement is "preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

The claims in this action remain disputed, and Plaintiff contends "the "risks and costs associated with class action litigation weigh strongly in favor of settlement." (Doc. 70 at 23.) As indicated in the Settlement, "Defendants deny all claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief, and all other forms of relief, as well as the class and PAGA allegations asserted in the Action." (Doc. 70-2 at 11, ¶ 2.2.) Plaintiff acknowledges that if Defendants defeated class certification or undermined the data extrapolation, "it would negate or significantly reduce any recovery." (Doc. 70 at 21.) For example, Plaintiff notes that if the Court determined Defendants were "not subject to $200 PAGA penalties without prior notice by the Labor Commissioner or any court," the potential maximum penalties for the meal and rest break claims would be reduced from $28,797,600 to $9,599,200. (*See id.* at 21-22.) In addition, Plaintiff notes that it would "be challenging to prove" labor law "violations impacting every employee[,] every week." (*Id.* at 22.) On the other hand, the Settlement provides "recovery to aggrieved employees now, without further delay due to continued litigation." (*Id.* at 23.)

Notably, employment law class actions are, by their nature, time-consuming and expensive to litigate. *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959 at *6 (C.D. Cal. Aug. 4, 2015). If the Settlement is rejected, the parties would have to engage in further litigation, including seeking— and challenging— class certification and additional discovery on the issue of damages. The time and expense of continued litigation could outweigh any additional recovery. As Plaintiff contends, the proposed settlement provides for immediate recovery for the class. Due to the acknowledged disputed liability, risk of the claims of class members, costs of future litigation that may reduce the recovery to class members, and delay in payments if the settlement is not approved, this factor weighs in favor of preliminary approval of the Settlement. *See Rodriguez*, 563 F.3d at 966 (considerations of risk, expense, complexity and duration of litigation support settlement); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class" [citation omitted]).

### 2.    Proposed distribution

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean*

*Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

Settlement Class members are not required to take any action, such as submitting a claim form, to receive their settlement payment.  (Doc. 70-2 at 16, ¶ 4.2.1.)  Rather, class members need only take action if they wish to opt-out of the settlement, object to any of the terms, or dispute the amount of their individual settlement share.  Because the class members are not required to submit and claim form, the proposed method of distribution is not "unduly demanding" upon Settlement Class members, yet it will facilitate payment for legitimate claims.  Thus, this factor weighs in favor of preliminary approval. *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where a claim form was not required).

### 3.  Attorneys' fees

Under Rule 23, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.14th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Ninth Circuit explained it "interpreted the amended Rule 23(e)(2) as imposing an obligation on district courts to 'examine whether the attorneys' fees arrangement shortchanges the class.'" *Id.*, quoting *Briseño*, 998 F.3d at 1024.  "In other words, the new Rule 23(e) makes clear that courts must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Id.* (internal quotation marks, citation omitted).

As discussed above, Class Counsel may request fees up to 35% of the settlement fund.  (Doc. 70 at 35, citing Doc. 70-2 at 7, ¶ 1.18.)  The Court-approved payment shall be made by the Settlement Administrator within 10 days of Defendants providing the funds to the Settlement Administrator.  (Doc. 70-2 at 24, ¶ 4.11.1)  In that same 10-day period, the Settlement Administrator will issue the

other approved payments, including to Class Members.  (*Id.*)  Thus, counsel will receive payment in the same period of time as Class Members, and the timing of payment does not weigh against preliminary approval of the Class Settlement.

Importantly, any party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007).  Given the flexibility of an award *up to* $665,000.00, this amount is approved preliminarily.  The Court will evaluate the reasonableness of the fee request and determine the exact amount of the fee award upon application by Class Counsel with final approval.

### 4.    Agreement required to be identified

The Court must consider any agreement that is required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3). The parties have identified no such agreement, and the Court is not aware of any such agreement.  Thus, this factor does not weigh against preliminary approval.

### F.    Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  *Hilsley*, 2020 WL 520616 at *7 (citation omitted).

The parties agreed that class members who do not timely opt-out of the Settlement will receive a *pro rata* share of the Net Settlement Amount, calculated by:

> (i) dividing the Settlement Class Member's total number of workweeks worked for Defendants in California during the Class Period by the total number of workweeks worked by all Settlement Class Members for Defendants during the Class Period, and (ii) multiplying that pro rata share by the allocated amount of the Net Settlement Amount. Any workweeks during the Class Period in which a Settlement Class Member did not

29

1                          actually work (for example, while on a leave of absence, etc.) are not

2                          included in calculating that Settlement Class Member's Individual
       Payment Amount.

3   (Doc. 70-2 at 16, ¶ 4.2.2.)  Because the Settlement provides *pro rata* distribution based upon the

4   number of workweeks, the agreement treats the class members equitably, and the proposed distribution

5   plan supports preliminary approval.  *See Cooks v. TNG GP*, 2021 WL 5139613 at *4 (E.D. Cal. Nov.

6   4, 2021) (observing the calculation of payments to class members "on a pro-rata basis based on the

7   number of compensable workweeks each member worked … is fair and treats class members

8   equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL 6149688 at *4 (N.D. Cal. Oct.

9   20, 2020) (noting that in the preliminary approval stage, "the Court approved the proposed plan pro

10  rata allocation based on the number of workweeks the class member performed work during the Class

11  Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29, 2020)

12  (finding a *pro rata* distribution plan was equitable and weighed in favor of approving the settlement).

13         **G.**    **Class Representative Service Payment**

14         Incentive awards, service payments, for class representatives are not to be given routinely by

15  the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

16                         Indeed, '[i]f class representatives expect routinely to receive special

17                         awards in addition to their share of the recovery, they may be tempted
       to accept suboptimal settlements at the expense of the class members

18                         whose interests they are appointed to guard." *Weseley v. Spear, Leeds
       & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's

19                         *Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76
       F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs

20                         make what amounts to a separate peace with defendants, grave
       problems of collusion are raised.").

21  The Court observed that "excessive payments to named class members can be an indication that the

22  agreement was reached through fraud or collusion." *Id.* (citation omitted).  In evaluating the

23  enhancement award to a class representative, a court should consider all "relevant factors including the

24  actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

25  benefitted from those actions, …  the amount of time and effort the plaintiff expended in pursuing the

26  litigation … and reasonable fears of workplace retaliation."  *Staton*, 327 F.3d at 977.

27         Pursuant to the agreement, Plaintiff may seek a "Service Payment for an amount not to exceed

28  $10,000."  (Doc. 70-2 at 24, ¶ 4.8.)  Significantly, however, Plaintiff offers limited information

1   regarding his actions on behalf of the class.  (*See* Doc. 70-4.)  Although Plaintiff indicates he "spent

2   dozens of hours working on this case to date," this broad statement is also not a clear estimate for the

3   Court to evaluate the time expended.  (*See id.* at 4, ¶ 10.)  Without additional information, the Court is

4   unable to evaluate the reasonableness of this requested award.  In seeking final approval, **Plaintiff**

5   **must provide evidence supporting the requested service payment.**  Nevertheless, given the

6   flexibility for an award *up to* $10,000, the request is preliminarily approved.[4]

7        **H.    Views of Counsel**

8        As addressed above, Class Counsel are experienced in class action litigation.  Mr. LippSmith

9   indicates a belief that "the Settlement is indisputably fair, reasonable, adequate, and exceeds the

10  standards for preliminary approval."  (Doc. 70-1 at 17, ¶ 48.)  Similarly, Mr. St. John believes that

11  "[t]he settlement is fair, reasonable, and adequate; fulfills the purpose of the PAGA statute; and is in

12  the best interests of the Class, the State of California, and PAGA aggrieved employees."  (Doc. 70-3 at

13  22, ¶ 32.)  The Settlement also indicates that Defendants "believe this Settlement is a fair, adequate,

14  and reasonable Settlement of this Action…" (Doc. 70-2 at 14, ¶ 2.14.)  These opinions of counsel are

15  entitled to significant weight and support approval of the Settlement.  *See Nat'l Rural Telecomms.*, 221

16  F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely

17  acquainted with the facts of the underlying litigation"); *Barbosa v. Cargill Meat Solutions Corp.*, 297

18  F.R.D. 431, 447 (E.D. Cal. 2013) ("the trial court is entitled to, and should, rely upon the judgment of

19  experienced counsel for the parties.").

20  ///

21

---

22  [4] A "substantial effort" by a plaintiff is necessary to support a class representative's service payment of $10,000.
    *Coburn v. City of Sacramento*, 2020 WL 7425345, at *8 (E.D. Cal. Dec. 17, 2020); *see also Amaro v. Gerawan*

23  *Farming Inc.*, 2020 WL 6043936, at *10 (E.D. Cal. Oct. 12, 2020) (awarding a payment of $10,000 to plaintiffs
    who spent over 370 hours each during the course of the litigation on tasks such as "talking to co-workers,

24  assisting class counsel, attending the mediation, and organizing class members to keep them apprised of the
    status of [the] case").  Thus, the contemplated payment of $10,000 appears to be excessive. *See Monterrubio v.*

25  *Best Buy Stores, L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013) (indicating the Court's intent to reduce the requested
    enhancement from $7,500 to $2,500 upon final approval, where the class representative was deposed, assisted

26  with preparation for mediation, and traveled out of town for the mediation); *Valentine v. Rehab. Ctr. of Santa*
    *Monica Holding Co. GP, LLC*,  2021 U.S. Dist. LEXIS 243660, at *13-14 (C.D. Cal. Dec. 20, 2021) (finding the

27  class representative failed to justify an enhancement of $10,000, though the plaintiff reported 59.5 hours of work
    during which she "was deposed, worked closely with [class] counsel, assisted in the preparation of pleadings,

28  provided factual information and assisted in identifying potential witnesses").

1

**I.        Reaction of Class Members to the Proposed Settlement**

2    Plaintiff agreed to the terms of Settlement Agreement.  (*See* Doc. 70-2 at 29.)  The remaining

3    Class Members have not yet received notice of the Settlement or its terms.  Therefore, this factor shall

4    be revisited for final approval of the Settlement.  *See Cottle*, 340 F.R.D. at 376 ("The reaction of the

5    class members is best assessed at the final approval hearing since the court can look at how many class

6    members submitted … objections").  However, pursuant to the terms of the Settlement, "If more than

7    5% of the Class Members opt out of the class action settlement, then Defendants shall have the right to

8    terminate the Agreement by notifying Plaintiff's Counsel in writing within seven … calendar days of

9    Defense Counsel's receipt of written notification from the Settlement Administrator that more than 5%

10   of the Class Members have opted out of the class action settlement."  (Doc. 70-2 at 21, ¶ 4.6.6.)

11                        **APPROVAL OF PAGA SETTLEMENT**

12   California adopted its Private Attorney General Act to allow individual plaintiffs "to bring a

13   civil action to collect civil penalties for Labor Code violations previously only available in

14   enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks, Inc.*

15   *v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); *see also* Cal. Lab. Code § 2699(a); *Urbino v.*

16   *Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013).  Thus, a PAGA plaintiff now acts "as

17   the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th

18   969, 986 (2009).

19   Pursuant to PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

20   code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).

21   PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator

22   and against whom one or more of the alleged violations was committed." *Id.*  A judgment in a PAGA

23   action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment

24   in an action brought by the government." *Arias*, 46 Cal. 4th at 986.

25   To bring an action under PAGA, an aggrieved employee must first provide written notice to the

26   employer and the Labor and Work Force Development Agency.  Cal. Lab. Code § 2699.3(a)(1).

27   Recovery under PAGA is limited to civil penalties, and the civil penalties must be allocated with 75%

28   directed to the LWDA and 25% to aggrieved employees. *Id.* § 2699(i).  Any proposed settlement of

1  PAGA claims must be submitted to the LWDA, and a trial court must "review and approve" any

2  settlement of PAGA claims. *Id.* § 2699(l)(2); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F.

3  Supp. 3d 959, 971 (N.D. Cal. 2019) (because settling a PAGA claim "compromises a claim that could

4  otherwise be brought be the state," it requires that a court "review and approve any settlement of any

5  civil action pursuant to [PAGA]") (citation omitted).

6        Although there is no binding authority establishing the standard of review for PAGA

7  settlements, California district courts "have applied a Rule 23-like standard, asking whether the

8  settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's

9  policies and purposes.'" *Haralson*, 383 F. Supp. 3d at 972; *see also Botonis v. Bimbo Bakeries USA,*

10  *Inc.*, 2024 (Sept. 26, 2024) (following *Haralson* and evaluating whether a proposed PAGA settlement

11  was "fundamentally fair, reasonable, and adequate").  This standard is derived principally from the

12  LWDA, which indicated:

13         It is thus important that when a PAGA claim is settled, the relief provided
            for under the PAGA be genuine and meaningful, consistent with the

14         underlying purpose of the statute to benefit the public and, in the context
            of a class action, the court evaluate whether the settlement meets the

15         standards of being "fundamentally fair, reasonable, and adequate" with
            reference to the public policies underlying the PAGA.

16

17  *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citation omitted).

18  When a proposed settlement involves overlapping class action and PAGA claims, courts may employ

19  a "sliding scale" in determining if the proposed settlement is "fundamentally fair, reasonable, and

20  adequate with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at

21  1134; *see also Haralson*, 383 F. Supp. 3d at 972 (following *O'Connor*); *Cooks v. TNG GP*, 2020 WL

22  5535397 at *9-10 (E.D. Cal. Sept. 15, 2020) (same).  "[W]here the settlement for the rule 23 class is

23  robust, the purposes of PAGA may be concurrently fulfilled." *Cooks*, 2020 WL 5535397 at *10

24  (quoting *O'Connor*, 201 F. Supp. 3d at 1134).

25        Plaintiff reports that the proposed Settlement Agreement was submitted to the LWDA in

26  compliance with the Labor Code.  (Doc. 70 at 3.)  The settlement fund of $1,900,000.00 appears

27  sufficiently robust—with an estimated $1,118,000 going to the class members—such that the Court

28  finds the purposes of PAGA to address the alleged labor violations are fulfilled by the proposed

agreement.  Under the Settlement Agreement, $100,000 of the gross amount is designated as the PAGA payment.  (Doc. 70-2 at 7, ¶ 1.18.)  The Settlement properly designates 75% of the PAGA funds to the LWDA—in the amount of $75,500 gross amount—and the remaining $25,000 to the aggrieved employees.  (*Id*. at 16, ¶ 4.2.3.)

The amount proposed to settle the PAGA claims, approximately 5% of the gross settlement fund, is consistent with other approved PAGA settlements.  *See, e.g.*, *Kryzhanovskiy v. Amazon.Com Servs.*, *Inc.,* 2024 WL 4189936, at *15-16 (E.D. Cal. Sept. 12, 2024) (granting final approval of a class settlement that included a PAGA payment of $100,000 from a gross settlement fund of $3,000,000); *Syed v. M-I, LLC*, 2017 WL 3190341 at *9 (E.D. Cal. July 27, 2017) (granting final approval to a settlement, including $100,000.00 in PAGA penalties for a California class with a $3,950,000 gross settlement fund); *Scott v. Blackstone Consulting, Inc.*, 2024 WL 271439, at *8 (S.D. Cal. Jan. 24, 2024) (approving a PAGA payment that was 5% of the gross settlement amount).  Consequently, the Court concludes the proposed settlement of the PAGA claims is fair, reasonable, and adequate in light of the PAGA's public policy goals.

## APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR

The parties agreed upon and propose that the Court appoint Simpluris, Inc., to serve as the Settlement Administrator.  (Doc. 70-2 at 10, ¶ 1.31.)  Eric Springer, the Director of Client Services for Simpluris, reports the company "has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities fraud, property damage, employment discrimination, employment wage and hour, product liability, insurance and consumer issues."  (Doc. 70-5 at 2, Springer Decl. ¶¶ 2, 5.)  He acknowledges that the responsibilities of the company for settlement administration of this action include:

> (a) establishing and maintaining a fund for Class Members; (b) calculating all amounts due to each Class Member pursuant to the Settlement; (c) processing checks and mailing payments to Class Members; (d) preparing, processing, and filing all applicable tax forms and tax returns; (e) establishing and maintaining a calendar of administrative deadlines and responsibilities; (f) printing and mailing by First-Class Mail the Notice of Pendency of a Class Action Settlement ("Notice of Settlement") to Class Members in English; (g) conducting a National Change of Address ("NCOA") database search prior to mailing the Notice of Settlement to Class Members and performing a skip-trace on any Notice of Settlement returned as Undeliverable; (h) receiving and validating written requests to be excluded from the Settlement ("Requests for Exclusion"), written

objections to the Settlement, and disputes regarding the number of workweeks or pay periods that a Class Member worked for Defendant; (i) providing weekly reports to counsel; and (j) performing any other tasks necessary to carry out its responsibilities as set forth in the Settlement, as the Parties mutually agree, or as the Court orders Simpluris to perform.

(Doc. 70-5 at 3, ¶ 8; *see also* Doc. 70-2 at 9-10, ¶ 1.31.)  For these tasks, Simpluris determined the "project has a fixed frate of $8,837.00." (*Id.* at 4, ¶ 13.)   Accordingly, the Settlement provides that administration costs "are not to exceed $9,000.00." (*Id.* at 9, ¶ 1.31.)  Based upon the information provided and request of the parties, Simpluris is appointed as the Settlement Administrator, and administration costs up to $9,000 are preliminarily approved.

## APPOINTMENT OF A CY PRES BENEFICIARY

Since many class settlements result in unclaimed or uncashed funds, parties should have a plan for distributing such funds. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).  The options for such distribution include cy pres distribution, escheat to the government, and reversion to the defendants.  *Id.*, 904 F.2d at 1307.  In addition, parties may agree that supplemental payments of uncashed funds be made to class participating class members.  *See, e.g., Arredondo  v. Delano Farms Co.*, 2017 WL 4340207 (E.D. Cal. Sept.29, 2017) (granting final approval of a settlement that provided for initial payments to class members, followed by a supplemental payment to distribute the uncashed funds to the class members); *In re Macbook Keyboard Litig.*, 2023 WL 3688452 at *4 (N.D. Cal. May 25, 2023) (granting final approval of a settlement that included an agreement to issue supplementary payments of residual funds).  Here, the parties agree to both supplemental payments of uncashed funds in a second distribution to participating class members, and the appointment to a cy pres beneficiary.  (Doc. 70-2 at 25, ¶ 4.11.4.)

## I.       Payments to the Cy Pres Beneficiary

The Settlement provides: "For each Class Member For each Class Member who submits a valid and timely request for exclusion, the Settlement Administrator shall proportionally increase the payments to each participating Class Member such that the total Settlement payout equals one hundred percent (100%) of the Net Settlement Amount."  (Doc. 70-2 at 17, ¶ 4.2.4.)  However, the Settlement also indicates that "Settlement Proceeds remaining after the second issuance, *along with any amounts that would have been paid to Class Members who timely request exclusion*, will be delivered to Legal

35

1   Aid at Work by the Settlement Administrator, or shall otherwise be distributed as ordered by the

2   Court." (*Id.* at 25, ¶ 4.11.4, emphasis added.)  Because the Settlement indicates both that the funds

3   from those who request exclusion should be proportionally issued to the class members *and* that such

4   funds should go to the cy pre beneficiary, there are conflicting terms.

5          Notably, the payment of "any amounts that would have been paid to Class Members who timely

6   request exclusion" to the cy pres beneficiary would seemingly bolster the funds to the beneficiary.  On

7   the other hand, proportionally increasing the payments to participating class members would directly

8   benefit the Settlement Class.  Accordingly, the Court **STRIKES** the portion of Paragraph 4.11.4 from

9   the Settlement indicating "amounts that would have been paid to Class Members who timely request

10  exclusion" will be paid to the cy pres beneficiary.  Rather, pursuant to Paragraph 4.2.4, the payments

11  calculated for those who request exclusion **SHALL** be retained in the Net Settlement Fund, and the

12  payments to participating class members shall be proportionally increased.  (Doc. 70-2 at 17, ¶ 4.2.4.)

13  **II.     Identity of Cy Pres Beneficiary**

14         The Ninth Circuit determined a proposed cy pres recipient should be "tethered to the nature of

15  the lawsuit and the interest of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039

16  (9th Cir. 2011).  In other words, the Ninth Circuit "require[s] that there be a driving nexus between the

17  plaintiff class and the cy pres beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012)

18  (citing *Nachshin*, 663 F.3d at 1038).  The Court explained that without such tethering, the distribution

19  of funds "may create the appearance of impropriety" by catering "to the whims and self interests of the

20  parties, their counsel, or the court." *Nachshin*, 663 F.3d at 1038.  Thus, a cy pres award should not

21  benefit a group that is "too remote from the plaintiff class." *Six Mexican Workers*, 904 F.2d at 1308.

22  The Ninth Circuit directs courts to consider whether awards to the beneficiary "(1) address the

23  objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty

24  that any member will be benefitted." *Nachshin*, 663 F.3d at 1040.  Further, the Court must consider

25  whether the cy pres distribution is appropriate given the "size and geographic diversity" of the class

26  members. *Id.* at 1040-41 (citing, e.g., *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 683

27  (8th Cir. 2002); *Houck on Behalf of U.S. v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th

28  Cir. 1989)).  Plaintiff did not provide any analysis of these factors to assist the Court in evaluating

1   whether Legal Aid at Work is an appropriate cy pres beneficiary.  (*See generally* Doc. 70.)

2       Nevertheless, the Ninth Circuit observed also that issues related to the identity of a cy pres

3   beneficiary are not generally ripe until there are funds that remain unclaimed.  *See Rodriguez v. West*

4   *Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding cy pres distribution "becomes ripe only if

5   entire settlement fund is not distributed to class members" and declining to determine propriety of cy

6   pres at that time).  The Court explained that where a cy pres distribution is contingent on the outcome

7   of shares distribution, issues regarding the identification of recipients "will not be ripe until it is

8   determined that available cash remains in th[e] fund after the claims process has concluded."  *Dennis*,

9   697 F.3d at 865.  Clearly, at this point in the proceedings, it is unknown whether funds will remain

10  from returned or uncashed checks from the second distribution to participating class members.

11  Consequently, the Court's inability to evaluate the propriety of the proposed cy pres beneficiary at this

12  time does not prevent preliminary approval of the proposed settlement.[5]

13               **MODIFICATION OF FINAL APPROVAL PROCEEDINGS**

14      The Settlement indicates that "Plaintiff shall file all motions and documents in support of a

15  finding of Final Approval and Fairness of the Settlement in a single motion, inclusive of any requests

16  for Fee and Costs Awards, no later than fourteen (14) calendar days before the Final Approval and

17  Fairness hearing."  (Doc. 70-2 at 24, ¶ 4.9.)  However, pursuant to Local Rules, any hearing shall be

18  set for "not less than thirty-five days after the service and filing of the motion."  Local Rule 230(b).

19  As the parties were previously informed, this Court has an extraordinarily heavy caseload, and is

20  operating in a judicial emergency.  The timeline contemplated in the Local Rules reflects the scarce

21  judicial resources, and is necessary for the Court.  Consequently, the Court requires additional time

---

[5] In support of the request to appoint Legal Aid at Work—or any other cy pres beneficiary—Plaintiff **SHALL** clearly address the factors identified by the Ninth Circuit in *Nachshin* in seeking final approval of the Settlement. Moreover, the Ninth Circuit indicated that a district court should also examine any "between the cy pres recipient and the parties or their counsel."  *In re Google Referrer Header Priv. Litig.*, 869 F.3d 737, 744 (9th Cir. 2017), *vacated on other grounds, sub nom, Frank v. Gaos*, 139 S. Ct. 1041, 203 L. Ed. 2d 404 (2019).  Toward that end, it important for the Court to consider factors such as "the nature of the relationship, the timing and recency of the relationship, the significance of dealings between the recipient and the party or counsel, the circumstances of the selection process, and the merits of the recipient."  *Id.*; *see also City of Long Beach v. Monsanto Co.*, 2020 WL 10540857, at *2 (C.D. Cal. July 13, 2020) ("The parties shall also identify any relationship they or their counsel have with the proposed *cy pres* recipient.")  Thus, Plaintiff shall also address whether there is any past or current relationship between Class Counsel and Legal Aid at Work.

between the filing of any motion for final approval, fees, and the class representative service payment and the final approval hearing date.  For this reason, the Settlement is **MODIFIED** to comply with the deadline ordered in Local Rule 230(b), and Plaintiff **SHALL** file the motion for final approval 35 days prior to the hearing date set below.  The deadline in Paragraph 4.5.6 is must also be modified, and Settlement Administrator **SHALL** provide Class Counsel with the declaration of due diligence with regard to the mailing of the Notice no later than 45 days prior to the final approval hearing, for the declaration to be filed with the motion for final approval..

Further, the parties included provisions regarding class members appearing at the final approval hearing, without previously making written objections.  Specifically, the parties provided that "Class Members who fail to object in the manner specified above still have the right to appear in Court at the Final Approval Hearing to state his or her objection(s)."  (Doc. 70-2 at 21, ¶ 4.6.7.)  In addition, the parties agreed that "[a]ny person who fails to submit such a timely written Objection shall not be precluded from appearing at the Final Approval and Fairness Hearing should s/he wish to appear."  (*Id.* at 24, ¶ 4.6.9.)  However, given the scarcity of judicial resources, the Court reserves the right to vacate the final approval hearing if there are not any comments or objections filed by the deadline ordered.  Under such circumstances, the Court will take the matter under submission pursuant to Local Rule 230(g).  Accordingly, the Court **STRIKES** the identified portions of Paragraphs 4.6.7 and 4.6.9.

## APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### I.        Content of the Notice

Plaintiff submitted the proposed "Notice of Class Action Settlement" (the "Notice"). (Doc. 70-2 at 43-48.) The Notice provides information regarding the background of the action, defines the class, and explains the claims asserted by Plaintiff that resolved as a result of settlement. (*Id.* at 43-44.) The Notice also explains the terms and provisions of the Settlement, including the claims released by participating class members and the binding effect of judgment. (*Id.* at 44-46.) The Notice informs class members of the payments to be made from the fund—including the maximum attorneys' fees of $665,000 and class representative payment of $10,000—and that the payments from the Settlement fund are subject to Court approval. (*Id.* at 44.) In addition, class members will receive estimates of their payments. (*Id.* at 45.)

Further, the Notice explains the rights and procedures to object to the Settlement, or request exclusion from the Settlement Class, and will include the applicable deadlines. (Doc. 70-2 at 46.) Finally, the Notice informs class members: "You have the right to attend the Final Approval Hearing and address the Court. You also have the right to retain an attorney at your own expense to speak on your behalf. You are not required to attend the Final Approval Hearing." (*Id.* at 46.)

### II.       Method and Administration of Notice

Within 14 days of the date of service of this Order, Defendants shall provide the "Class Member information" to the Settlement Administrator, which includes: "name, last known mailing address, social security number, and the total number of workweeks in California as a nonexempt employee during the Class Period and the PAGA Period." (Doc. 70-2 at 18, ¶ 4.5.2.) Within 10 days of receiving the information, the Settlement Administrator shall "perform a national change of address ("NCOA") search, update the addresses per the results of the NCOA search, and then mail the Notice to each Class Member by first-class mail, postage prepaid." (*Id.*)

For any Notice returned due to an incorrect address, "the Settlement Administrator will make reasonable efforts to obtain a valid mailing address by using the Social Security Number of the Class Member and standard skip tracing devices to conduct a search for a correct mailing address and by contacting Class Counsel and Defense Counsel." (Doc. 70-2 at 18, ¶ 4.5.3.) When such efforts result in an updated address, "the Settlement Administrator shall promptly resend the Notice to the Class

Member by first-class mail, postage prepaid." (*Id.* at 18-19, ¶ 4.5.3.)  When a corrected address is not identified, the Settlement Administrator shall resend the Notice to the original address. (*Id.* at 19, ¶ 4.5.3.)  Remailing of any returned notice shall occur within 5 days of the return. (*Id.*)  However, "only one… such re-mailing to the same address shall every occur, per address." (*Id.*)

Class members who elect not to participate in the Settlement will have 45 days from the date the Notice is mailed to submit a written request for exclusion to the Settlement Administrator. (Doc. 70-2 at 20-21, ¶¶ 4.6.3-4.6.5.)  To be valid, an exclusion request "must include the Class Member's full name, address, and telephone number, the name and case number of the Action, and shall be signed by the Class Member." (*Id.* at 20, ¶ 4.6.3.)  Individuals who properly submit a request for exclusion will not be entitled to a settlement share; will not be bound by the terms of the agreement, including the released claims and the judgment; and "will not have any right to object, appeal or comment thereon." (*Id.* at 21, ¶ 4.6.5.)

Similarly, class members who wish to object to the Settlement have 45 days to submit a written objection to the Settlement Administrator. (Doc. 70-2 at 21, ¶ 4.6.8.)  Any objection must be signed by the class member and include: (1) the full name of the Class Member; (2) the grounds for the objection; and (3) any legal briefs, papers, or memoranda the objecting Class Member proposes to submit to the Court." (*Id.*, ¶ 4.6.7.)  "The Settlement Administrator shall forward Class and Defense Counsel copies of all Objections or other documents purporting to object to the Settlement, within one … business day of receipt." (*Id.* at 22, ¶ 4.6.9.)  <u>A class member who fails to submit a written objection in compliance with these terms will not be permitted to make objections at the Final Approval and Fairness Hearing</u>.

Prior to the hearing date for final approval, the Settlement Administrator shall provide the parties "with a declaration of due diligence with regard to the mailing of the Notice." (Doc. 70-2 at 19, ¶ 4.5.6.)  The Settlement Administrator shall make the declaration "under the penalty of perjury of the laws of California and the United States and shall advise the Court that the requirements of Paragraphs 4.5.2 and 4.5.3 of this Settlement have been fulfilled." (*Id.*)  Further, the declaration shall include "the total number of Class Members who timely submitted a Request for Exclusion and/or [an] Objection to the Settlement." (*Id.*)  This declaration shall be filed with the Court with the motion for final approval of the Settlement.

The proposed plan to provide notice by mail is appropriate.  *See* Fed. R. Civ. P. 23(c)(2)(B) ("notice may be by one or more of the following: United States mail, electronic means, or other appropriate means").  In addition, it appears the method is "the best notice that is practicable under the circumstances," as the parties identified method provides "individual notice to all members who can be identified through reasonable effort."  *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Ayala v. AT&T Mobility Servs., LLC*, 2023 WL 11944375, at \*6 (C.D. Cal. June 20, 2023) (finding a notice method was "sufficient and practical" under Rule 23(c)(2)(B) where the settlement administrator was directed to "make reasonable efforts, including skip trace methods, to locate the correct address and re-send the notices" for each class member whose notice was returned as undeliverable).  Therefore, the proposed method plan satisfies the requirements of Rule 23.

### III.    Required Revisions to the Notice Packet

The Notice must be modified to include information in this Order, including the date of the hearing for final approval.  The Notice must be modified to include the response deadline for requesting exclusion, any objections to the Settlement, and disputes of the employment information for the class member.

Further, based upon the modifications identified above, Class Counsel shall modify the provision concerning objections to the settlement, to omit the language informing class members: "You may elect to appear in Court at the Final Approval Hearing to state your objections if you do not make your written objection in the manner specified above."  (*See* Doc. 70-2 at 46, ¶ D(2).)  Rather, class members shall be informed they may <u>not</u> appear at the hearing without submitting written objections in the manner identified in the Settlement.  Similarly, the provision indicating class members "have the right to attend the Final Approval Hearing and address the Court" (*id.* at 47, ¶ F) shall be omitted.

Finally, the Notice must be updated with contact information for Simpluris, including the phone number and mailing address of the Settlement Administrator.  (*See* Doc. 70-2 at 45, ¶ D(1).)  To the extent the parties also intended to provide contact information for the Clerk of Court—which is referenced in the Notice—the mailing address shall also be added as indicated.  (*See id.* at 47, ¶ G.)

///

**CONCLUSION AND ORDER**

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of preliminary approval of the settlement agreement.  Accordingly, the Court **ORDERS**:

1.    Plaintiff's request for provisional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from September 15, 2016, through April 11, 2024, and who reside in California.

2.    Preliminary approval of the parties' proposed settlement agreement—with the modifications identified above to ¶¶ 4.5.6, 4.6.7, 4.6.9, 4.9 and 4.11.4—is **GRANTED**.

3.    Preliminary approval of the PAGA payment is **GRANTED**.

4.    The proposed notice plan and deadlines are **APPROVED**.

5.    Nico Cruz Sanchez is **APPOINTED** the Class Representative for the Settlement Class.

6.    Arby Aiwazian, Joanna Ghosh, Brian St. John, and LippSmith LLP are **APPOINTED** as Class Counsel.

7.    Simpluris, Inc. is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement.

8.    The class representative service payment for Plaintiff is **GRANTED** preliminarily up to the amount of $10,000, subject to a petition and review at the Final Approval and Fairness Hearing.  Class members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

9.    Class Counsel's request for attorneys' fees not to exceed $665,000 and litigation expenses up to $23,000 is **GRANTED** preliminarily, subject to review of the petition for fees and costs at the Final Approval and Fairness Hearing.  Class members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

10.   The petition for attorneys' fees and for class representative service payment **SHALL** be

filed no later than **February 26, 2025**.

11.    Costs of settlement administration shall not exceed $9,000.

12.    The proposed Notice is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice with the required revisions for the Court's approval within seven days of the date of service of this order.

13.    Defendants **SHALL** provide the Settlement Administrator with the Class Member Information no later than **October 6, 2024.**

14.    The Settlement Administrator **SHALL** mail the approved Notice no later than **November 18, 2024**.

15.    A class member who wishes to be excluded from settlement shall postmark a written request for exclusion no later than **December 31, 2024**.

16.    Any objections to or comments on the Settlement Agreement must be submitted to the Settlement Administrator no later than **December 31, 2024.**

17.    The Final Approval and Fairness Hearing is SET for **April 1, 2025** at 9:00 a.m. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative service payment, attorneys' fees, and litigation expenses.

18.    Class members may appear at the hearing on **April 1, 2025** at 9:00 a.m., in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the class member <u>must</u> file comments with the Clerk of this Court indicating briefly the nature of the comments, support, or objection.

19.    **<u>The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court</u>** on or before **February 26, 2025**;

43

20.    The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members.

21.    The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:    **October 22, 2024**

UNITED STATES DISTRICT JUDGE

44