Graham B. LippSmith (SBN 221984), g@lippsmith.com
Celene Chan Andrews (SBN 260267), cca@lippsmith.com
Jaclyn L. Anderson (SBN 258609), jla@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 3000
Los Angeles, CA 90071
Tel: (213) 344-1820
Fax: (213) 513-2495

Arby Aiwazian (SBN 269827), arby@calljustice.com
Joanna Ghosh (SBN 272479), joanna@calljustice.com
Brian St. John (SBN 304112), brian@calljustice.com
**LAWYERS *for* JUSTICE, PC**
450 N. Brand Blvd., Suite 900
Glendale, California 91203
Tel: (818) 265-1020
Fax: (818) 265-1021

*Attorneys for* Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICO CRUZ SANCHEZ, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>MOHAWK INDUSTRIES, INC., an unknown business entity; DALTILE SERVICES, INC., an unknown business entity; DAL-TILE SERVICES, INC., an unknown business entity; DAL-TILE CORPORATION, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 1:20-cv-01510-JLT-EPG<br><br>[Removal from the Superior Court of the State of California, County of Fresno, Case No. 20CECG02675]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF COUNSEL (GRAHAM B. LIPPSMITH, AND BRIAN J. ST. JOHN; NICO CRUZ SANCHEZ; AND SETTLEMENT ADMINISTRATOR (MARY BUTLER); AND [PROPOSED] ORDER AND JUDGMENT**<br><br>Date:          April 22, 2025<br>Time:         9:00 a.m.<br>Courtroom:  4, 7th Floor<br>Action Filed:  September 14, 2020<br>Trial Date:   None Set |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT**

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 22, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Judge Jennifer L. Thurston in Courtroom 4, 7th Floor of the United States District Court for the Eastern District of California, located at 2500 Tulare Street, Fresno, CA 93721, Plaintiff Nico Cruz Sanchez ("Plaintiff") hereby moves for an order granting final approval of the May 2024 Joint Stipulation of Class Action and PAGA Settlement ("Settlement[1]") between Plaintiff and Defendants Mohawk Industries, Inc., Daltile Services, Inc., Dal-Tile Services, Inc., and Dal-Tile Corporation ("Defendants") on the grounds that the Settlement is fair, adequate and reasonable because:

- A Net Settlement Amount of approximately **$1,126,311.13** will be distributed to the Class Members who did not submit timely and valid Request for Exclusion ("Participating Class Member"); and

- **No Notices of Objections** and **no Requests for Exclusion** were submitted to the settlement administrator, Simpluris, Inc. ("Simpluris" or "Settlement Administrator") as of the date of this Motion.

Plaintiff also hereby moves for this Court to award attorney fees, costs reimbursements, Class Representative Service Payment and Settlement Administration Costs. All Parties agree to the Settlement, and Defendants do not oppose this Motion.

Plaintiff submitted the Settlement to the California Labor and Workforce Development Agency ("LWDA") concurrently with the filing of Plaintiff's Motion for Preliminary Approval

---

[1] To the extent they are not specifically defined herein, all capitalized terms have the same meaning as in the Settlement Agreement, attached as **Exhibit 1** to the Declaration of Graham B. LippSmith in support of the Motion for Preliminary Approval of Class Action and PAGA Settlement.

1

of Class Action and PAGA Settlement pursuant to Labor Code section 2699(l)(2). Plaintiff also satisfied the prerequisites set forth in Labor Code section 2699.3(a), by providing the LWDA and Defendants with written notice of the specific provisions of the Labor Code Plaintiff alleges Defendants violated, including the facts and theories to support those alleged violations, via U.S. Certified Mail and online submission on November 18, 2019. Plaintiff will update the Court if the LWDA responds to Plaintiff's notice.

Plaintiff brings this Motion pursuant to Rules 7 and 23 of the Federal Rules of Civil Procedure, as well as Labor Code section 2699, which sets forth PAGA provisions. This Notice and Motion are further based on the following Memorandum of Points and Authorities; the concurrently-filed Declarations of Class Representative (Nico Cruz Sanchez) and Settlement Administrator (Mary Butler of Simpluris) in support thereof; as well as the Declarations of Class Counsel Graham B. LippSmith and Brian St. John in support thereof; the pleadings and other records on file with the Court in this matter; and upon such documentary evidence and oral argument that may be presented at the hearing on this Motion.

Dated: February 25, 2025                **LIPPSMITH LLP**

By:    /s/ *Celene Chan Andrews*
       Graham B. LippSmith
       Celene Chan Andrews
       Jaclyn L. Anderson

**LAWYERS *for* JUSTICE, PC**
Arby Aiwazian
Joanna Ghosh
Brian St. John

*Attorneys for* Plaintiff

2

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND .........................3

SUMMARY OF THE SETTLEMENT TERMS.................................................4

LEGAL STANDARD .........................................................................................6

I.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
       SETTLEMENT .................................................................................... 7

       A.     Multiple Factors Support Granting Final Approval ................................... 7

              1.     The Strength of Plaintiff's Case..........................................7

              2.     The Risk, Expense, Complexity, and Duration of Further
                     Litigation .......................................................................... 8

              3.     The Risk of Maintaining Class Action Status Throughout
                     the Trial ........................................................................... 9

              4.     The Amount Offered in Settlement................................. 10

              5.     Extent of Discovery Completed and Stage of Proceedings .......... 11

              6.     The Experience and Views of Counsel ........................................ 12

              7.     The Presence of a Governmental Participant............................... 12

              8.     The Reaction of the Class Members to the Proposed
                     Settlement .................................................................... 13

              9.     Arm's Length Negotiations........................................... 13

              10.    Adequate Relief, Considering Costs, Risk, and Delay ................ 13

              11.    Effectiveness of Distribution ...................................... 14

              12.    Attorney Fee Terms ..................................................... 14

              13.    Equitable Treatment of Class Members.......................... 14

       B.     The Class Received the Best Notice Practicable ....................................... 15

       C.     Class Counsel's Requested Fees Are Reasonable and Fair ...................... 16

i

# TABLE OF CONTENTS

**Page**

1.    The Requested Attorney Fees are Reasonable Using
Lodestar    Analysis................................................................... 17

    a.    Class Counsel Expended Significant Time and
Resources .................................................................... 17

    b.    Class Counsel's Hourly Rates are Reasonable ................. 18

    c.    A Lodestar Multiplier is Justified ..................................... 18

        i.    Class Counsel achieved significant benefits
for the Class. ......................................................... 19

        ii.    Class Counsel took a significant risk of non-
payment.................................................................. 19

        iii.    Class Counsel provided high quality
representation. ....................................................... 20

        iv.    The requested fee award would result in a
multiplier of 0.87. ................................................. 20

2.    The Requested Attorney Fees Are Reasonable Using a
Percentage of    Recovery Analysis ............................................. 21

    a.    Exceptional Results for the Class ..................................... 21

    b.    Risk of the Litigation ........................................................ 22

    c.    Benefits of Settlement Beyond the Cash Fund ................. 22

    d.    Standard Contingency Fees for Similar Cases.................. 22

    e.    Burden on Class Counsel .................................................. 23

3.    The Absence of Collusion Further Supports the Requested
Fee ................................................................................................. 23

II.    THE COST REIMBURSEMENT REQUEST IS REASONABLE .................... 24

III.    THE CLASS REPRESENTATIVE SHOULD BE AWARDED SERVICE
PAYMENT ......................................................................................... 24

CONCLUSION..............................................................................................................25

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d. 964 (E.D. Cal. 2012) ....................................... 8

*Alpine Pharmacy v. Chas. Pfizer & Co.*, 481 F.2d 1045 (2d Cir. 1973) ...................................... 23

*Amalgamated Transit Union v. Super. Ct.,* 46 Cal. 4th 993 (2009)................................................ 9

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) .............................................. 8, 20

*Ayala v. Valley First Credit Union*, No. 1:22-CV-000657-HBK,
    2023 WL 6296850 (E.D. Cal. Sept. 26, 2023)........................................................................... 13

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .............. 9, 14, 20, 23

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).......................... 19, 21

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................................................... 23

*Capaci v. Sports Research Corp.*, 2024 WL 4014253 (C.D. Cal. 2024)....................................... 15

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. Oct. 11, 2016) ........................... 18

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 1995) .............................. 21

*Litty v. Merrill Lynch & Co., Inc.,* 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ........................ 9

*Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal. 2008) .......................... 8, 20

*Foos v. Ann, Inc.*, 2013 WL 5352969 (S.D. Cal. 2013)................................................................. 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................................. 7

*Hartless v. Clorox Company*, 273 F.R.D. 630 (S.D. Cal. 2011)....................................... 16, 17, 21

*Hernandez v. Restoration Hardware, Inc.*, 4 Cal.5th 260 (2018)................................................. 17

*Hershey v. ExxonMobil Oil Corp.*, 2012 U.S. Dist. LEXIS 153803 (D. Kan. Oct. 26, 2012) ..... 22

*In re Immune Response Sec. Litig.¸* 497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................... 24

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) .......................................................................... 23

*Koeppen v. Carvana, LLC*, 2024 WL 3925703 (N.D. Cal. 2024) ................................................. 14

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ......................................... 13

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43 (3d Cir. 1987) .................................................. 23

*McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) ...................................... 6, 7, 13, 14

*In re Mego Fin'l Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................................ 24

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) ...................................................... 17

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............. 12, 13

*Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777 (N.D. Cal. Apr. 2, 2010) ........... 11

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ....................................................................................... 7

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................ 19, 20

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ........................................................................ 23

*Rodriguez v. West Pub'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................................. 6, 24

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ........................................................................... 15

*Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 6633396 (E.D. Cal. Nov. 21, 2014) ..................... 9

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................... 16, 19

*Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016) ................................................................. 14, 16

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) .................... 18

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ........................................ 20

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) .......................... 7

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................... 20, 21

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ........................... 19

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) ...................................................... 18

*Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224 (2001) .................................................. 16

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..................... 12

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ...................................... 16

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

Cal. Lab. Code § 203 ............................................................................................................ 10

Cal. Lab. Code § 226 ............................................................................................................ 10

Cal. Lab. Code § 226.7 ......................................................................................................... 10

Cal. Lab. Code § 510 ............................................................................................................ 10

Cal. Lab. Code § 512(a) ....................................................................................................... 10

Cal. Lab. Code § 1197.1 ....................................................................................................... 10

Cal. Lab. Code § 1198 .......................................................................................................... 10

Cal. Lab. Code § 2699(e)(2) ........................................................................................ 8, 9, 20

Cal. Lab. Code § 2699(f)(2) ............................................................................................ 8, 20

Cal. Lab. Code § 2699(i) .............................................................................................. 11, 12

Cal. Lab. Code § 2699(j) ...................................................................................................... 11

**Other Authorities**

Conte & Newberg, Newberg on Class Actions § 8.21 (4th Ed.) .................................................. 16

Conte & Newberg, Newberg on Class Actions § 8.39 (4th Ed.) .................................................. 16

Newberg Conte, *Newberg on Class Actions* § 11.47 ................................................................ 12

3 Newberg § 14.03 ................................................................................................................ 21

4 H. Newberg & A. Conte, *Newberg on Class Actions*, § 14:6 (4th ed. 2006) ........................... 22

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 15

Fed. R. Civ. P. 23(e) ............................................................................................................. 16

Fed. R. Civ. P. 23(e)(2) ........................................................................................................... 6

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Nico Cruz Sanchez ("Plaintiff" or "Class Representative") respectfully requests final approval of the May 2024 Joint Stipulation of Class Action and PAGA Settlement ("Settlement") entered into by and between Plaintiff, individually and on behalf of all others similarly situated, and Defendants Mohawk Industries, Inc., Daltile Services, Inc., Dal-Tile Services, Inc., and Dal-Tile Corporation ("Defendants") (collectively the "Parties").

Plaintiff seeks relief on behalf of the following Class, certified for settlement purposes:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from September 15, 2016 through April 11, 2024 and who reside in California ("Class" or "Class Members.").

May 30, 2024 Declaration of Graham LippSmith in Support of Motion for Preliminary Approval ("05-30-24 LippSmith Dec."), Ex. 1 ("Settlement") ¶ 1.3.

The Parties agreed to settle this matter for a Maximum Settlement Amount[2] of $1,900,000. Settlement ¶ 1.18. The Maximum Settlement Amount later increased by $6,745.14 to account for payments to two inadvertently Omitted Class Members, discussed *infra*, for a total of $1,906,745.14. The Maximum Settlement Amount will be distributed as follows: (1) Individual Payment Amounts to proposed Class Members, estimated to total $1,099,908.14; (2) Service Payment to Plaintiff, proposed at an amount not to exceed $10,000 (*id.* at ¶ 1.18); (3) reasonable third-party administration costs of $8,837 (Declaration of Mary Butler Regarding Notice and Settlement Administration ("Admin. Dec."), ¶ 22); (4) attorney fees of up to $665,000 (Settlement ¶¶ 1.18, 4.7); (5) reimbursement of litigation costs and expenses not to exceed $23,000 ("Attorney Fees and Costs") (*id.*); (6) payment in the amount of $75,000 to the Labor Workforce Development Agency, representing 75% of the amount allocated toward

---

[2] To the extent not specifically defined herein, all capitalized terms have the same meaning as in the May 2024 Settlement attached as Exhibit 1 to the 05-30-24 Declaration of Graham LippSmith in Support of Plaintiff's Motion for Preliminary Approval.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT

PAGA civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 (*id.* at ¶ 1.18)[3]; and (7) the remaining 25% of PAGA civil penalties, in the amount of $25,000, will be part of the Net Settlement Amount for distribution to the PAGA Aggrieved Employees on a *pro rata* basis ("PAGA Penalty Payment") (*id.*). The Net Settlement Amount of $1,126,311.13 is the Maximum Settlement Amount less the PAGA Penalty Payment to the LWDA, Administration Costs, Service Payment, and Attorney Fees and Costs. *See id.* at ¶ 1.19.

Based on their extensive efforts, experience, qualifications, and understanding of the issues in this case, Class Counsel believe the Settlement, including the attorney fee, cost reimbursement, and Service Payment provisions, is fair, reasonable, adequate, and meets the standards for final approval. Class Counsel apply for attorney fees in the amount of $665,000, which is just 87% of Class Counsel's lodestar for the case, as well as for reimbursement of reasonable litigation costs and expenses in the amount of $21,597.01. Class Counsel also seek a Service Payment of $10,000 for Plaintiff's service as Class Representative. Settlement ¶ 4.8.

Class Notice fully disclosed the requests for attorney fees and costs, the Service Payment, administration costs, and allocation for the PAGA Payment. Not a single Class Member objected to any provision of the Settlement, and no Class Members filed a Request for Exclusion.

The Settlement is fair, adequate, and reasonable. It resulted from the Parties' arm's-length, good-faith negotiations, with the assistance of experienced counsel and highly regarded mediators, who have successfully mediated other wage-and-hour class action lawsuits. Accordingly, the Court should grant final approval of the Settlement.

---

[3] The Court's Order Granting Motion for Preliminary Approval of Class Action and PAGA Settlement ("Preliminary Approval Order") (Dkt. 73) seems to contain a typo in two places, listing the PAGA penalty amount to the LWDA as "$75,500" instead of "$75,000," which is the amount stated in the Settlement (¶¶ 1.18 and 1.19) and in the Court-approved Notice at page 2, Section C, that was disseminated to the Class (Admin. Dec. ¶ 8 & Ex. A). The Court preliminarily approved the Settlement with modifications that do not pertain to the PAGA penalties. Dkt. 73 at 42. Thus, Class Counsel is proceeding with seeking final approval of a PAGA penalty payment in the amount of $75,000 to the LWDA, with the remaining $25,000 to be distributed to PAGA Aggrieved Employees. Settlement ¶ 1.18; *see also* Dkt. 73 at 24 (noting correct amount of $75,000).

1    **PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

2    Defendants are in the flooring business and formerly employed Plaintiff. Plaintiff filed a

3    class action complaint against Defendants on September 14, 2020, in the Fresno County Superior

4    Court, Case No. 20CECG02675. On October 23, 2020, Defendants removed this action to

5    federal court. Plaintiff moved to remand on November 23, 2020, which the Court denied. On

6    August 24, 2022, Plaintiff filed a First Amended Complaint alleging Defendants engaged in

7    uniform Labor Code violations, including failure to pay regular, minimum, and overtime wages

8    properly, including its rounding policy; pay all compensation due for all work performed,

9    including pre-shift, post-shift, and meal and rest periods wages; accurately calculate the regular

10   rate for meal, rest, and overtime premiums; provide compliant meal periods, rest periods, and

11   associated premium pay; pay timely wages during employment and upon termination; provide

12   compliant wage statements; maintain requisite payroll records; and reimburse necessary business

13   expenses. On April 15, 2024, Plaintiff filed a Second Amended Complaint adding a PAGA cause

14   of action. Plaintiff contends the putative class is entitled to unpaid wages; penalties, including

15   PAGA penalties; and attorney fees and costs. Defendants deny liability, wrongdoing, and that

16   this case is appropriate for class treatment for any purpose other than settlement.

17   On June 20, 2023, the Parties mediated with David Rotman, Esq., a well-respected

18   mediator experienced in handling complex wage-and-hour matters. The Parties did not settle. On

19   January 12, 2024, the Parties participated in a second mediation with Jeffrey Fuchsman, Esq.,

20   another well-respected mediator experienced in complex wage-and-hour matters. With the aid of

21   Mr. Fuchsman's evaluation and proposal, the Parties reached a settlement to resolve the lawsuit.

22   On October 23, 2024, the Court granted preliminary approval of the Settlement, with

23   modifications, provisionally certifying the Class; appointing Plaintiff as Class Representative;

24   appointing Class Counsel; appointing Simpluris as the Settlement Administrator; approving

25   Class Notice; preliminarily approving the requested Service Payment, attorney fees, and

26   litigation expenses; preliminarily approving administration costs; and scheduling the Final

27   Approval Hearing for April 1, 2025. Order Granting Motion for Preliminary Approval of Class

28   Action and PAGA Settlement ("Preliminary Approval Order"), Dkt. 73. On November 15, 2024,

3

1   the Administrator mailed Class Notice to 549 Class Members ("Included Class Members").

2   Admin. Dec. ¶ 8. Of these, just seven Class Notices remain undeliverable. *Id.* ¶ 9.

3        The deadline for Included Class Members to object to or opt out of the Settlement was

4   December 31, 2024. Dkt. 73 at 43; Admin. Dec. ¶ 13. As of February 25, 2025, no Class

5   Member has objected, opted out, or submitted a Dispute. Admin. Dec. ¶¶ 14–16.

6        On January 24, 2025, Defense Counsel informed the Settlement Administrator that two

7   Class Members were inadvertently omitted from the class lists provided ("Omitted Class

8   Members"). Admin. Dec. ¶ 11. The Parties met and conferred to negotiate modifications to the

9   settlement administration procedure to account for the Omitted Class Members and ensure they

10  would receive the same payments allocated to Included Class Members and have the same

11  opportunity to object to or opt out of the Settlement. Stipulation to Add Omitted Class Members

12  ("Stipulation"), Dkt. 76, ¶¶ O, Q. Defendants agreed to pay an additional $6,745.14, plus

13  Defendants' share of any employer payroll taxes attributed to payments for the Omitted Class

14  Members, in addition to the Maximum Settlement Amount. *Id.* ¶ O. In addition, the

15  Administrator would mail Notice to Omitted Class Members, and Omitted Class Members would

16  have the same 45 days from the date of mailing to object to or opt out of the Settlement provided

17  to Included Class Members, or until April 4, 2025. *Id.* ¶ P; Admin. Dec. ¶ 13. The Court

18  approved the Parties' Stipulation, in part, ordering that: Omitted Class Members be included in

19  the Settlement; Defendants fund the additional $6,745.14; the Notice be revised to include the

20  response deadlines for Omitted Class Members and mailed no later than February 18, 2025; and

21  the Final Approval and Fairness Hearing be continued to April 22, 2025 at 9:00 a.m. Order

22  Regarding the Parties' Stipulation to Add Omitted Class Members ("Order re Omitted Class

23  Members"), Dkt. 77. Accordingly, the Administrator mailed a revised Notice to Omitted Class

24  Members on February 18, 2025. Admin. Dec. ¶ 12 & Ex. B.

25                 **SUMMARY OF THE SETTLEMENT TERMS**

26       Defendants will pay a Maximum Settlement Amount of $1,906,745.14 into a Qualified

27  Settlement Fund. Settlement ¶¶ 1.18, 1.26; Order re Omitted Class Members, Dkt. 77 at 2. The

28  Maximum Settlement Amount will cover: (1) Individual Payment Amounts to proposed Class

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

Members, estimated to total $1,099,908.14; (2) Service Payment to Plaintiff, proposed at an amount not to exceed $10,000 (Settlement at ¶ 4.8); (3) Settlement Administration Costs, which are $8,837; (4) attorney fees of up to $665,000; and reimbursement of litigation costs and expenses not to exceed $23,000 ("Attorney Fees and Costs") (*Id.* at ¶ 4.7); (5) payment in the amount of $75,000 to the Labor Workforce Development Agency, representing 75% of the amount allocated toward PAGA civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004; and (6) the remaining 25% of PAGA civil penalties, in the amount of $25,000, will be part of the Net Settlement Amount for distribution to the PAGA Aggrieved Employees on a pro rata basis. *Id.* at ¶¶ 1.21, 1.22, 4.2.3.

The Net Settlement Amount is the Maximum Settlement Amount less the PAGA Penalty to the LWDA ($75,000), Settlement Administration Costs ($8,837 of up to $9,000), Service Payment ($10,000), Attorney Fees ($665,000 or 35% of the Maximum Settlement Amount), and Costs ($21,597.01 of up to $23,000). Settlement ¶¶ 1.18, 1.19, 1.32, 4.8; Admin. Dec. ¶ 22. The Net Settlement Amount will be distributed to Settlement Class Members and PAGA Aggrieved Employees. Settlement ¶ 1.19. The Settlement Administrator will facilitate the calculation of each Settlement Class Member's pro rata share of the Net Settlement Amount as follows:

- Defendants' records shall be used to calculate Workweeks. Settlement ¶¶ 4.2.2, 4.5.2. Workweeks reflect the total number of weeks all Settlement Class Members worked as non-exempt employees in California during the Class Period. *Id.* Any calendar week in which a Class Member worked at least one day will be considered a Workweek. *Id.* The Class Period includes 77,019 Workweeks. Admin. Dec. ¶ 10.
- Defendants provided the Settlement Administrator with the total number of Workweeks all Class Members worked in the aggregate, as well as the number of Workweeks each individual Class Member worked. Settlement ¶¶ 4.3.1, 4.5.2; *see* Admin. Dec. ¶ 6.
- The Settlement Administrator will calculate each Settlement Class Member's share of the Net Settlement Amount. To calculate each share, the Settlement Administrator will divide the allocated share of the Net Settlement Amount by the total number of Class Workweeks, then multiply by the number of weeks each Settlement Class Member worked. Settlement ¶¶ 4.2.2, 4.3.1.

As discussed *supra*, the Settlement allocates $100,000 to PAGA Penalty Payment, of which 75% ($75,000) will be paid to the LWDA and the remaining 25% ($25,000) will be paid on a pro rata

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT

basis to Class Members who worked for Defendants during the PAGA Period. Settlement ¶ 1.18. The Administrator will calculate PAGA Payments by dividing $25,000 by the total number of PAGA Workweeks, then multiplying by the number of weeks each Class Member worked. *Id.* Estimated Individual Payment Amounts are $1,996.20 (average), $5,621.05 (highest), and $14.19 (lowest). Admin. Dec. ¶ 19. Estimated Individual PAGA Payments are $55.19 (average), $132.35 (highest), and $0.50 (lowest). *Id.* ¶ 21.

The Settlement allocates 20% of Individual Payment Amounts to wages reported on IRS Form W-2, 80% to non-wages and interest reported on IRS Form 1099, and 100% of PAGA Payments as penalties on IRS Form 1099. Settlement ¶¶ 4.2.5, 4.3.1. The Administrator will withhold deductions for employees' share of payroll taxes and withholdings from Individual Payment Amounts but not PAGA Payments and will issue each Settlement Class Member an individual settlement payment, reduced by applicable withholdings. *Id.* ¶ 4.3.1. Defendants will cover their portion of payroll taxes, in addition to the Maximum Settlement Amount. *Id.*

The Settlement will resolve the Released Claims of Plaintiff and all Class Members who do not opt out of the Settlement ("Settlement Class Members"). Settlement ¶ 1.33. Settlement checks uncashed after 90 days after the second issuance shall be delivered to Legal Aid at Work or as the Court otherwise orders with no reversion to Defendants.  *Id.* ¶ 4.11.4.

## LEGAL STANDARD

To grant final approval, this court "must scrutinize the settlement to ensure that it is 'fair, reasonable, and adequate.'" *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)). A court "may consider some or all of the following factors" in determining whether a settlement meets the requirements of Rule 23(e):

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (internal quotation marks and citations omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

6

1    1998). "The relative degree of importance to be attached to any particular factor will depend

2    upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the

3    unique facts and circumstances presented by each individual case." *Officers for Justice v. Civ.*

4    *Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

5    In addition, Federal Rule of Civil Procedure 23(E)(2) provides specific factors for this

6    Court to consider, including whether Class Counsel and Plaintiff have adequately represented the

7    Class; whether the Settlement "was negotiated at arm's length;" and whether the relief provided

8    is adequate, considering the costs, risks and delay of trial and appeal, the effectiveness of

9    distributing relief to the Class, attorney fee terms, and whether the Settlement treats Class

10   Members "equitably relative to each other." *McKinney-Drobnis*, 16 F.4th at 607.

11   Finally, "[a]dequate notice is critical to court approval of a class settlement under Rule

12   23(e)." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126 (E.D. Cal. 2009).

13   **I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

14   **A.    Multiple Factors Support Granting Final Approval**

15   **1.    The Strength of Plaintiff's Case**

16   The Settlement accounts for the strengths and weaknesses of each Party's position and

17   uncertainty about class certification, trial, and appeals. Prior to settling, Class Counsel conducted

18   significant investigation, engaged in formal and informal discovery, analyzed thousands of pages

19   of documents and data. 05-30-24 St. John Dec. ¶ 23; 05-30-24 LippSmith Dec. ¶ 26. The volume

20   of data Plaintiff's Counsel reviewed and analyzed included the following: Plaintiff's and other

21   Class Members' employment records; a detailed sampling of Class Members' time and pay data,

22   including, but not limited to, spreadsheets of timecard and wage statement statistics; and

23   Defendants' Employee Handbooks, agreements, forms, and policy and procedure documentation.

24   05-30-24 LippSmith Dec. ¶ 26.

25   The Parties also spent considerable time evaluating the substance of their claims and

26   defenses and attendant uncertainty. To prevail, Plaintiff must prove that Labor Code violations

27   demonstrate that Aggrieved Employees suffered losses and Defendants' conduct gives rise to

28   penalties. *See*, *e.g.*, *Elliot v. Spherion Pac. Work, LLC,* 572 F. Supp. 2d 1169, 1181–82 (C.D.

7

Cal. 2008). Even if Plaintiff established violations, Defendants likely would characterize those violations as "initial," thus, making heightened "subsequent violation" penalties unwarranted. *See* Lab. Code § 2699(f)(2); *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1209 (2008). The Parties spent considerable time evaluating potential litigation of remedies. Although PAGA clearly sets forth penalties, courts have discretion to set penalties, so that they are not "unjust, arbitrary and oppressive, or confiscatory." *See* Lab. Code § 2699(e)(2). The Settlement avoids such uncertainty, considering overall strength of Plaintiff's case and potential risks to recovery.

### 2.        The Risk, Expense, Complexity, and Duration of Further Litigation

To evaluate the claims, the Court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements," considering "the risk, expense, complexity, and likely duration of further litigation" as well as "the time and cost required." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975, 976 (E.D. Cal. 2012) (internal quotations marks, citation omitted). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (internal quotation marks, citation omitted).

After conducting investigations, propounding formal discovery, exchanging informal discovery, and participating in settlement negotiations, the Parties agreed this case is well suited for settlement, given the claims, defenses, legal landscape, anticipated and actual costs, and risks of continued litigation. 05-30-24 LippSmith Dec. ¶ 29. Prior to and during settlement discussions, the Parties exchanged data and engaged in discussions about their evaluations of this matter and various aspects of this case, including the risks and delays of further litigation and of proceeding with representative adjudication and class certification; applicable law, including on off-the-clock theory, meal and rest periods, wage-and-hour enforcement, and PAGA representative claims; and evidence the Parties obtained, produced, and analyzed. 05-30-24 St. John Dec. ¶ 11; 05-30-24 LippSmith Dec. ¶ 27. Class Counsel used the time leading up to each mediation to investigate the veracity, strength, and scope of the claims, and to prepare the matter for class certification and trial. 05-30-24 LippSmith Dec. ¶ 27.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT

1    Specifically, the Parties spent considerable time evaluating procedural challenges that

2    continued litigation may pose. Although wage-and-hour actions are often amenable to resolution

3    for groups of employees, courts sometimes decide otherwise. *E.g.*, *Litty v. Merrill Lynch & Co.,*

4    *Inc.,* 2015 WL 4698475 at *5 (C.D. Cal. Apr. 27, 2015) (declining to find predominance and

5    superiority satisfied for PAGA claim requiring individualized inquiry); *cf. Amalgamated Transit*

6    *Union v. Super. Ct.,* 46 Cal. 4th 993, 1001 (2009) (holding plaintiff unions did not have standing

7    to bring representative PAGA action); *Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 6633396 at

8    *4 (E.D. Cal. Nov. 21, 2014) (bifurcating individual and representative PAGA claims). The

9    Parties also spent significant time evaluating remedies. Although PAGA clearly sets forth

10    penalties, courts have discretion to set penalties, so that they are not "unjust, arbitrary and

11    oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2). These issues add uncertainty.

12    In sum, to prevail, Plaintiff would be required to move for class certification successfully,

13    defeat summary judgment, and receive a favorable verdict that would withstand an appeal.

14    Defendants and their counsel believed they would prevail at certification and on the merits and

15    that they have substantial factual and legal defenses to the claims, rendering Plaintiff's outcomes

16    substantially uncertain, while Plaintiff and Class Counsel believed they would prevail. 05-30-24

17    LippSmith Dec. ¶ 29. The Parties would continue to vigorously defend their positions throughout

18    ongoing litigation—had the Parties not agreed to the Settlement.

19    "The [S]ettlement . . . provides Class Members with another significant benefit that they

20    would not receive if the case proceeded—certain and prompt relief." *Barbosa v. Cargill Meat*

21    *Solutions Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013), weighing strongly in favor of settlement.

22    **3.    The Risk of Maintaining Class Action Status Throughout the Trial**

23    Certifying a class of 551 current and former employees presents complex issues that

24    could undermine certification at class certification and in later stages of litigation. Additionally,

25    Defendants' anticipated, vigorous defense in continued litigation would include contesting class

26    certification, necessitating significant and expensive discovery subject to disputes. Contesting

27    class certification would likely involve factual and legal arguments, including potential

28    individualized issues that may place Class Members in conflict with each other. This uncertainty

9

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

1  presents a significant risk to the Class's ultimate recovery. Further, any potential appeals present

2  a further risk to the Class's recovery and have the potential to delay resolution of this matter

3  beyond the significant time Class Members have already waited for redress. The risk of

4  maintaining class action status through trial weighs in favor of final approval of the Settlement.

5  **4.      The Amount Offered in Settlement**

6        The Settlement confers a substantial benefit on the Class, including payment of

7  $1,906,745.14 into a Qualified Settlement Fund. This Maximum Settlement Amount constitutes

8  a fraction of Defendants' potential statutory damage exposure based on the average hourly rate

9  of $21.23 culled from data sampling, the class size of 551 individuals, the number of pay periods

10  and workweeks, and the estimated number of violations based on data sampling.

11        Plaintiff engaged in various valuations to show high ranges of recoveries, assuming

12  regular violations impacting every employee, every week. The risks inherent in years of

13  continued litigation, trial, and appeal show the Settlement provides Plaintiff and the Class with a

14  much safer deal. Assuming that each Class Member was unpaid for one hour for 77,019

15  workweeks at the average overtime rate of $31.85 (representing a high rate of overtime

16  violations), unpaid overtime damages would total $2,453,055.15. *See* Cal. Lab. Code §§ 510,

17  1198; 05-30-24 LippSmith Dec. ¶ 30. Review of Defendants' data showed a meal violation rate

18  of 38.47%. 05-30-24 LippSmith Dec. ¶ 33. Assuming one violation of meal and rest break

19  damages for every employee for 77,019 workweeks, meal and rest break damages would total

20  $629,028.11 based on the average hourly rate of $21.23 (77,019 workweeks x $21.23 x 38.47%).

21  Cal. Lab. Code §§ 226.7 and 512(a); *see* 05-30-24 LippSmith Dec. ¶ 34. Plaintiff calculated

22  scenarios on Labor Code penalties starting in the $600,000s, assuming every kind of infraction

23  for every employee in every pay period. *See* Cal. Lab. Code §§ 203, 226, 1197.1; 05-30-24

24  LippSmith Dec. ¶ 35. But these recoveries would require Plaintiff to run the table—winning

25  class certification, beating all dispositive motions, qualifying all experts and opinions, proving

26  the types and frequencies of violations, beating post-trial motions, and surviving appeals. Each

27  of these hurdles represents a major discounting factor on its own.

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

1     In addition to fairness, the Court should evaluate whether the Settlement advances

2  PAGA's primary objective "to incentivize private parties to recover civil penalties for the

3  government that otherwise may not have been assessed and collected by overburdened state

4  enforcement agencies." *Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777, at *4

5  (N.D. Cal. Apr. 2, 2010). PAGA penalties must, in part, "be distributed to the [LWDA] for

6  enforcement of labor laws . . . and for education of employers and employees about their rights

7  and responsibilities under this code, to be continuously appropriated to supplement and not

8  supplant the funding to the agency for those purposes." Cal. Lab. Code § 2699(j). As here, a

9  PAGA settlement distributing 75% of civil penalties to the LWDA and 25% of the civil penalties

10  to the aggrieved employees fulfills PAGA's express objectives. *Id.* at § 2699(i).

      **5.      Extent of Discovery Completed and Stage of Proceedings**

12     The Parties have actively litigated this matter since its September 14, 2020 filing. Prior to

13  reaching the Settlement, the Parties extensively investigated the veracity, strength, and scope of

14  the claims. 05-30-24 St. John Dec. ¶ 9; 05-30-24 LippSmith Dec. ¶¶ 26–27. They undertook

15  sufficient work to inform their analysis of the Settlement, including significant fact investigation;

16  formal and informal written discovery; engaging a data analytics expert; and compiling,

17  reviewing, and analyzing thousands of pages of documents and data Plaintiff and Defendants

18  produced. 05-30-24 LippSmith Dec. ¶ 26; Settlement ¶ 2.9. The data and documents included

19  Plaintiff's and other Class Members' employee records and data; a sampling of employee time

20  and pay data; and Defendants' Employee Handbooks, agreements, forms; and policy and

21  procedures documentation. *Id.* Class Counsel also served notices of depositions of Defendants'

22  person-most-knowledgeable designees, preparing for depositions in the event the case did not

23  settle at mediation; Defendants objected to these notices. *See* Declaration of Brian J. St. John in

24  Support of Plaintiff's Motion for Final Approval of Class Action and PAGA Settlement and for

25  Attorney Fees, Costs Reimbursement, and Service Payment ("02-25-25 St. John Dec.") ¶ 6.

26  Counsel for the Parties also met and conferred to discuss issues relating to the pleadings; case

27  management; discovery, including production of documents and data; data necessary for

28  mediation; mediation; and the Settlement. 05-30-24 St. John Dec. ¶ 9. Finally, Class Counsel

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

1   also prepared for and attended court proceedings and settlement negotiations, including

2   participating in two mediations. 02-25-25 LippSmith Dec. ¶ 22.

3        The Settling Parties "arrived at a compromise based on a full understanding of the legal

4   and factual issues surrounding the case." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221

5   F.R.D. 523, 527 (C.D. Cal. 2004) (internal quotation marks, citation omitted).

6                    **6.    The Experience and Views of Counsel**

7        "Great weight is accorded to the recommendation of counsel, who are most closely

8   acquainted with the facts of the underlying litigation. This is because [p]arties represented by

9   competent counsel are better positioned than courts to produce a settlement that fairly reflects

10  each party's expected outcome in the litigation." *Nat'l Rural Telecomms.*, 221 F.R.D. at 528

11  (internal quotation marks, citations omitted).

12       Here, Counsel's experience and respective views of the Settlement weigh in favor of final

13  approval. Class Counsel's experience support a determination that Counsel is qualified to

14  represent the Class's interests, including their extensive experience in wage-and-hour class

15  actions. 05-30-24 St. John Dec. ¶¶ 2–6; 05-30-24 LippSmith Dec. ¶¶ 4–16; Dkt. 73 at 15, 22.

16  Based on their experience, Class Counsel believe the Settlement is fair, reasonable, adequate and

17  is in the best interest of the Class Members. 05-30-24 St. John Dec. ¶¶ 31–32; 05-30-24

18  LippSmith Dec. ¶ 48. While Class Counsel's recommendations are not conclusive, the Court can

19  properly consider them, particularly where, as here, Class Counsel appear competent, have

20  experience with this type of litigation, and have completed significant discovery and

21  investigation. Newberg Conte, *Newberg on Class Actions* § 11.47; Dkt. 73, at 15, 22.

22                   **7.    The Presence of a Governmental Participant**

23       The presence of a governmental participant does not apply insofar as this matter does not

24  include a governmental entity as a party. *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826,

25  at *10 (N.D. Cal. Apr. 1, 2011). However, the Class Representative is acting as a Private

26  Attorney General in this case, and the Settlement includes PAGA Penalties to the LWDA. The

27  Settlement's allocation of funds to the LWDA and PAGA payments to the Class are fair and

28  reasonable and comport with the California Labor Code. Cal. Lab. Code § 2699(i).

12

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

1

### 8.    The Reaction of the Class Members to the Proposed Settlement

2      "It is established that the absence of a large number of objections to a proposed class

3  action settlement raises a strong presumption that the terms of a proposed class settlement action

4  are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529. "A low number

5  of opt-outs and objections in comparison to class size is typically a factor that supports

6  settlement approval." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015).

7  Here, Class Members overwhelmingly support the proposed settlement. No Class Members

8  objected to the Settlement or sought to opt out. Admin. Dec. ¶¶ 14–15.

9

### 9.    Arm's Length Negotiations

10      The Settlement "was negotiated at arm's length." *McKinney-Drobnis*, 16 F.4th at 607. As

11  discussed, the Parties engaged in serious, informed, and non-collusive negotiations, and "the

12  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

13  parties." *Ayala v. Valley First Credit Union*, No. 1:22-CV-000657-HBK, 2023 WL 6296850, at

14  *2 (E.D. Cal. Sept. 26, 2023) (internal quotation marks, citation omitted). Here, the Parties

15  litigated the removal of this action to federal court; engaged in extensive formal and informal

16  discovery; participated in two, separate mediations with well-respected mediators experienced in

17  handling complex wage-and-hour matters; and engaged in extensive data analysis with the help

18  of experts to evaluate the strength of the claims and defenses and the risk attendant to continued

19  litigation, trial, and an appeal. 05-30-24 St. John Dec. ¶¶ 9, 11, 23; 05-30-24 LippSmith Dec.

20  ¶¶ 21, 25–27, 29, 35. Nothing about this process fraudulent or collusive.

21

### 10.    Adequate Relief, Considering Costs, Risk, and Delay

22      As discussed, the Settlement provides adequate relief to the Class, considering costs,

23  risks, and delay of trial and appeal. *McKinney-Drobnis*, 16 F.4th at 607. The Parties conducted

24  investigations, engaged in formal and informal discovery, and participated in two mediations

25  before negotiating the Settlement. 05-30-24 LippSmith Dec. ¶ 29. In agreeing to the Settlement,

26  the Parties considered the claims; defenses; legal landscape, including class certification;

27  anticipated and actual costs; and risks of continued litigation, trial, and appeal. *Id.* ¶ 27; 05-30-24

28  St. John Dec. ¶ 11. Plaintiff and the Class considered that to prevail, Plaintiff would have to

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

1    obtain class certification, survive summary judgment, win trial, and overcome an appeal. 05-30-

2    24 LippSmith Dec. ¶ 29. Plaintiff also calculated the best possible outcome at trial, valuing

3    claims for Labor Code violations, assuming every kind of infraction for every employee for

4    every pay period. 05-30-24 LippSmith Dec. ¶ 30. Plaintiff also recognized the significant

5    difficulty of winning at every procedural step on every substantive issue, taking to heart that

6    each risk provides a major discounting factor to perfect litigation and a perfect trial. Again, the

7    Settlement provides the Class with "certain and prompt relief." *Barbosa*, 297 F.R.D. at 446.

8    ### 11.    Effectiveness of Distribution

9    The Settlement contains effective means for distributing relief to the Class. *McKinney-*

10   *Drobnis*, 16 F.4th at 607. Here, Simpluris effectively distributed Notice, including mailing the

11   notice and then successfully re-mailing 28 of the 36 returned Notices. Admin Dec. ¶¶ 4–9.

12   Simpluris will similarly be able to calculate and distribute Individual Payment Amounts and

13   PAGA Payments, deduct and transmit taxes; mail payment checks to Claimants and PAGA

14   Recipients, and issue W-2 and 1099 forms. *See* Admin. Dec. ¶¶ 19–21; Settlement ¶¶ 1.31,

15   4.2.2–4.2.5, 4.3.1, 4.6.4, 4.6.8–4.6.11, 4.6.13, 4.11.1–4.11.4, 4.11.6.

16   ### 12.    Attorney Fee Terms

17   The Settlement contains reasonable attorney fee terms. *McKinney-Drobnis*, 16 F.4th at

18   607. As discussed, *infra* at pages 22–24, the attorney fees Class Counsel seek are reasonable.

19   *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016); *see also Koeppen v. Carvana, LLC*,

20   2024 WL 3925703, *9 (N.D. Cal. 2024) (noting fee awards calculated as percentage generally

21   are higher where a common fund is less than $10 million; holding "the significant recovery for

22   class members and the risks of continuing to litigate this action makes "the amount of fees and

23   costs reasonable" where the "Gross Settlement Amount is $1,050,000.00;" and finding the lack

24   of a reversion to Defendant showed lack of collusion and weighed in favor of final approval).

25   ### 13.    Equitable Treatment of Class Members

26   The Settlement treats Class Members "equitably relative to each other." *McKinney-*

27   *Drobnis*, 16 F.4th at 607. Simpluris will use an objective methodology to calculate each Class

28   Member's pro rata share of the Net Settlement Amount by dividing the Net Settlement Amount

by the total number of Class workweeks, then multiplying that number by the weeks each Class Member Worked. Settlement ¶¶ 4.2.2, 4.3.1, 4.5.2; Admin. Dec. ¶¶ 6, 10. Simpluris will also divide 25% of the PAGA Penalty Payment on a pro rata basis to Class Members who worked for Defendants during the PAGA Period. Settlement ¶ 1.18. Defendants' agreement to pay an additional $6,745.14, plus their share of any employer payroll taxes attributed to payments for Omitted Class Members, in addition to the Maximum Settlement Amount will ensure that Omitted Class Members receive the same, equitable payments allocated to Included Class Members. Admin. Dec. ¶¶ 11, 13; Dkt. 76, ¶¶ O, P, Q.

**B.    The Class Received the Best Notice Practicable**

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Notice must "clearly and concisely state in plain, easily understood language" the nature of the case, the Class definition, and the Class Members' right to exclude themselves from the Class. Fed. R. Civ. P. 23(c)(2)(B); *Capaci v. Sports Research Corp.*, 2024 WL 4014253, at *7 (C.D. Cal. 2024). Reasonable efforts must be made to reach all Class Members, but every Class Member need not receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The Court approved the Notice Plan, with modifications. Dkt. 73 at 39–41. Defense Counsel provided Simpluris the Class List of 549 Included Class Members. Admin. Dec. ¶ 6. Simpluris processed and updated mailing addresses on the Class List. *Id.* ¶ 7. On November 15, 2024, Simpluris mailed Notices to the Included Class Members. *Id.* ¶ 8 & Ex. A. After 36 Notices were returned, Simpluris conducted advanced address searches and promptly remailed the Notice. *Id.* ¶ 9. Just seven Notices remain undeliverable. *Id.* The deadline for Included Class Members to object to or opt out of the Settlement was December 31, 2024. Dkt. 73 at 43; Admin. Dec. ¶ 13. As of February 20, 2025, no Class Member has submitted a Request for Exclusion, an Objection to the Settlement, or a Dispute. Admin. Dec. ¶¶ 14–16.

The Notice informed Class Members they could opt out of the Settlement by mailing a Request for Exclusion to the Administrator within 45 calendar days of the mailing of the Notice ("Response Deadline"). Admin. Dec. ¶ 13, Exs. A & B; Settlement ¶¶ 1.29, 4.6.4, 4.6.8. The

1  Notice also informed Class Members of the number of workweeks they worked during the Class

2  Period and PAGA Period, which they could dispute by providing the Administrator with

3  additional information and documentation ("Dispute"), postmarked on or before the Response

4  Deadline. Admin. Dec. Exs. A & B; Settlement ¶ 4.6.2. Simpluris has not received any Requests

5  for Exclusion or Disputes. Admin. Dec. ¶ 16.

6      On January 24, 2025, Defense Counsel informed Class Counsel and Simpluris of Omitted

7  Class Members. Admin. Dec. ¶ 11. The Parties negotiated modifications to the Settlement to

8  ensure Omitted Class Members would receive the same payments allocated to Included Class

9  Members and the same opportunity to object to or opt out. Dkt. 76, ¶¶ O, Q. Defendants agreed

10  to pay an additional $6,745.14, plus employer payroll taxes, for Omitted Class Members. *Id.* ¶ O.

11  Simpluris would mail Notice to Omitted Class Members, and they would have the same 45 days

12  to object to or opt out of the Settlement. *Id.* ¶ P; Admin. Dec. ¶ 13. The Court approved the

13  Parties' Stipulation, in part, as discussed *supra*. Dkt. 77. Simpluris timely mailed a revised

14  Notice to Omitted Class Members. Admin. Dec. ¶ 12 & Ex. B.

15      The Notice satisfied all due process requirements and complies with the standards of

16  fairness, completeness, and neutrality. *Newberg*, §§ 8.21, 8.39; Fed. R. Civ. P. 23(e).

17  **C.    Class Counsel's Requested Fees Are Reasonable and Fair**

18      The Court has inherent authority to ensure that the amount and mode of payment of

19  attorney fees in class actions are fair and proper. *Zucker v. Occidental Petroleum Corp.*, 192

20  F.3d 1323, 1328–29 (9th Cir. 1999). This Court "may award reasonable attorney's fees and

21  nontaxable costs that are authorized by law or by the parties' agreement." *Stetson*, 821 F.3d at

22  1165 (cleaned up). The Court should "carefully assess the reasonableness of a fee amount" in the

23  Settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

24      "In diversity actions, the Ninth Circuit applies state law to determine the right to fees and

25  the method for calculating fees." *Hartless v. Clorox Company*, 273 F.R.D. 630, 642 (S.D. Cal.

26  2011). Both California state and federal courts recognize two methods for evaluating attorney

27  fees: (1) lodestar plus multiplier method; and (2) the percentage of recovery method. *Wershba v.

28  Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001), *disapproved on other grounds* in

16

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

1    *Hernandez v. Restoration Hardware, Inc.*, 4 Cal.5th 260, 269–70 (2018). California law

2    generally relies on lodestar for determining reasonable attorney fees. *Hartless*, 273 F.R.D. at

3    642. Where "the class benefit can be monetized with a reasonable degree of certainty, a

4    percentage of the benefit approach may be used to cross-check the lodestar calculation." *Id.*

### 1.    The Requested Attorney Fees are Reasonable Using Lodestar Analysis

7    "The 'lodestar' is calculated by multiplying the number of hours . . . reasonably

8    expended . . . by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th

9    Cir. 1996). "The hours expended and the rate should be supported by adequate documentation

10   and other evidence[.]" *Foos v. Ann, Inc.*, 2013 WL 5352969, *12 (S.D. Cal. 2013).

#### a.    Class Counsel Expended Significant Time and Resources

12   Class Counsel have litigated this matter for more than four years. Their work includes

13   contested removal proceedings, significant fact investigation; formal and informal written

14   discovery; compiling, reviewing, and analyzing thousands of pages of documents; extensive data

15   analysis; and two formal mediations. 05-30-24 LippSmith Dec. ¶ 25. The work in this matter has

16   been extensive, demanding, and ultimately successful in achieving a substantial settlement. Class

17   Counsel are well-experienced in wage-and-hour class action litigation and used that experience

18   to obtain a significant Settlement that includes both a common fund and PAGA Penalties. 05-30-

19   24 St. John Dec. ¶¶ 4–6; 05-30-24 LippSmith Dec. ¶¶ 10–12, 17.

20   To successfully pursue the claims at issue in this case and to achieve the resulting

21   Settlement, Class Counsel spent 705.4 total hours of attorney and paralegal time. 02-25-25

22   LippSmith Dec. ¶ 15 & Table 1. LippSmith LLP timekeepers have spent 498.5 hours through

23   February 25, 2025, with hourly rates ranging from $300 for work performed by one paralegal

24   and $950–$1,200 for work performed by four attorneys. *Id.* Timekeepers from Lawyers *for*

25   Justice, PC have spent 206.9 hours litigating this matter. 02-25-25 St. John Dec. ¶ 12. In

26   addition, Class Counsel anticipate spending an additional 50 hours finalizing settlement

27   procedures; reviewing and managing updates on Class Member information; responding to Class

28   Members' inquiries by telephone and email; and implementing the Settlement after Final

17

Approval for however long it takes to complete the Settlement allocation process and work to resolve any disputes or appeals. 02-25-25 LippSmith Dec. ¶¶ 15–16. All totaled, Class Counsel estimate that the attorney and paralegal time commitment for past completed and future anticipated work will be at least 755.4 hours. *Id.* & Table 1.

Class Counsel also incurred $20,897.01 in costs litigating this matter, all on a contingency basis with significant risk of no recovery. 02-25-25 LippSmith Dec. ¶ 20; Table 3. Class Counsel's costs incurred to date are for mediation services, filing fees, attorney services, and postage. 02-25-25 LippSmith Dec. ¶ 20 & Table 3. The Settlement provided, and the Notice informed the Class, that the Court may award up to $23,000.00 in litigation costs from the Settlement Fund. Since Class Counsel incurred and reasonably expect to incur only $21,597.01 in litigation costs, the $1,402.99 balance of funds previously earmarked for potential costs ($23,000 less $21,597.01) will be available for *pro rata* distribution to the Class. *See* 02-25-25 LippSmith Dec. ¶ 18.

### b.    Class Counsel's Hourly Rates are Reasonable

Prior court approvals of fee applications based on Class Counsel's same or similar rates in the consumer class action context offer one basis to conclude that Class Counsel's hourly rates are reasonable for similar work. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). This Court may "compensate" Class Counsel "for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 900 (C.D. Cal. Oct. 11, 2016) (awarding "current hourly rates").

Class Counsel's timekeeper rates are within reasonable range. Class Counsel's hourly rates range from $575 to $1,495 for attorneys with 5 to 22 years of experience and $300 for a paralegal with 11 years of experience; these rates are reasonable contingency fee rates for each timekeeper. 02-25-25 LippSmith Dec. ¶¶ 15, 17.

### c.    A Lodestar Multiplier is Justified

"Though the lodestar figure is 'presumptively reasonable,' the court may adjust it

18

1  upward or downward by an appropriate positive or negative multiplier reflecting a host of

2  'reasonableness' factors, including the quality of representation, the benefit obtained for the

3  class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re*

4  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011) (citations omitted).

5  "Foremost among these considerations, however, is the benefit obtained for the class." *Id.*

6  **i.  Class Counsel achieved significant benefits for the Class.**

7  The Settlement provides an exceptional benefit to the Class: a $1,906,745.14 Maximum

8  Settlement Amount, proposed to provide approximately $1,099,908.14 in pro rata payments to

9  Class Members, $100,000 in PAGA Penalties ($25,000 pro rata to PAGA Aggrieved

10 Employees); $8,837 in Administrator Costs; up to $10,000 Representative Service Payment; up

11 to $23,000 in Cost Reimbursements; and up to $665,000 for Attorney Fees—with no reversion to

12 Defendants. Settlement ¶¶ 1.18, 1.19, 1.21, 1.22, 4.2.3, 4.7, 4.8; Admin. Dec. ¶ 22. Settlement

13 checks that remain uncashed after 90 days of the second issuance will be delivered to Legal Aid

14 at Work or otherwise be distributed as the Court orders. Settlement ¶ 4.14.4.

15 **ii.  Class Counsel took a significant risk of non-payment.**

16 This matter presented a significant risk of non-payment, justifying a multiplier. *E.g.*, *In*

17 *re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007). This Court "*must* apply a

18 risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will

19 receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and

20 (3) there is evidence the case was risky,'" and failure to do so is an abuse of discretion." *Stetson*,

21 821 F.3d at 1166 (citations omitted). In addition, "since the proper amount of fees is often open

22 to dispute and the parties are compromising precisely to avoid litigation, the court need not

23 inquire into the reasonableness of the fees even at the high end with precisely the same level

24 of scrutiny as when the fee amount is litigated." *Staton*, 327 F.3d at 966. Moreover, "[i]t is an

25 established practice in the private legal market to reward attorneys for taking the risk of non-

26 payment by paying them a premium over their normal hourly rates for winning contingency

27 cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The

28 considerable risks undertaken by Class Counsel on an entirely contingent basis would further

1    justify a multiplier here. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). "The

2    importance of assuring adequate representation for plaintiffs who could not otherwise afford

3    competent attorneys justifies providing those attorneys who do accept matters on a contingent-

4    fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re Omnivision*, 559

5    F. Supp. 2d at 1047. A multiplier finds further support where counsel has expended "substantial

6    outlay" in time and resources while "there is a risk that none of it will be recovered." *Id.*

7         As discussed in Part I(A)–(C), continued litigation presented significant risk the Class

8    would recover nothing. First, Plaintiff would need to overcome procedural challenges, including

9    obtaining and maintaining class certification. Part I(B)–(C), *supra.* Second, litigation would

10    require Plaintiff to overcome substantive challenges, such as defeating summary judgment and

11    proving Aggrieved Employees suffered losses and Defendants' conduct gives rise to penalties

12    (*Elliot*, 572 F. Supp. 2d at 1181–82) and to overcome Defendant's likely claim that these

13    "initial" violations made "subsequent violations" penalties unavailable. Lab. Code § 2699(f)(2);

14    *Amaral*, 163 Cal. App. 4th at 1209. Finally, Plaintiff would have to prove an entitlement to

15    penalties that are not "unjust, arbitrary and oppressive, or confiscatory." Lab. Code § 2699(e)(2).

16    Class Counsel litigated this matter in the face of these risks. *See Barbosa*, 297 F.R.D. at 446.

17                        **iii.  Class Counsel provided high quality representation.**

18         The Court considered Class Counsel's qualifications in granting preliminary approval.

19    *See* Dkt. No. 73 at 14–15, 22, 31. Class Counsel worked ably and diligently to achieve valuable

20    relief for the Class, including investigating Plaintiff's claims prior to filing this lawsuit more

21    than four years ago; seeking remand of this matter to state court after removal; reviewing

22    documents produced in discovery; engaging in formal and informal written discovery; and

23    participating in two formal mediations. 05-30-24 LippSmith Dec. ¶¶ 23–26; Settlement ¶ 5.

24                **iv.  The requested fee award would result in a multiplier of 0.87.**

25         As discussed, a multiplier is appropriate here, given the excellent results Class Counsel

26    obtained and the risk of non-payment Class Counsel faced. "Multipliers in the 3–4 range are

27    common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl.*

28    *Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *Vizcaino*, 290 F.3d at 1051 n. 6

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

(surveying cases to find "a [multiplier] range of 0.6–19.6, with most . . . from 1.0–4.0[.]"); *see also* 3 Newberg § 14.03 at 14-5 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

Here, however, to arrive at a total fee of $665,000, Class Counsel would be awarded a negative multiplier of 0.87, or just 87% of Class Counsel's lodestar, which is extremely modest when compared with multipliers approved in other complex cases. *See* 05-30-24 LippSmith Dec. ¶ 26; *e.g.*, *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 1995) (upholding an award of 25% of the fund resulting in a multiplier of approximately 5.2, citing precedent for awards "in this range or higher"); *Vizcaino*, 290 F.3d at 1051 & Appendix (approving a multiplier of 3.65 and citing multipliers up to 19.6).

### 2. The Requested Attorney Fees Are Reasonable Using a Percentage of Recovery Analysis

"In cases in which the class benefit can be monetized with a reasonable degree of certainty, a percentage of the benefit approach may be used to cross-check the lodestar calculation." *Hartless*, 273 F.R.D. at 642. "Just as the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate, the percentage-of-recovery method can likewise be used to assure that counsel's fee does not dwarf class recovery." *In re Bluetooth*, 654 F.3d at 945 (internal quotations and citation omitted).

Courts apply the *Vizcaino* factors to assess the reasonableness of an attorney fee, measured as a percentage of a common fund: (1) the results achieved for the Class and whether they were exceptional; (2) the risk of the litigation; (3) benefits that exceed a cash fund; (4) standard contingency fees for similar common fund cases of comparable size; and (5) the burden of taking the matter on a contingency basis, including the duration and expense, as well as the need to forgo other work, all of which tend to reduce a firm's annual income. 290 F.3d at 1048–50. Here, the *Vizcaino* factors justify a fee award of 35% of the Settlement Fund.

### a. Exceptional Results for the Class

As discussed above, Class Counsel achieved a significant and valuable result for the Class: a Maximum Settlement Amount of $1,906,745.14 with average estimated Individual

21

Settlement Payments of $1,996.20, and average Individual PAGA Payments of $55.19. Admin. Dec. ¶¶ 19, 21. As discussed, a review of past comparable class settlements involving the same or similar clients, claims, and/or issues also shows the Settlement is fair and falls within the range of possible approval. *See* Part I(D).

### b.    Risk of the Litigation

Again, as detailed in Part I(A)–(C), continued litigation absent the Settlement presented substantial risk to the Class, chancing zero recovery. This risk included procedural challenges, substantive challenges, and difficulty proving an entitlement to remedies. *Id.* Again, the Settlement avoids continued, costly litigation of heavily contested and uncertain issues.

### c.    Benefits of Settlement Beyond the Cash Fund

The Settlement is exceptional in that it provides for significant cash payments for each Class Member with no claims process. *See* Settlement ¶ 4.2.2. Class Members are known to Defendants, who provided the Class List to the Administrator, and the Administrator obtained updated mailing addresses for Class Members. Admin. Dec. ¶¶ 6–7. Thus, Class Members need not identify themselves or otherwise "opt in" to benefit. Moreover, Simpluris will calculate each Class Member's and Aggrieved Employee's share; Class Members need not prove they worked for Defendants or that they suffered a violation. Settlement ¶¶ 1.18, 4.2.2, 4.3.1, 4.5.2; Admin. Dec. ¶ 6. The Administrator will also make appropriate wage deductions and report payments to Class Members on IRS Forms W-2 and 1099 as applicable for the wage portion of the Settlement benefits. Settlement ¶¶ 4.2.5, 4.3.1. Defendants will pay their employer-side taxes for payments made to Class Members *in addition to* the Maximum Settlement Amount. *Id.* ¶¶ 1.18, 4.3.1. Defendants and the Administrator bear all of the work to distribute the Settlement, all to the benefit of the Class beyond the cash Settlement Fund.

### d.    Standard Contingency Fees for Similar Cases

"A leading authority recognizes that '[e]mpirical studies show that . . . fee awards in class actions average around one-third of the recovery." *Hershey v. ExxonMobil Oil Corp.*, 2012 U.S. Dist. LEXIS 153803, *21–22 (D. Kan. Oct. 26, 2012) (citing 4 H. Newberg & A. Conte, *Newberg on Class Actions*, § 14:6 (4th ed. 2006). "The typical range of acceptable attorneys'

22

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT

1    fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25

2    percent considered a benchmark percentage." *Barbosa*, 297 F.R.D. at 448; *Powers v. Eichen*, 229

3    F.3d 1249, 1256 (9th Cir. 2000). "The exact percentage awarded, however, varies depending on

4    the facts of the case, and 'in most common fund cases, the award exceeds that benchmark'

5    percentage." *Barbosa*, 297 F.R.D. at 448. (citations omitted). Forty percent contingency case

6    retainers are typical in California. 02-25-25 LippSmith Dec. ¶ 17. One-third to 40% contingency

7    retainers are typical in the rest of the country. *See Blum v. Stenson*, 465 U.S. 886, 904 (1984)

8    (one third); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% if case went to trial);

9    *Alpine Pharmacy v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1051 (2d Cir. 1973) (32% before trial);

10   *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43 (3d Cir. 1987) (one-third).

11                                    **e.      Burden on Class Counsel**

12          Finally, Class Counsel invested significant contingent labor and costs into this matter,

13   which necessarily means fewer resources available for other work. Through settlement

14   implementation, Class Counsel's timekeepers will have put at least 705 hours into litigating this

15   case. 02-25-25 St. John Dec. ¶ 11; 02-25-25 LippSmith Dec. ¶¶ 15, 19 & Tables 1–2. Class

16   Counsel also incurred nearly $22,000 in costs, taking a financial risk in the event of a loss. 02-

17   25-25 St. John Dec. ¶ 20; 02-25-25 LippSmith Dec. ¶ 20 & Table 3. Class Counsel incurred ***all***

18   of this labor and ***all*** of these costs on a contingency basis, with no guarantee of any recovery,

19   forgoing investing that time and money into other matters.

20                  **3.      The Absence of Collusion Further Supports the Requested Fee**

21          As the Court appropriately found in its Preliminary Approval Order, "the proposed

22   settlement 'appears to be the product of serious, informed, non-collusive negotiations.'" Dkt. No.

23   73 at 25 (citations omitted). First, Class Counsel will not receive a disproportionate share of the

24   Settlement if the Court approves the requested fee award. If the Court awards Class Counsel the

25   requested $665,000 in attorney fees and $21,597.01 in litigation costs reimbursement, the

26   majority of the settlement will still be distributed to Class Members, and Class Counsel's

27   lodestar has a negative multiplier of 0.87. 02-25-25 LippSmith Dec. ¶ 18.  Second, though

28   Defendants do not oppose the proposed fee award, the benefit to the Class is significant, given

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE
PAYMENT

the many years of contingent work Class Counsel invested in this case and that this case resolved after two mediations. Finally, the Settlement contains no reversion to Defendants. Settlement ¶ 4.11.2. Class Counsel will not be fully compensated based on their reasonable hourly rates, but the Class rightfully reaps the benefit of the high-level work done on its behalf.

## II.     THE COST REIMBURSEMENT REQUEST IS REASONABLE

Expense reimbursement awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*¸ 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Reasonable and necessary expenses include: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees." *Id.* at 1177.

To date, Class Counsel has incurred $20,894.01 in unreimbursed litigation costs on a contingency basis and anticipate up to $700 in additional costs for travel associated with the hearing on this motion. 02-25-25 St. John Dec. ¶ 20 & Ex. B; 02-25-25 LippSmith Dec. ¶ 20. These costs include mediation, filing fees, attorney services, and postage. Given the duration and extent of litigation, Class Counsel incurred these costs to litigate successfully on the Class's behalf, taking a financial risk in the event of a loss on any number of critical issues and/or Defendants' insolvency. 02-25-25 St. John Dec. ¶ 20 & Ex. B; 02-25-25 LippSmith Dec. ¶ 20.

Because the costs incurred are reasonable, and because the requested costs reimbursement award results in an additional, cash benefit to the Class, the Class respectfully requests that the Court award $21,597.01 in litigation costs reimbursements.

## III.    THE CLASS REPRESENTATIVE SHOULD BE AWARDED SERVICE PAYMENT

The Court has discretion to award incentives to the Class Representatives. *In re Mego Fin'l Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards are "fairly typical" and do not render a settlement unfair or unreasonable. *Rodriguez*, 563 F.3d at 958–59.

The Settlement authorizes Plaintiff to seek a Service Payment of up to $10,000 for his appointment to serve as Class Representative. Settlement ¶ 4.8. Plaintiff spent dozens of hours

24

working with Class Counsel on the litigation, including on investigation and the initial filing; providing documents related to his employment with Defendants; revising documents with Class Counsel and answering their questions; helping to identify additional documents and witnesses useful to the case; making himself available to answer inquiries as quickly as possible; staying current on case progress; and participating in the settlement process. February 25, 2025 Declaration of Nico Cruz Sanchez ¶¶ 5–6, 10.

### CONCLUSION

The Class respectfully requests that this Court grant final approval of the Settlement.


Dated: February 25, 2025                    **LIPPSMITH LLP**


                                        By:    /s/ *Celene Chan Andrews*
                                                Graham B. LippSmith
                                                Celene Chan Andrews
                                                Jaclyn L. Anderson

                                        **LAWYERS *for* JUSTICE, PC**
                                                Arby Aiwazian
                                                Joanna Ghosh
                                                Brian St. John

                                                *Attorneys for* Plaintiff

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 25, 2025, I electronically filed **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT** with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system to receive service.

By: */s/ Celene Chan Andrews*
Celene Chan Andrews

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND FOR ATTORNEY FEES, COSTS REIMBURSEMENT, AND SERVICE PAYMENT